# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE VANTONE GROUP LIMITED LIABILITY COMPANY,<br><br>                             Plaintiff,<br><br>- against -<br><br>YANGPU NGT INDUSTRIAL CO., LTD et al.,<br><br>                           Defendants. | Case No.: 13 Civ. 7639 (LTS)(FM) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR A PRELIMINARY INJUNCTION

DACHENG LAW OFFICES LLP
Two Wall Street, 21st Floor
New York, NY  10005
Tel: (212) 380-8388
Fax: (212) 810-1995
*Attorneys for Vantone Holdings Co., Ltd., China Center New York LLC, Vantone Property NY LLC, Vantone Residences LLC, Vamerica Fund LLC, Vantone US LLC n/k/a Vamerica LLC, Vantone US Inc., Beijing Vantone Real Estate Co., Ltd. and Feng Lun.*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................1

PROCEDURAL HISTORY ....................................................................2

FACTS .........................................................................................3

LEGAL ARGUMENT ........................................................................17

I.      THE VANTONE DEFENDANTS ARE SENIOR COMMON LAW
        USERS OF THE "VANTONE" MARK ...............................................17

II.     THE PLAINTIFF'S FEDERAL AND NEW YORK STATE
        TRADEMARK REGISTRATION SHOULD BE CANCELLED, AND
        FEDERAL TRADEMARK APPLICATION DENIED ...................................18

        A.      Cancellation Based upon Prior Use of the "Vantone" Marks by
                Defendants .................................................................18

        B.      Cancellation Based upon Fraudulent Procurement of the
                "Vantone" Marks by Mr. Gianella and the Plaintiff ..........................19

        C.      Cancellation Based upon Sham and Token Use, and Lack
                of Bona Fide Use, of the "Vantone" Marks by Mr. Gianella
                and the Plaintiff .............................................................21

        D.      Cancellation Based upon Insufficient Use of the "Vantone"
                Mark by Mr. Gianella and the Plaintiff ...................................23

III.    LEONARDO GIANELLA AND THE PLAINTIFF IS
        DILUTING DEFENDANTS' "VANTONE" MARK AND
        INJURING THEIR BUSINESS REPUTATION WITHIN
        THE MEANING OF N.Y. GEN. BUS. LAW § 360-l ...................................24

IV.     BECAUSE THEY ARE DILUTING DEFENDANTS'
        MARK AND INJURING THEIR BUSINESS REPUTATION,
        AN INJUNCTION SHOULD ISSUE PRELIMINARILY
        ENJOINING   THE PLAINTIFF AND MR. GIANELLA
        FROM USING THE "VANTONE" MARK ...................................26

        A.      The China Center will suffer irreparable harm absent
                injunctive relief .............................................................26

**B.**      **Movants are likely to succeed on the merits, or at the least, there is a serious question to the merits of this matter making them a fair ground for trial** ....................................................27

**C.**      **The balance of hardships tip decidedly in movants' favor** ................27

**D.**      **The public interest weighs in favor of granting a preliminary injunction** ................................................................................27

**CONCLUSION** ..........................................................................................28

## PRELIMINARY STATEMENT

Defendants Vantone Holdings Co., Ltd., China Center New York LLC, Vantone Property NY LLC, Vantone Residences LLC, Vamerica Fund LLC, Vantone US LLC n/k/a Vamerica LLC, Vantone US Inc., Beijing Vantone Real Estate Co., Ltd. and Feng Lun bring the within motion, pursuant to this Court's Pre-Trial Scheduling Order No. 1, Dkt. 45, for an Order preliminarily enjoining Third-Party Defendant Leonardo Gianella and Plaintiff (Counterrespondent) The Vantone Group Limited Liability Company from any use, promotion, advertising or assertion of any claims to the use of the "Vantone" mark during the pendency of this litigation and permitting the movants and other defendants named in this lawsuit to proceed in any business or other transaction, including the use and promotion of the "Vantone" marks claimed by the plaintiff and which is the subject of this litigation; and for such other and further relief as this Court may deem just and proper.

As set forth below, defendants are the rightful, common law owners of the "Vantone" mark, the plaintiff and its principal, Leonardo Gianella, are diluting defendants' mark and injuring their business reputation within the meaning of NY Gen Bus § 360-l, and a preliminary injunction should enter enjoining them from doing so pending resolution of this case. Although the plaintiff and its principal, Leonardo Gianella, registered various "Vantone" marks, those registrations should be cancelled because defendants are senior users and owners of the mark, those registrations were fraudulently procured, and Mr. Gianella and the plaintiff have made only a sham, token, bad faith and insufficient use of the mark for purposes of this lawsuit.

## PROCEDURAL HISTORY

Plaintiff The Vantone Group Limited Liability Company ("TVG") filed its Second Amended Complaint, Dkt. 123, on September 9, 2014, against twenty-four defendants and Does 1-10 for (1) federal trademark infringement, (2) false designation of origin, (3) cybersquatting, (4) state trademark infringement, (5) injury to business reputation and dilution under state law, (6) deceptive business acts or practices, (7) false advertising, (8) use of name with intent to deceive, (9) unjust enrichment, and (10) for declaratory relief. Dkt. 123.

Defendants China Center New York LLC, Vantone Property NY LLC, Vantone Residences LLC, Vamerica Fund LLC, Vantone US LLC n/k/a Vamerica LLC, Vantone US Inc. ("Vantone U.S. Defendants) had previously been served with plaintiff's First Amended Complaint, and on September 23, 2014 filed an Answer to the Second Amended Complaint, along with counterclaims and an identical third party complaint against plaintiff's principal, Leonardo Gianella. Dkt. 124. The Counterlaim and third-party complaint bring claims for (1) a declaratory judgment that the plaintiff and Leonardo Gianella are alter egos, (2) unfair competition and false designation or origin, (3) cancellation of Registration No. 3,856,724 for non-use, (4) cancellation of Registration No. 3,856,724 for fraud, (5) cancellation of Registration No. 3,856,724 for abandonment, (6) cancellation of Registration No. 3,856,724 for prior use, (7) cancellation of Registration No. 4,238,285 for non-use, (8) cancellation of Registration No. 4,238,285 for fraud, (9) cancellation of Registration No. 4,238,285 for abandonment, (10) cancellation of Registration No. 4,238,285 for prior use, (11) denial of application 85618998, (12) a declaration of the invalidity of New York State Service Mark No. S21282, (13) Injury to

Business Reputation and Dilution under NY Gen Bus § 360-l, (14) False Advertising, (15) Deceptive Business Acts or Practices, (16) Common Law Unfair Competition and Use of Name with Intent to Deceive, (17) Tortious Interference and (18) Unjust Enrichment.

Defendants Vantone Holdings Co., Ltd., Beijing Vantone Real Estate Co., Ltd. and Feng Lun, all Chinese entities, had also all been previously been served with plaintiff's First Amended Complaint pursuant to the Hague Convention, and filed a pre-Answer motion to dismiss, Dkt. 125, which as of this date is *sub judice*.

On January 31, 2014, this Court issued a Pre-Trial Scheduling Order, Dkt. 45, and this motion for a preliminary injunction is made pursuant to that Order.

<u>**FACTS**</u>

- **The Vantone Defendants and the China Center**

"Vantone" is a China-based conglomeration of companies with the equivalent of billions of U.S. dollars in assets in China, with various subsidiaries established in the United States starting in the 1990s. The Vantone conglomeration's businesses are primarily related to real estate and business development. *See* the annexed Declaration of Li Xu, as well as Exhibit "A," copies of Vantone Real Estate's profile and organizational charts which are exhibits to the plaintiff's Second Amended Complaint (Dkt. 123). Feng Lun, a Chinese national, is a Chairman of the Board and investor within the Vantone organization. Vantone Holdings Co., Ltd. and Beijing Vantone Real Estate Co., Ltd. are Chinese based entities within the Vantone conglomeration. Declaration of Li Xu.

The "Vantone US Defendants," are United States Vantone subsidiaries and affiliates, which includes the China Center New York LLC ("China Center"), Vantone Property NY LLC, Vantone Residences LLC, Vamerica Fund LLC, Vantone US LLC n/k/a

3

Vamerica LLC, Vantone US Inc. As detailed in Li Xu's Declaration, the Vantone US Defendants include the China Center, and other US subsidiaries which hold residential properties, as well as U.S. incorporated Vantone holding companies.

The China Center, incorporated in New York (www.chinacenter.com) is a Vantone invested project and is the lessee of six upper floors, 64th through 69th, of the iconic, recently completed One World Trade Center in New York City. The lease is was executed in March 2009, and is for approximately 21 years at a cost of hundreds of millions of U.S. dollars. The China Center's business will operate as a gateway for Chinese companies interested in investing and conducting business within the United States and will bring Chinese and American businesses together. It will provide a venue for business, social and cultural exchange, and will offer conference and event space, office suites and virtual offices, restaurants and a bar, cultural events, a library, a business membership club, a vertical "Folding Garden" based on a design by Chinese artist Zhou Wei and many other amenities centered around trade and business incubation, and from its location as the highest floors at the One World Trade Center, will offer spectacular views. The China Center interior has been planned by world-renowned architectural designer Kengo Kuma and will be completed at a cost of at least tens of millions of U.S. dollars. *See* Li Xu's Declaration.

The "Vantone" mark has achieved tremendous good will in China for some time, and through its substantial investments in business and promotional activities in the United States, the Vantone US defendants established their own branding and good will in several states within the United States and with major US and international businesses. Indeed, many Chinese companies are interested in becoming clients of and associated with the

China Center as they seek introductions to the US and its markets for investment because of the China Center's connections to the prestigious, well-respected and recognizable Vantone name. *See* Li Xu's Declaration.

- **The "Vantone" mark has been in commercial use in the United States since the 1990s, and the existence of the US "Vantone" entities has been readily ascertainable since that time.**

    As set forth in the Declaration of Kerry J. Kaltenbach, various Vantone entities operating under the "Vantone" mark have been in operation in the United States since the 1990s. Specifically, Vantone USA, Inc., a New York corporation, was operated from October 2, 1996 through February 23, 2004, and used the fictitious name "Vantone International Group". Vantone Corp., a California entity, existed from December 8, 1995 through December 27, 2007. China Center New York LLC was formed in Delaware on May 10, 2006 and exists to this day, and Vantone Holdings Ltd. is its sole member. Vantone Residences LLC and Vantone Property NY LLC, both New York corporate entities, were formed on July 23, 2009, and remain in existence. Vantone US Inc., incorporated in Delaware, was formed on December 2, 2009, and remains in existences to this day. Finally, Vamerica Fund LLC, a New York corporation existed from October 12, 2012 to March 8, 2013. Copies of public filings regarding these entities are annexed hereto as Exhibit "B." Each of these US Vantone corporate entities were involved in specialized business development throughout their existence and expended considerable sums to promote both their corporate name and respective businesses.[1] Annexed hereto as Exhibit

---

[1] Critically, none of these US Vantone Corporate entities were engaged in real estate brokerage services nor in providing any financial management services for sale of stocks, bonds, commodities or securities and were not licensed to offer either such services within description of those business activities claimed by the TVG registered trademarks.

"C" is a sampling of documents demonstrating these entities' business operations in the United States. Moreover, the domain name "Vantone.com" was registered on August 4, 1996 by an employee of defendant Yangpu NGT Industrial Co. Ltd, a named defendant in this case, to whom it is registered to this day. Exhibit "D."

- **Vantone's US Defendants' interest in the China Center and Its Business Activities Involving Redevelopment of Lower Manhattan has been highly publicized since at least 2005.**

Media coverage in the United States and particularly in New York City of Vantone's interest in investing in the revitalization Lower Manhattan and the China Center has been intense since at least mid-2005, and coverage during the period of mid-2005 to mid-2006 alone was extensive. In connection with promotion of the Chinese Vantone companies, there were descriptions of US Vantone defendants' involvement associated with redevelopment of the World Trade Center. Publicized coverages included Governor Pataki's trip to China and meetings with Vantone executives, including Chairman Feng Lun, and his successful persuasion of Vantone to be early investors in the redevelopment of Lower Manhattan. There was extensive media coverage concerning the target business activities of the China Center and its role in bringing further investment into New York City and the United States. Annexed as Exhibit "E" are print media articles from various publications, including the New York Sun – May 17, 2005; New York Post – August 29, 2005; Real Estate Weekly, a New York newspaper – August 31, 2005; 1010, Wins – September 22, 2005; The New York Times – September 23, 2005; New York Post – September 23, 2005; The Daily News – September 23, 2005; The Associated Press – September 23, 2005; New York Sun – September 23, 2005; Newsday – September 23, 2005; Forbes.com – September 26, 2005; The Real Deal – October 19, 2005; The Real

Deal – November 29, 2005; The New York Sun – December 16, 2005; Newsday.com – January 24, 2006; The Daily News – January 24, 2006; Yahoo Finance – January 24, 2006; Reuters – January 24, 2006; The Wall Street Journal – January 25, 2006; The New York Times – January 25, 2006; The Real Deal – January 25, 2006; Bloomberg – April 2, 2006; New York Times – April 13, 2006; New York Sun – May 23, 2006; New York Sun – July 6, 2006; The Real Deal – July 12, 2006; New York Sun – July 12, 2006; New York Sun – July 14, 2006; The Real Deal – July 26, 2006; The New York Times – July 27, 2006; and the New York Observer – July 27, 2006.  These were state and nation wide publications.

- **The April 13, 2006 New York Times article concerning the "Vantone Group" and Feng Lun.**

Aside from the numerous local and national publications in which the Vantone entities and their business operations were described, on April 13, 2006, an article appeared in the New York Times entitled "Tycoon of Chinese Real Estate Is Leasing at Trade Center Site," annexed as Exhibit "F."  The article referred to Feng Lun as "one of China's biggest real estate tycoons," and reported that he was "heading to New York City as the only major tenant so far at the World Trade Center site."[2]  The article further referred to "Mr. Feng's real estate company, the Vantone Group," and reported Feng Lun "intends to open in New York City what he calls a business and cultural 'China Center.'"  In the article, Feng Lun is described as "about as big as they get" with "extensive high-level contacts," and the deal for the China Center as a possible "good-will gesture by China," "highly valued by the city

---

[2] The New York Times article discussed the proposed China Center as 7 World Trade Center, but as set forth in Xu Li's Declaration, it is temporarily housed there.  The China Center's home will be in the iconic One World Trade Center.  *See* Xu Li's Declaration.

and state. We hope it's a magnet." Significantly, the New York Times, dated April 13, 2006, used the term the "Vantone Group" no less than five times. Exhibit "F."

- **Leonardo Gianella's April 13, 2006, 8:17 p.m. registration of the domain name "VantoneGroup.com."**

On April 13, 2006, the same day of the New York Times article, in the evening at 8:17 p.m., Leonardo Gianella registered the domain name "VantoneGroup.com" on domain registrar GoDaddy.com. *See* Exhibit "G," GoDaddy WhoIs Search, along with subpoenaed records from GoDaddy marked as an exhibit during the deposition of Leonardo Gianella. That same evening, April 13, 2006, Mr. Gianella also registered the domain names "VantoneGroup.net," "VantoneGroup.info," and "VantoneGroup.biz." *Ibid.*[3]

On April 18, 2007, Leonardo Gianella filed Articles of Organization for the plaintiff, The Vantone Group LLC, however it was not until January 8, 2008 that the plaintiff finally became a licensed real estate brokerage. Exhibit "H." Such licensing was required before the plaintiff could offer real estate brokerage services.

- **Leonardo Gianella's registration of numerous other domain names.**

Notably, Leonardo Gianella also registered other real estate-related domain names on GoDaddy, all without permission or right to do so and using other brand famous names. At one time, Mr. Gianella worked for Corcoran Realty Group, and after he left Corcoran's employment and without their permission, he registered a variation of their name on GoDaddy.com. When asked in his deposition what he used the domain name for, he explained: "Nothing, it's just a registered domain name." *See* Leonardo Gianella's July 17,

---

[3] Presumably, on April 13, 2006, Mr. Gianella learned that the domain name "Vantone.com" had already been registered by a Vantone entity and was unavailable.

2014 deposition transcript, annexed hereto as Exhibit "I,"[4] p.119, l.13 to p.120, l.7. Leonardo Gianella's July 18, 2014 deposition transcript is annexed hereto as Exhibit "J." However, Ariela Grinsberg, who purportedly worked with Gianella, characterized the Corcoran and Elliman as preeminent real estate companies. Grinsberg Deposition transcript annexed hereto as Exhibit "K," p.25, line 11-20.

Subpoenaed GoDaddy.com records, a portion of which are annexed hereto as Exhibit "L," show that Mr. Gianella registered "Corcoran.asia," "Elliman.asia," "Orioncondo.asia," "Pasiscondo.asia," "TheSheffield.co," "Sheffieldcondo.co" and "Ateliercondo.asia." Mr. Gianella acknowledged that Orion, The Sheffield, Atelier and Paris Hotel all are well-known New York condominiums, in which he had no interests, Exhibit "I," p. 121, l.4 to p.124, l.8. Mr. Gianella registered more than 25 domain names in 2006, Exhibit "I," p. 119, l.8 – 12, within the same year he registered "VantoneGroup.com."

- **"Vantone" federal and state service mark registrations, and false application statements by Leonardo Gianella made to fraudulently procure registrations.**

Leonardo Gianella is the registrant/signatory for two federal service marks and one New York State service mark, and for an application for a third federal service mark.[5] These include:

> **"The Vantone Group**" for **"Real Estate Brokerage,"** US Registration 3,856,724 (US Serial Number 77949645), Application Filing Date of March 3, 2010 and Registration

---

[4] The deposition transcripts in this case, together, are very lengthy. For sake of economy in ECF filing, only portions of transcripts cited are attached as exhibits. If necessary, movants will, of course, file the entire transcripts.

[5] The Vantone US Defendants seek cancellation of the federal trademarks registrations, denial of the federal trademark application, and a declaration of the invalidity of the state service mark in their counterclaim against the plaintiff and third-party complaint against Leonardo Gianella. Dkt. 124.

Date of October 5, 2010.

Exhibit "M." In the application, Leonardo Gianella represented that the mark was first used anywhere "[a]t least as early as 04/13/2006"[6] and first used in commerce "[a]t least as early as 04/18/2007." Significantly, Mr. Gianella also declared under penalty of perjury that he:

> believes the applicant to be the owner of the trademark/service mark sought to be registered [and] … no other … firm [or] corporation … has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely … to cause confusion, or to cause mistake, or to deceive.

Exhibit "M." [7] Moreover, on the attachment which is the fourth to last page of this application, Mr. Gianella states "a search for ANY business nationwide even containing the name Vantone only pulled up my listing." On this page, Mr. Gianella included an Internet screenshot of a "Yellowpages.com" search for "NY."[8] Exhibit "M."

> **"The Vantone Group"** for **"Financial and investment services**, namely management and brokerage in the fields of stocks, bonds, options, commodities, futures and other financial securities, and the investment of funds," **US Registration** 4,238,285 (US Serial Number 85212437), Application Filing Date of January 7, 2011 and Registration Date of November 6, 2012.

---

[6] Presumably the date Mr. Gianella registered the domain name "VantoneGroup.com." Significantly, however, "the right to use a mark exclusively derives from its use in commerce, not its mere adoption." Lopez v. Gap, Inc., 883 F. Supp. 2d 400, 417 (S.D.N.Y. 2012).

[7] Since Gianella now claims that the similarity of the Vantone name alone creates confusion with his trademark, his refusal to have disclosed his knowledge of other US Vantone entities when he filed his application of intent to use the Vantone name was a misrepresentation to the USPTO.

[8] On this Federal service mark application, Mr. Gianella did not include any kind of national search, or search from an Internet search engine such as Google or Yahoo, or a search of a national business directory. Undoubtedly, Mr. Gianella conducted such searches and they revealed senior users of the "Vantone" mark, so he selected only the very limited New York Yellow Pages search for his application so that his registration would be approved. While Mr. Gianella included a "Google maps" printout of his business address, he did not include a "Google" search of the "Vantone" name. Mr. Gianella's statement on his application that "a search for ANY business nationwide even containing the name Vantone only pulled up my listing" was therefore false, and is belied by the fact that he did not include the results such a nationwide search in his application, choosing instead included the results of only the most limited search possible – a Yellow Pages search limited to New York. Exhibit "M."

Exhibit "N." The Application and Registration is a "Section 1(b) Application based on intent to use," therefore the date of its use in commerce was inapplicable. Mr. Gianella's application contained the same declaration as for real estate brokerage. Exhibit "N."[9]

> **The Chinese characters "万通集团," for "Real Estate Brokerage,"** which it is claimed is a translation of "The Vantone Group," US Serial Number 85618998, **Application** Filing Date of May 7, 2012.

In the application, Leonardo Gianella represented that the mark was first used "in another form" anywhere "[a]t least as early as 04/13/2006" and first used in commerce "[a]t least as early as 04/18/2007." Mr. Gianella's application contained the same declaration as for real estate brokerage. Exhibit "O."

> **"The Vantone Group" New York State Service Mark Registration** Number S21282. Applicant Leonardo Gianella represents that the mark was first used anywhere on April 13, 2006 and first used in New York State on April 27, 2007.

Exhibit "P."

- **The business of Leonardo Gianella and the plaintiff is not real estate brokerage; it is making a non-bona fide, sham use of the "Vantone" name for purposes this lawsuit, for extortion of monies and contriving issues of confusion.**

At her deposition, Leonardo Gianella's wife, Hung-Wei Gianella, was asked the name of the company where her husband worked, and she testified that it was "Gianella and Associates."[10] Deposition of Hung-Wei Gianella, annexed as Exhibit Q," p.19, l.4-9.

---

[9] In his "Response to Office Action" concerning this registration, Mr. Gianella acknowledged that he registered this trademark only to "establish any other business activity that the China Center or Beijing Vantone may want to encroach upon in the future." Exhibit "R." Mr. Gianella also acknowledged at his deposition, that neither he nor anyone who ever worked with the plaintiff was ever eligible to sell stocks, bonds, options, commodities, futures or other securities. Exhibit I," p. 152, l. 9 -14. Consequently, there could never have been any "use" as he claimed before the USPTO.

[10] Another company formed by Leonardo Gianella.

When asked "[s]ince you married in November of 2012 do you know if he worked for any other company that Gianella and Associates?" Ms. Gianella responded "Trader Joe's," the "grocery store." Exhibit "Q," p.19, l.18 to p.20, l.2. When questioned further, Ms. Gianella later testified that Mr. Gianella had "another company called Vantone." Exhibit "Q," p.22, l.10-14.

Mr. Gianella's business, the plaintiff, has not conducted significant business in the eight years since Mr. Gianella registered the domain name "VantoneGroup.com" on April 13, 2006. While Mr. Gianella purportedly had two sales agents working at the plaintiff, Ariella Grinberg and Morwin Schmookler, neither of them closed or at least could recall closing any deals. See Grinberg deposition transcript annexed hereto as Exhibit "K," p. 20, l.5-7, See Schmookler deposition transcript annexed hereto as Exhibit "S," p. 29, l. 7-9. In fact, both knew Mr. Gianella through a "friend of a friend," Richard Grundy. Exhibit "K," p. 13, l. 14-19; Exhibit "S," p.17, l. 21-24 and p.44, l. 19-24. Ms. Grinberg explained that she and Mr. Schmookler knew Mr. Gianella socially, from West Side Tavern and some other bars where they would meet. Exhibit "K," p.28, l.8-25.

In terms of deals actually completed, first, Mr. Gianella provided in discovery a single "Exclusive Agreement" for an "Exclusive Right-to-Sell" dated May 22, 2006 (before the plaintiff was formed) for his friend, Albert Grundy on Willow Street in Brooklyn. Next, Mr. Gianella provided an invoice for a commission and check dated November 4, 2009 for $21,000. Last, Mr. Gianella provided a Schedule C, Form 1040 for the plaintiff for year 2011 showing total gross receipts of $32,041.[11] Copies of these documents are annexed collectively as Exhibit "T." When asked at his deposition if the

---

[11] Plaintiff has been unable to show "settlement" papers that this is a genuine commission fee transaction attributable to TVG.

plaintiff earned more than \$32,041 within the period from 2006 to December 2011, Mr. Gianella was not even unsure. Exhibit "I," p.127, l.24 to p.128, l.8. At his deposition, Mr. Gianella testified that the plaintiff was the broker for the lease of a restaurant in Midtown Manhattan, the name of which he could not recall. Mr. Gianella also could not recall the year the lease was completed, but believed it was after 2009. Exhibit "I," p.77 to p.78. Notably, in its Second Amended Complaint in this case, the plaintiff alleges that it is "one of the preeminent real estate companies in New York City." Dkt. 121, ¶37.

Mr. Gianella's Internet website for the plaintiff, as it existed prior to his recent removal this year, Exhibit "U," consisted primarily of Mr. Gianella's blog. The blog was devoted almost exclusively to efforts to establish the plaintiff's "right" to the "Vantone" mark, a discussion concerning the Vantone defendants and an organizational chart for them, and even contained a copy of the first page of the plaintiff's First Amended Complaint. In addition, Mr. Gianella's blog disclosed: "We are NOT affiliated in anyway with the Beijing Based Vantone Holdings company." Exhibit "U." Interestingly, with an obvious view toward this lawsuit, when he received an e-mail from individuals hoping to work for or network with the Vantone defendants, Mr. Gianella ensured that he used the word "confused" or "confusion" in his response, and included those responses in his document disclosure. Exhibit "V." ("You have confused us…," "to avoid any confusion…"). Mr. Gianella was unable to say whether the plaintiff lost any real estate commissions to the Vantone defendants. Exhibit "I," p.157, l. 14-17.[12]

---

[12] "The test of trademark infringement is whether the defendant's mark is so similar to plaintiff's that it is 'likely to cause confusion, or to cause mistake, or to deceive." B & L Sales Associates v. H. Daroff & Sons, Inc., 298 F. Supp. 908, 910 (S.D.N.Y. 1969). None of the defendants are involved in providing real estate brokerage services which is the plaintiff's only business.

• **Leonardo Gianella harassment campaign against and efforts to extract a payment from the Vantone defendants and Feng Lun.**

In efforts to extract payment of money from the Vantone defendants, Gianella engaged in an ambitious and scurrilous letter and e-mail campaign to harass, intimidate, embarrass, make trouble for and interrupt the businesses of the Vantone defendants and Feng Lun, and even to get Feng Lun arrested. As part of his campaign and as evidenced by Exhibit "W," Mr. Gianella wrote to Google and LinkedIn in an effort to disrupt and discredit the Vantone defendants. Mr. Gianella also wrote to the Vantone defendants' business partners NYC Economic Development Corporation, Empire State Development Corp. and the Port Authority of New York & New Jersey in an effort to disrupt Vantone's business relationships with them. Next, Mr. Gianella wrote to four newspapers in the United States and China, the New York Post, the People's Daily, the World Journal and the New York Daily News, accusing Feng Lun of felony fraud against the United States government in each instance. Additionally, Mr. Gianella wrote to Congresswoman Carolyn Maloney and Senator Charles Schumer hoping at least to get the attention of the Vantone defendants. Exhibit "W."

Mr. Gianella wrote to the United States Patent and Trademark Office, the International Trade Commission, the Committee on Foreign Investment in the United States, Stopfakes.gov and the National Intellectual Property Rights Coordination Center, all in an effort intimidate the Vantone defendants. Further Leonardo Gianella contacted the Department of Homeland Security, falsely alerting them to a "CRIMINAL matter, specifically fraud … committed by FENG LUN" who "has shown no compunction."

Leonardo Gianella contacted the United States International Trade Commission, the City of San Francisco, and the White House Office of Management and Budget,

inquiring "[i]s there any federal government mechanism that insures that the federal government does not grant business licenses' or allow foreign owned businesses whose company violation a U.S. registered trademark." Mr. Gianella also contacted the U.S. Customs and Border Patrol. Exhibit "W."

Finally, Mr. Gianella communicated to the U.S. Department of Justice regarding "a tip about possible criminal activity" and the FBI New York Office concerning "FELONY Fraud Committed by Chairman of Beijing Vantone." Exhibit "W," Without a doubt, Mr. Gianella somehow believed that an arrest and criminal prosecution of Feng Lun would help his efforts to force Mr. Lun and the Vantone defendants to pay him for the "Vantone" mark. Unsurprisingly, Mr. Gianella's campaign against the Feng Lun and the Vantone defendants utterly failed.

- **Leonardo Ginaella's efforts to sell the "Vantone" name for $20,000,000.00 to the China-based Vantone conglomeration.**

On September 4, 2013, Mr. Gianella sent an e-mail to Chinese counsel for China-based Vantone companies claiming that "his brand" is valued at $20,000,000. Exhibit "X."[13] In his e-mail, Mr. Gianella explains to Chinese counsel "[a]s you may soon find out as far as the law is concerned the 'Vantone' name and mark belong to us." He further noted "Apple paid 60 Million for the 'Apple' mark" and "TESLA is asking 30 plus million so that is in the ballpark for what marks go for." Finally, Mr. Gianella emphasized "[s]o that I am crystal clear we will not settle this for 'little money' as you suggested." Exhibit "X."

---

[13] The portion of this letter which quotes or summarizes a Rule 408 settlement communication/letter has been redacted.

Notably, in his deposition, Mr. Gianella testified:

Q: …did you offer [to] sell the Vantone name?
A: Yes.
Q: And did you discuss a price at which you would do that?
A: Yes.
Q: And what was the price?
A: Twenty million.
Q: Twenty million U.S. dollars?
A: That's right.
Q: And did you come up with that particular figure?
A: Yes.
Q: And how did you calculate that?
A: Just kind of pulled it out of a hat.

Exhibit "I," p.130, l.1-17.  However, when asked, "Do you believe that your business has suffered as a result of the allegations in your Complaint?," Mr. Gianella responded: Well, primarily all the time that energy I have diverted to this matter." Exhibit "J," p.55, l.6-24. Shortly after his registrations, Mr. Gianella acknowledged that he contacted several companies, possibly more than five, in multiple attempts to sell the Vantone name.  Exhibit "I," p.131, l.1-12.

## LEGAL ARGUMENT

### I.    THE VANTONE DEFENDANTS ARE SENIOR COMMON LAW USERS OF THE "VANTONE" MARK

"Common law trademark rights develop when goods bearing the mark are placed in the market and followed by continuous commercial utilization." Cullman Ventures, Inc. v. Columbian Art Works, Inc., 717 F. Supp. 96, 113 (S.D.N.Y. 1989). *See also* Buti v. Impressa Perosa S.R.L., 139 F.3d 98 (2d Cir. N.Y. 1998); Mori Lee, LLC v. Sears Holdings Corp., 2014 U.S. Dist. LEXIS 133820 (S.D.N.Y. Sept. 8, 2014); Marshak v. Schaffner, 2012 U.S. Dist. LEXIS 66536 (S.D.N.Y. 2012). *C.f.* La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc., 495 F.2d 1265 (2d Cir. N.Y. 1974). Common law trademark rights confer ownership of the mark. *E.g.* Patrizzi v. Bourne in Time, Inc., 2013 U.S. Dist. LEXIS 110355 (S.D.N.Y. 2013); Momentum Luggage & Leisure Bags v. Jansport, Inc., 2001 U.S. Dist. LEXIS 10253 (S.D.N.Y. July 23, 2001).[14] Of course, "trademark ownership rights go to the 'first-to-use, not [the] first-to-register.'" Haggar Int'l Corp. v. United Co. for Food Industry Corp., 906 F. Supp. 2d 96, 105 (E.D.N.Y. 2012) (*citations omitted).*

Significantly, in evaluating use of a mark, coverage concerning the mark or the use in print media is significant: "finding continuous use where mark was used for almost ten years and plaintiff enjoyed substantial coverage in the print media." Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC, 470 F. Supp. 2d 365, 372 (S.D.N.Y. 2007) *citing*

---

[14] Pursuant the trademark doctrine of "tacking," rights to a mark are retained even if the mark is varied or altered, as long as the new and old forms of the mark create the same, continuing commercial impression. *E.g.* Phillips-Van Heusen Corp. v. Calvin Clothing Co., 444 F. Supp. 2d 250 (S.D.N.Y. 2006); Cullman Ventures, Inc. v. Columbian Art Works, Inc., 717 F. Supp. 96 (S.D.N.Y. 1989). The distinct "Vantone" name, used in connection with separate but related companies in the United States, creates the same, continuing impression.

Housing & Servs. v. Minton, 1997 U.S. Dist. LEXIS 8883 (S.D.N.Y. 1997). *See also* Sanrio Co., LTD. v. Ann Arctic, Inc., 1998 U.S. Dist. LEXIS 19384 (E.D.N.Y. 1998)(a trade dress issue in which "Sanrio's products have been in continuous use for over twenty years, at great advertising expense and to great media acclaim").

In this case, as set forth in the Declarations of Kerry Kaltenbach and Exhibits "B" and "C," the "Vantone" name has been is use in the United States since the mid-1990s. Indeed, Vantone USA, Inc. and Vantone Corp. started doing business around time that time, and Vantone Corp. existed continuously until 2007. Moreover, the Vantone name has been extremely well publicized in the press, particularly around April 13, 2006, when Leonardo Gianella registered the domain name "VantoneGroup.com." Not coincidentally, the term "Vantone Group" appeared five times in a New York Times article on April 13, 2006, and Mr. Gianella registered the name that evening.

## II. THE PLAINTIFF'S FEDERAL AND NEW YORK STATE TRADEMARK REGISTRATION SHOULD BE CANCELLED, AND FEDERAL TRADEMARK APPLICATION DENIED.

### A. Cancellation Based upon Prior Use of the "Vantone" Marks by Defendants.

A Court has the power to cancel federal registrations. 15 U.S.C. § 1119. "If one of the defenses [to registration] is established, registration constitutes only prima facie and not conclusive evidence of the owner's right to exclusive use of the mark." Haggar Intern. Corp. v. United Co. for Food Industry Corp., 906 F.Supp.2d 96, 106 (E.D.N.Y. 2012); citing Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 199 n. 6, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985). Of course, a prior or senior user of a mark can obtain cancellation of a junior user's USPTO registration of a mark. *See e.g.* Ford Motor Co. v. Ford, 59

C.C.P.A. 1124, 462 F.2d 1405 (C.C.P.A. 1972) (cancelling "Ford Records" registration because of likelihood of confusion with Ford Motor Company's trademark "Ford"), cert. denied, 409 U.S. 1109, 34 L. Ed. 2d 690, 93 S. Ct. 910 (1973); Southern Enterprises, Inc. v. Burger King of Florida, Inc., 57 C.C.P.A. 826, 419 F.2d 460 (C.C.P.A. 1970) (cancelling "Whoppaburger" registration because of likelihood of confusion with Burger King's "Whopper" trademark); Sterling Drug v. Bayer AG, 14 F.3d 733, 743 (2d Cir. 1994).

Here, as set forth *supra*, the Vantone Defendants are actual senior users of the "Vantone" mark. Notwithstanding, Mr. Gianella's U.S.P.T.O and state registrations of and federal application for various "Vantone" marks, as senior users, the Vantone defendants are entitled to cancellation of them.

### B.     Cancellation Based upon Fraudulent Procurement of the "Vantone" Marks by Mr. Gianella and the Plaintiff.

The Lanham Act provides for cancellation at any time of registration of a trademark "obtained fraudulently." 15 U.S.C.A. §1064(3), *E.g.* Quality Serv. Group v. LJMJR Corp., 831 F. Supp. 2d 705 (S.D.N.Y. 2011). "Fraud in procuring a trademark registration occurs when an application for registration knowingly makes false, material representations of fact in connection with an application to register" Burkina Wear, Inc. v. Campagnolo, S.R.L., 2011 U.S. Dist. LEXIS 1556, 8-9 (S.D.N.Y. 2011). *See also* Quality Serv. Group *supra*; Melodrama Publ'g, LLC v. Santiago, 2013 U.S. Dist. LEXIS 56988 (S.D.N.Y. 2013); Mears v. Montgomery, 2004 U.S. Dist. LEXIS 7836 (S.D.N.Y. 2004). The Second Circuit has held:

> In determining a defendant's intent, "actual or constructive knowledge" of the prior user's mark or dress may indicate bad faith. Where such prior

> knowledge is accompanied by similarities so strong that it seems plain that
> deliberate copying has occurred, we have upheld findings of bad faith.

Paddington Corp. v. Attiki Importers & Distribs., Inc., 996 F.2d 577, 587 (2d Cir.

1993)(*citations omitted*).

Likewise, New York General Business Law provides that a New York State mark

registration shall be cancelled if "that the registration was obtained fraudulently." NY CLS

Gen Bus § 360-h(c)(4).[15]

Mr. Gianella's service mark registrations of the "Vantone" mark were fraudulently

procured. In his applications, Mr. Gianella misrepresented that the marks were first used

anywhere "at least as early as 4/13/2006" and in commerce "at least as early as 4/18/2007."

However, Mr. Gianella had both actual and constructive knowledge that the "Vantone"

name was in use and widely publicized by the date of his application. Moreover, Mr.

Gianella misrepresented that "a search for ANY business nationwide even containing the

name Vantone only pulled up my listing" but he tellingly attached only a

"Yellowpages.com" search limited to New York to his application. Without a doubt, Mr.

Gianella performed a simple Internet search, such as on "Google" or "Yahoo," of the word

"Vantone" which yielded numerous results showing defendants business and news articles

about the China Center. Because Mr. Gianella failed to disclose his knowledge that other

---

[15] Fraudulent registration is also grounds for the recovery of damages:

> Any person who shall for himself or herself, or on behalf of any other person, procure the
> filing or registration of any mark in the office of the secretary under the provisions hereof,
> by knowingly making any false or fraudulent representation or declaration, orally or in
> writing, or by any other fraudulent means, shall be liable to pay all damages sustained in
> consequence of such filing or registration, to be recovered by or on behalf of the party
> injured thereby in any court of competent jurisdiction.

NY CLS Gen Bus § 360-j.

US companies were using the Vantone mark, when he had actual and constructive knowledge of other US Vantone companies using the identical mark, he made material misrepresentations to the USPTO his registration of the "Vantone" marks should be cancelled.

### C. Cancellation Based upon Sham and Token Use, and Lack of Bona Fide Use, of the "Vantone" Marks by Mr. Gianella and the Plaintiff.

For registrations of trademarks, the Lanham Act requires that the marks be "used in commerce," 15 U.S.C.A. § 1051, and under the Act, "use in commerce" requires "the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C.A. § 1127(emphasis added). "A bona fide 'use in commerce' does not include a token use whose only purpose is to support an application for trademark registration." Chere Amie, Inc. v. Windstar Apparel, Corp., 2002 U.S. Dist. LEXIS 4950 (S.D.N.Y. Mar. 25, 2002) citing Chance v. Pac-Tel Teletrac Inc., 242 F.3d 1151 (9th Cir. Cal. 2001). Significantly, the Second Circuit has noted that "a 'sham use' of a trademark … did not suffice to establish or preserve rights to that trademark." Del-Rain Corp. v. Pelonis USA, Ltd., 29 Fed. Appx. 35, 38 (2d Cir. 2002). Indeed, "[i]t is … something of an oxymoron to contend that a bad-faith use should be deemed a 'bona fide use.'" Ibid. See also I.H.T. Corp. v. News World Communs., Inc., 1984 U.S. Dist. LEXIS 15260 (S.D.N.Y. July 3, 1984)("use … must constitute more than 'sham transactions' designed exclusively to satisfy the trademark laws").

In ABC Rug & Carpet Cleaning Serv., Inc. v. ABC Rug Cleaners, Inc., this Court explained:

> Bad faith is present where "the defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion

between his and the senior user's product," and can be demonstrated through "a showing of actual or constructive knowledge of the prior user's mark." "[W]here the infringing marks are identical, defendant has the burden of persuading the court that there is a credible innocent explanation".

ABC Rug & Carpet Cleaning Serv., Inc. v. ABC Rug Cleaners, Inc., 2010 U.S. Dist. LEXIS 145896, p.51 (S.D.N.Y. 2010) *citing* Lang v. Ret. Living Publ'g Co., 949 F.2d 576 (2d Cir. 1991); Tri-Star Pictures, Inc. v. Unger, 14 F. Supp. 2d 339 (S.D.N.Y. 1998); Gianni Versace, S.p.A. v. Versace, 2003 U.S. Dist. LEXIS 14858 (S.D.N.Y. 2003); Paddington Corp. v. Attiki Imps. & Distribs., Inc., 996 F.2d 577 (2d Cir. 1993).[16] Obviously, "bad faith 'may be inferred from the junior user's actual or constructive knowledge of the senior user's mark." Lopez v. Gap, Inc., 883 F. Supp. 2d 400, 423 (S.D.N.Y. 2012) *citing* De Beers LV Trademark Ltd. v. DeBeers Diamond Syndicate Inc., 440 F. Supp. 2d 249 (S.D.N.Y. 2006).

As for trademarks and service marks, New York General Business Law requires a bona fide use: "[t]he term 'use' means the bona fide use of a mark in the ordinary course of trade," NY CLS Gen Bus § 360(h).

By his deposition testimony, Mr. Gianella and the plaintiff have made only a "sham," token and non-bona fide use of the "Vantone" name. Indeed, Mr. Gianella was aware that the "Vantone" name was in use by the Movants when he applied for his registrations. In the time since he registered the domain name "VantoneGroup.com," Mr. Gianella's company did only *de minimis* business. Mr. Gianella sought to sell rather than use the Vantone mark and demanded $20 million dollars for the "Vantone" name from defendants,

---

[16] Moreover, "[t]rademarks cannot be 'banked' or 'warehoused'--that is, you cannot register thousands of names, unrelated to any product or service that you sell, in the hope of extracting a license fee from sellers of products or services for which one of your names might be apt." Custom Vehicles, Inc. v. Forest River, Inc., 476 F.3d 481, 485 (7th Cir. 2007).

and did his best to increase pressure on the Movants to buy the Vantone name by his efforts to harass, intimidate, embarrass and interfere with the business of defendants and Feng Lun. Indeed, Mr. Gianella went as far as to try to get Feng Lun arrested. This "sham" and bad faith use warrants cancellation of the plaintiff's "Vantone" marks.

### D. Cancellation Based upon Insufficient Use of the "Vantone" Mark by Mr. Gianella and the Plaintiff.

A trademark may be cancelled for insufficient use. "Trademark rights are not created by sporadic, casual, and nominal shipments of goods bearing a mark. There must be a trade in the goods sold under the mark or at least an active and public attempt to establish such a trade." Cullman Ventures, Inc. v. Columbian Art Works, Inc., 717 F. Supp. 96, 115 (S.D.N.Y. 1989) *citing* Chandon Champagne Corp. v. San Marino Wine Corp., 335 F.2d 531, 534 (2d Cir. 1964) (sale of a few hundred cases of Dom Perignon held insufficient to reserve unregistered marks for all time against others); D.M. & Antique Import Corp. v. Royal Saxe Corp., 311 F. Supp. 1261, 1270 (S.D.N.Y 1969) (transitory and minimal use by the defendant held to be insufficient use to give defendant priority over the plaintiff's long, continued and notorious use). "Adoption and a single use of the mark may be sufficient to permit registration of the mark, but more is required if its owner seeks to use the mark to stifle the efforts of others." La Societe Anonyme des Parfums Le Galion v. Jean Patou, Inc., 495 F.2d 1265, 1271 (2d Cir. 1974). Custom Vehicles, Inc. v. Forest River, Inc., 476 F.3d 481 (7th Cir. 2007)(*holding* the use of the trademark in one commercial sale is not enough to place the trademark in the ordinary course of trade, unless the sale is large enough to seize the attention of the relevant market).

In this case, in the eight years since registering "VantoneGroup.com," Mr. Gianella's and the plaintiff's only identifiable business were acting as a listing broker on

his friend's home sale in 2006,[17] earning a $21,000 commission in 2009, and some unidentified transaction(s) allegedly for which TVG filed a Schedule C, Form 1040 showing gross receipts of $32,041 in 2011. This transitory and minimal use of the "Vantone" mark by the plaintiff is insufficient use as a basis for the claimed use in obtaining the trademark or to maintain the trademark, and accordingly, the trademark should be cancelled.[18]

### III. LEONARDO GIANELLA AND THE PLAINTIFF IS DILUTING DEFENDANTS' "VANTONE" MARK AND INJURING THEIR BUSINESS REPUTATION WITHIN THE MEANING OF N.Y. GEN. BUS. LAW § 360-l.

New York General Business Law provides injunctive relief against parties who are diluting another's mark or will likely injure their business reputation, regardless of whether the mark is registered or confusion is at issue:

> Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

NY CLS Gen Bus § 360-l, Injury to business reputation; dilution.

"Typically, dilution is characterized as a 'whittling down' of the identity or reputation of a tradename or mark." Sally Gee, Inc. v. Myra Hogan, Inc., 699 F.2d 621, 625 (2d Cir. 1983), *citing* Mortellito v. Nina of California, Inc., 335 F. Supp. 1288 (S.D.N.Y. 1972). *See also* Jim Beam Brands Co. v. Beamish & Crawford, Ltd., 937 F.2d

---

[17] Gianella only produced what he claimed was a listing agreement, signed by a friend, and was unable to provide any evidence of significant efforts to promote or sell the property. The property was actually listed and sold by another broker.

[18] Moreover, as for "The Vantone Group" for "Financial and investment services," US Registration 4,238,285, neither Mr. Gianella nor the plaintiff were even permitted to "use" this mark because neither Mr. Gianella nor anybody who worked for the plaintiff had an appropriate and necessary securities license.

729, 736 (2d Cir. 1991). "The thrust of a [New York State law] dilution complaint is that the continuing use of a particular mark similar to plaintiff's will have an adverse effect upon the value of plaintiff's mark and that, if plaintiff is not protected, its mark will eventually lose its distinctiveness." <u>Laverne International, Ltd. v. American Institute of Interior Designers, Inc.</u>, 353 F. Supp. 659, 665 (S.D.N.Y. 1973). As noted by the Second Circuit, "tarnishment is not limited to seamy conduct." <u>New York Stock Exchange, Inc. v. New York Hotel & Casino, Inc.</u>, 293 F.3d 550 (2d Cir. 2002), *quoting* <u>Hormel Foods Corp. v. Jim Henson Prods., Inc.</u>, 73 F.3d at 497, 502-503.

"To plead a successful cause of action under the New York dilution law, a plaintiff must prove (1) ownership of a mark that is distinctive or has acquired distinctiveness through secondary meaning, and (2) a likelihood of dilution through blurring or tarnishment." <u>Hearts on Fire Co., LLC v. L C Int'l Corp.</u>, 2004 U.S. Dist. LEXIS 14828, p.9-10 (S.D.N.Y. July 30, 2004). Blurring occurs when the defendant uses a mark that is the same or similar to the plaintiff's mark to identify its goods, causing a potential loss of distinctiveness of the plaintiff's mark to the plaintiff's product. <u>Hearts on Fire Co., LLC</u> at p. 10, *citing* <u>New York Stock Exchange, Inc. v. New York, New York Hotel, LLC</u>, 293 F.3d 550 (2d Cir. 2002). Tarnishment occurs when the defendant uses the mark in a way that dilutes the quality or prestige associated with the plaintiff's mark because of confusion between the two marks. *Ibid.*

Here, the Vantone defendants, as senior users, are entitled to use the "Vantone" mark and obtain cancellation of the plaintiff's mark. As set forth in the Declaration of Li Xu, the "Vantone" name, used by US corporate entities, has tremendous good will and prestige in the United States, and its association with the China Center is the reason many

potential clients want to be connected with the China Center.  Should potential clients associate or continue to associate the "Vantone" name with Mr. Gianella and the plaintiff, the business reputation of Vantone and the China Center will be damaged, and the good, prestigious, distinctive name of both Vantone and the China Center be diluted.

IV.     **BECAUSE THEY ARE DILUTING DEFENDANTS' MARK AND INJURING THEIR BUSINESS REPUTATION, AN INJUNCTION SHOULD ISSUE PRELIMINARILY ENJOINING THE PLAINTIFF AND MR. GIANELLA FROM USING THE "VANTONE" MARK.**

This Court has recently held that in "determining whether to grant a preliminary injunction must consider three factors: '(1) irreparable harm absent injunctive relief; (2) either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor; and (3) that the public's interest weighs  in favor of granting an injunction.'" Mister Softee, Inc. v. Tsirkos, 2014 U.S. Dist. LEXIS 77434, 12-13 (S.D.N.Y. June 5, 2014) *citing* Red Earth LLC v. United States, 657 F.3d 138, 143 (2d Cir. 2011).[19]

A.     **The China Center will suffer irreparable harm absent injunctive relief**

"It takes 20 years to build a reputation and five minutes to ruin it" – Warren Buffet. As set forth in the Declaration of Li Xu, as the China Center is planning its grand opening and its efforts to attract clients intensify, should potential clients associate or continue to associate Mr. Gianella and his business with the "Vantone" name, irreparable harm to this prestigious, multi-billion name will undoubtedly result.

---

[19] Movants acknowledge that the posting of a joint bond pursuant to Fed. R. Civ. P. 65(c) may be necessary as a condition of the granting of this motion for a preliminary injunction.

**B.**	**Movants are likely to succeed on the merits, or at the least, there is a serious question to the merits of this matter making them a fair ground for trial.**

As set forth *supra*, the Vantone Defendants are senior users of the "Vantone" name, the plaintiff's registrations of it should be cancelled, and Mr. Gianella and the plaintiff are diluting the prestigious "Vantone" name and injuring the reputation of the Vantone defendants, including the China Center.

**C.**	**The balance of hardships tip decidedly in movants' favor.**

As set forth in the above, the China Center is a multi-million dollar operation and the US Vantone defendants are affiliated with and subsidiaries of a multi-billion dollar conglomeration. Mr. Gianella's company performed at most two or three real estate transactions within the past eight years. Should Mr. Gianella be allowed to continue to sully and dilute the prestigious "Vantone" name, it will cost the defendants an untold sum of money, particularly as the China Center looks to attract clients in anticipation of its grand opening. If Mr. Gianella and the plaintiff be enjoined from using the "Vantone" name, no hardship could result as he cannot demonstrate any value or damage from prohibiting in his use of the Vantone name.[20]

**D.**	**The public interest weighs in favor of granting a preliminary injunction.**

The China Center is a particularly significant project created and established, among other reasons to serve the public's interest in vibrant market oriented exchanges between US and foreign business. It has and will attract business and investors to New York City and the United States, generate jobs in the region, and is part of the

---

[20] When asked what damages he suffers from any possible infringement, Mr. Gianella candidly stated stated only his time and efforts in connection with the lawsuit. He did not describe any economic damages and cannot show any damages because he has none.

redevelopment of Lower Manhattan for September 11th. Indeed, former Governor Pataki travelled to China to bring projects like this to Lower Manhattan for the public's benefit and to help stimulate the downtown area of New York City. In the face of businesses' reluctance to an early commitment to the redevelopment of Lower Manhattan, the New Economic and Redevelopment Commission, the Ports of New Jersey and New York – all teamed together to promote conferences and sponsoring of meetings and plans – all in the public interest. Additionally, plaintiff has sued those entities engaged in such redevelopment efforts expressly because they are working in the public interest to increase business activity and because of their judgment that working the Movants would further their objectives. Notwithstanding that there has been not a shred of evidence produced that would establish liability against such public entities, the existence of this lawsuit seeking to prevent enforcement of multi-million lease agreements and business development efforts is an unnecessary expense to them and the Movants. Given that the Vantone name has no value to the plaintiff, there is no equity in its favor against the requested injunctive relief. The public interest weighs quite heavily in the granting of an injunction to enjoin Mr. Gianella and the plaintiff from diluting the "Vantone" name and the business reputation of Vantone and the China Center.

## CONCLUSION

For the foregoing reasons, it is respectfully submitted that an Order be entered preliminarily enjoining Third-Party Defendant Leonardo Gianella and Plaintiff (Counterrespondent) The Vantone Group Limited Liability Company from any use, promotion, advertising or assertion of any claims to the use of the "Vantone" mark during the pendency of this litigation and permitting the movants and other defendants named in

this lawsuit to proceed in any business or other transaction, including the use and promotion of the "Vantone" marks claimed by the plaintiff and which is the subject of this litigation; and for such other and further relief as this Court may deem just and proper.

Dated: New York, New York
November 24, 2014

DACHENG LAW OFFICES LLP

By: _____

Leodis C. Matthews (*pro hac vice*)
e-mail: leodis.matthews@dachenglaw.com
Two Wall Street, 21st Floor
New York, NY 10005
Tel: (212) 380-8388/Fax: (212) 810-1995
*Attorneys for Vantone Holdings Co., Ltd.,*
*China Center New York LLC, Vantone*
*Property NY LLC, Vantone Residences LLC,*
*Vamerica Fund LLC, Vantone US LLC n/k/a*
*Vamerica LLC, Vantone US Inc., Beijing*
*Vantone Real Estate Co., Ltd. and Feng*
*Lun.*