Richard M. Wirtz (SBN 137812)(*pro hac vice*)
email:rwirtz@wirtzlaw.com
W I R T Z  L A W  APC
4365 Executive Drive, Suite 1460
San Diego, California 92121
voice:        858.259.5009

Thomas D. Foster (SBN 213414)(*pro hac vice*)
TD Foster - Intellectual Property Law
11622 El Camino Real, Suite 100
San Diego, CA 92130
voice: 858.922.2170
email:foster@tdfoster.com

Attorneys for Plaintiff THE VANTONE GROUP
LIMITED LIABILITY COMPANY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE VANTONE GROUP LIMITED LIABILITY COMPANY, a New York Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>YANGPU NGT INDUSTRIAL CO., LTD, a China Corporation; et al.<br><br>Defendants. | Case Number: 13-CIV-7639<br><br>**OPPOSITION TO DEFENDANTS' MOTION FOR PRELIMINARY INJUNCTION** |

# TABLE OF CONTENTS



I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.    Plaintiff's Trademarks . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      B.    USPTO Proceedings Between Plaintiff and Defendant
            Yangpu . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      C.    Plaintiff's Attempts to Police Its Marks and Defendants'
            Responses, Claiming They Have Made No Use in Commerce
            in the United States of the Marks . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

III.  STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

IV.   DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      A.    No Claim Is Currently Pending Which Would Support the Scope of
            the Injunction Defendants' Seek . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      B.    Defendants Have Not Established that They, or Any Affiliate of
            Theirs, Has Priority in the VANTONE Mark . . . . . . . . . . . . . . . . . . . . 11

            1.    None of the Moving Defendants Have Submitted
                  Evidence of Their Prior Use in Commerce in the
                  United States of the VANTONE Mark and Have Made
                  Admissions to the Contrary . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

            2.    Defendants Offer the Mere Existence of Two Entities
                  Containing VANTONE in Their Name in the 1990s,
                  Without Offering Evidence of (a) Those Entities' Use
                  in Commerce of the VANTONE Mark, (b) How Any
                  Alleged Rights of Those Entities to the Mark Accrue
                  to Defendants, (c) How Any Alleged Rights of Those
                  Long Since Dissolved Entities Were Not Abandoned,
                  (d) Any Alleged Rights of Those Entities Existing
                  Outside of California . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

(a)	Defendants Offer No Evidence of Vantone USA Inc. Or Vantone Corp's Use of the VANTONE Mark In Commerce ....................................... 13

(b)	Defendants Offer No Evidence Which Would Establish that Rights of These Two Entities to the VANTONE mark, if any, Somehow Have Accrued to Defendants ..................................... 13

(c)	Vantone USA, Inc. And Vantone Corp. Were Dissolved Ten and Seven Years Ago, Respectively, Resulting in Their Abandonment of Any Alleged Rights in the VANTONE Mark ............................................ 14

(d)	Any Rights Vantone USA Inc. And Vantone Corp. May Have Had in the VANTONE Mark Would Be Confined to California Only ...................... 14

C.	Plaintiff Has Priority in THE VANTONE GROUP Mark in Connection with Real Estate Services ...................... 15

D.	Even if Plaintiff and Mr. Gianella had known of Defendants' use of the mark in China, this would not affect Plaintiff's superior rights in the mark in the United States .............................. 16

(1)	Plaintiff and Mr. Gianella Adopted the Vantone Group Mark in Good Faith; He Never Saw the April 13, 2006 Article .......................................... 16

(2)	The Standard is First Use in Commerce in the US .......... 17

(3)	As a Matter of Law, Adoption of a Mark with Knowledge That it Is Used Abroad Does Not Affect Rights in the United States .......................................... 18

E.	Defendants Have Not Shown That They Are Likely to Suffer



Irreparable Harm If a Preliminary Injunction Is Not Granted  . . . . . . 19

1.    China Center Claims it Has Not Used Vantone in
Commerce and Does Not Intend to Use Vantone in
Connection with its Services  . . . . . . . . . . . . . . . . . . . . . . . . . . 19

2.    Defendants Long Delay in Seeking Relief as against Plaintiff
and Mr. Gianella, Shows That There is No Likelihood of
Irreparable Harm . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

3.    In addition to the fact that Defendants' Have No Grounds to
Enjoin Mr. Gianella's Assertion of His or Plaintiff's Rights,
Defendants are also Not Likely to Suffer Irreparable Harm
From Any Speculative Future Assertion of Rights by
Gianella . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

V.    CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

Cases

*Allard Enterprises, Inc. v. Advanced Programming Resources, Inc.*
 (6th Cir. 1998) 146 F.3d 350 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Apple, Inc. v. Samsung Electronics Co., Ltd.* (Fed. Cir. 2012) 678 F3d 1314 . . . . 19

*Federal Express Corp. v. Federal Espresso, Inc.* (2d Cir.2000) 201 F.3d 168 . . . . 9

*Freedom Holdings, Inc. v. Spitzer* (2nd Cir. 2005) 408 F3d 112 . . . . . . . . . . . . . . 9

*George Washington Mint, Inc. v. Washington Mint, Inc.*
 (S.D. N.Y. 1972) 349 F. Supp. 255 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Hanover Star Milling Co. v. Metcalf* (1916) 240 U.S. 403 . . . . . . . . . . . . . . . . . 15, 17

*Hiram Ricker and Sons v. Students Intern. Meditation Soc.*
 (1st Cir. 1974) 501 F.2d 550 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*ITC Ltd. v. Punchgini, Inc.* (2d Cir.) 482 F.3d 135 . . . . . . . . . . . . . . . . . . . . . . . 14

*Kessler v. General Services Administration* (S.D.N.Y.) 236 F.Supp. 693 . . . . . . . 10

*Kukatush Mining Corp. v. Securities and Exchange Com'n.*
 (1962) 309 F.2d 647 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*La Maur Inc. v. International Pharmaceutical Corporation*
 (T.T.A.B. 1978) 199 U.S.P.Q. 612 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Megarry Bros., Inc. v. U.S. for Use of Midwestern Elec. Const., Inc.*
 (8th Cir.1968) 404 F.2d 479 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Metro Kitchenworks Sales, LLC v. Cont'l Cabinets, LLC,*
 31 A.D.3d 722, 723, 820 N.Y.S.2d 79, 81 (App. Div. 2006) . . . . . . . . . . . 16

*Nebraska Press Ass'n. v. Stuart* (1976) 427 U.S. 539 . . . . . . . . . . . . . . . . . . . . . . 10

*New York Times Co. v. United States* (1971) 403 U.S. 713 . . . . . . . . . . . . . . . . . . 10

*Person's Co., Ltd. v. Chistman*, (1990) 900 F.2d 1565 . . . . . . . . . . . . . . . . . . . . . . 18

*Rolley, Inc. v. Younghusband* (9th Cir. 1953) 204 F.2d 209 . . . . . . . . . . . . . . . . . 17

*Tana v. Dantanna's* (11th Cir. 2010)  611 F.3d 767 . . . . . . . . . . . . . . . . . . . . . . . 15

*Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*  (2d Cir.1995) 60 F.3d 27 . . . . . . 9

*U.S. v. Shotwell Mfg. Co.* (7th Cir. 1961) 287 F.2d 667 . . . . . . . . . . . . . . . . . . . . . . . 11

*Winter v. Natural Resources Defense Council, Inc.* (2008) 555 US 7 . . . . . . . . . 8, 9

Statutes

15 U.S.C. §1115 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

15 U.S.C.A. § 1127 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Secondary Sources

Black's Law Dictionary (9th ed. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

2 McCarthy on Trademarks and Unfair Competition § 16:1 (4th ed.) . . . . . . . . . . 15

# I.     INTRODUCTION

Defendants' moving papers are an attempt to convince this Court to ignore the standards for trademark priority and the scope of relief available under FRCP 65.  In order to do so, Defendants attempt to portray Plaintiff's principal, Leonardo Gianella, as a villain.  But the real villains here are Defendants.  Mr. Gianella is a hard-working small business person, struggling to make his dream of establishing a major real estate brand a reality in the face of a large Chinese conglomerate's[1] attempts to steam roll over him.

Now, this Chinese conglomerate (which already attempted to route Plaintiff's rights by submitting fraudulent materials to the USPTO) asks this Court to (1) enjoin Plaintiff from using its own federally registered trademark in commerce, (2) enjoin Plaintiff or Gianella from asserting Plaintiff's rights in its federally registered trademark, and (3) "permit" Defendants' use of Plaintiff's federally registered trademark for the remainder of this action.

Defendants do not have priority in the VANTONE mark for real estate, or any other services.  Up until 2011, Defendants were making admissions that they never used the VANTONE name in commerce.  Even in Defendants' moving papers they admit that they are not using the VANTONE mark in connection with real estate brokerage services.  Yet they simultaneously and contrarily claim that they have superior rights to the VANTONE mark in the United States based either on the Chinese Defendants' use of VANTONE in China or two long since dissolved entities' mere existence–neither of which constitutes use in commerce in the United States.  This does not comport with the law.  Trademark rights are territorial and are based on use in commerce in the United States.

---

[1]Defendants identify themselves as the "Vantone" "conglomerate."  Black's law dictionary defines "conglomerate" as "A corporation that owns unrelated enterprises in a wide variety of industries."  CONGLOMERATE, Black's Law Dictionary (9th ed. 2009).  Defendants therefore appear to be asserting (and admitting), that though technically separate legal entities, they are in fact one "corporation."

WIRTZ LAW APC
TRIAL ATTORNEYS
Business | Real Estate | Employment | Intellectual Property
4365 Executive Drive, Suite 1460
San Diego, CA 92130
858.259.5009
6415 S. San Vicente, Suite 350
Los Angeles, CA 90048
310.226.5151

Plaintiff, on the other hand, has proven its use in commerce in the United States of the mark since 2006.  The question of priority here is simple: Plaintiff is the senior user in the United States of the THE VANTONE GROUP mark.  Given that fact, Defendants have no grounds to enjoin Plaintiff's use of its own federally registered trademarks.  This motion is completely meritless given Defendants' own admissions and must be denied.

## II.   STATEMENT OF FACTS

### A.   Plaintiff's Trademarks

Plaintiff provides real estate brokerage services in New York City and is the record owner of the federally registered trademark THE VANTONE GROUP for real estate brokerage services (Reg. No. 3,856,724)("the '724 registration") and for financial and investment services (Reg. No. 4,238,285)("the '285 Registration"). (Decl. Gianella ¶¶ 4, 6; Exhibits 1, 2.)  Plaintiff is also the record owner of the New York State Service Mark THE VANTONE GROUP for real estate brokerage services (Reg. No. S21282)("the 'NY Service Mark"). (Decl. Gianella ¶4; Exhibit 3.)

Plaintiff's first documented use of THE VANTONE GROUP mark in commerce was in 2006.  On about May 22, 2006, The Vantone Group secured an Exclusive Right to Sell an apartment on behalf of a client.  (Decl. Gianella ¶5; Ex. 32.)

On April 13, 2006, Plaintiff's managing member registered www.vantonegroup.com, and www.vantonerealestate.com. (Decl. Gianella ¶3; Exhibit 4, 5.)  Vantone was formed as New York State limited liability company on April 18, 2007. (Decl. Gianella ¶3; Exhibit 6.)  It has been licensed in the State of New York as a real estate brokerage since at least January 8, 2008. (Decl. Gianella ¶3; Exhibit 7.)

From 2006 to the present, Plaintiff has used THE VANTONE GROUP mark continuously in commerce.  Though the nature of the real estate business, and the recent recession, necessarily means that "sales" (i.e. commissions) are low in volume per year, and though Plaintiff's documentation does not reflect all of Plaintiff's use in

commerce[2], the following are examples of Plaintiff's documented use in commerce of THE VANTONE GROUP mark:

    a.    In the summer of 2008, The Vantone Group was retained to lease a unit at 857 Ninth Avenue (Unit 4D).  It successfully did so and received a $1500 commission.  (Ex. 33) While this is the only unit in 857 Ninth Avenue for which Plaintiff has documentation of The Vantone Group's engagement to lease, The Vantone Group listed at least three or four other units in that same building in 2008.

    b.    In July of 2008, The Vantone Group purchased a subscription for CoStar, an advertising database for commercial real estate listings.  (Ex. 34).

    c.    In the Fall of 2008, The Vantone Group was retained to locate a rental for a client and, pursuant to that retention, took the client on showings of potential rentals. (Ex. 35)

    d.    In the beginning of 2009, The Vantone Group was retained by Roman Urbanowicz and Jenny Silver to list their condo for sale at 260 Ocean Parkway. Shortly after the exclusive listing expired a buyer procured by The Vantone Group purchased the condo. Thereafter there was a dispute between The Vantone Group and High Class Realty (the seller's broker) over the payment of The Vantone Group's commission.  (Ex. 36)

    e.    Also in early 2009, The Vantone Group was retained by Kyle Romeo to list 35 East 30th Street, Units 6B and 6C.  As part of this retention, Mr. Gianella commissioned the drawing of floorplans for the units in March 2009.  (Ex 37). In addition, pursuant to that retention, Mr. Gianella held

WIRTZ LAW APC

TRIAL ATTORNEYS

Business | Real Estate | Employment | Intellectual Property

4365 Executive Drive, Suite 1460
San Diego, CA 92130
858.259.5009

6415 San Vicente, Suite 350
Los Angeles, A 90048
310.226.5151

---

[2]Plaintiff has not kept perfect documentation of its use of the mark in commerce over the years because it was not aware of any need to.  Mr. Gianella, when he selected the mark, believed it to be a fanciful mark unused in any industry in the United States. He did not become aware of Defendants' "conglomerate's" intent to use the VANTONE mark in the United States until a part of that "conglomerate" –Yangpu–filed intent to use applications for VANTONE (discussed below).

an open house in October 2009.  (Ex. 38) In November 2009, The Vantone Group LLC earned a $21,000 commission for the sale of Unit 6B.  (Ex. 39) Unit 6C was also later sold, to the same buyer.

f.  On October 12, 2009, Mr. Gianella requested to view a unit at 350 West 42nd Street (the Orion), Units 59 A&B, as part of TVG's representation of a client.  (Ex. 40)

g.  On October 12, 2009, Mr. Gianella arranged to view another unit in 350 West 42nd Street, Unit 42G, on behalf of The Vantone Group's client, Paul Denamiel.  (Ex. 41)

h.  In March 2010, The Vantone Group became a member of REBNY, and an advertisement of The Vantone Group was listed in the REBNY directory.  (Ex. 42)

i.  Also in March 2010, The Vantone Group listed an advertisement with Yellowpages.com.  (Ex. 43)

j.  In July 2010, The Vantone Group submitted an advertisement in Bing Local.  (Ex. 44)

k.  Mr. Gianella inquired, on July 9, 2010, about two different units on behalf of a client. (Ex. 45)

l.  In November 2011, The Vantone Group registered to advertise with Google.  (Ex. 46)

m.  In June 2012, The Vantone Group purchased a half page online banner from The Real Deal. (Ex. 47)

n.  On March 4, 2014, The Vantone Group received a signed exclusive listing agreement.  (Ex. 48)

o.  On July 25, 2014, The Vantone Group received a signed exclusive listing agreement. (Ex. 49)

p.  In October 2014, The Vantone Group was engaged to list for rent three units at 109 Madison Street (#5, #10, and #19).  (Ex 53)

q.      In November 2014, The Vantone Group was engaged to list two units at 74 Meserole Avenue.  (Ex 50)

In or about 2011, it became apparent that a large portion of the real estate market in New York was Chinese individuals.  In order to appeal to that portion of the market, The Vantone Group's website was updated to display in both English and Chinese, and The Vantone Group began to market its services to Chinese clients using a Chinese character translation of its THE VANTONE GROUP mark: 万通集团 . (Decl. Gianella ¶9; Exhibit 8.) On May 7, 2012, Vantone applied for registration of this Chinese character translation of its federally registered trademarks (App. No. 85618998)("the '998 Application"). (Decl. Gianella ¶10; Exhibit 9.)

**B.      USPTO Proceedings Between Plaintiff and Defendant Yangpu**

Plaintiff filed its application for registration of the '285 mark on January 7, 2011. (Decl. Gianella ¶6.)   Though the mark was eventually successfully registered on November 6, 2012, Plaintiff received an office action dated March 29, 2011, which brought to Plaintiff's attention Defendant's intent to infringe upon Plaintiff's trademarks. (Decl. Gianella ¶9.)   Plaintiff learned that, on December 31, 2010, Defendant YANGPU NGT INDUSTRIAL CO., LTD ("Yangpu") filed an application for registration of VANTONE for various services on an intent to use basis ("the '425 application"). (Decl. Gianella ¶9; Exhibit 10.)  In addition, on May 22, 2011, Yangpu filed an application for registration of VANTONE for other various services on an intent to use basis ("the '938 application"). (Decl. Gianella ¶9; Exhibit 11.) The '425 application was published for opposition on January 10, 2012, and the '938 application was published for opposition on January 3, 2012. (Decl. ¶; Exhibit 12 and 13.)

Plaintiff opposed the '425 and '938 applications (oppositions no. 91203415 and 91203526) on January 18, 2012, by filing notices of opposition. (Decl. Gianella ¶10; Exhibits 14 & 15.)  Yangpu's deadline to answer Plaintiff's opposition was February 21, 2012. (Decl. ¶.)  Instead, Yangpu filed an abandonment of its applications with prejudice, and without Plaintiff's consent. (Decl. Gianella ¶10; Exhibits 16 & 17.)

Pursuant to Trademark Rule 2.135, judgment was therefore entered against Yangpu by the Trademark Trial and Appeal Board, Plaintiff's opposition was sustained, and registration of the two infringing marks was refused. (Decl. Gianella ¶10; Exhibits 18 & 19.)

At this point, Plaintiff was unaware of the scope of Defendants' intent to attempt to usurp Plaintiff's trademark. (Decl. Gianella ¶11.) Plaintiff was under the impression that Yangpu was one Chinese company which had apparently abandoned its attempt to use VANTONE in the United States as a result of Plaintiff's opposition. (Decl. Gianella ¶11.) However, Plaintiff later learned that, in fact, Yangpu had also filed three applications for registration of marks incorporating Chinese character translations of Plaintiff's mark:

a.     Registration No. 4,230,555 ("the '555 registration"): 万通地产 for various real estate services. (Decl. Gianella ¶14; Exhibit 20, 23.)

b.     Registration No. 4,234,787 ("the '787 registration"): 万通 for services in International class 039, and 041-044. (Decl. Gianella ¶14; Exhibit 21, 24.)

c.     Registration No. 4,339,146 ("the '146 registration"): 万通 for various real estate services. (Decl. Gianella ¶14; Exhibit 22, 25.)

All three applications were filed on an intent to use basis. (Exhibits 20-22.) The examining attorney did not refuse registration based on Plaintiff's trademark (and Plaintiff did not discover the applications in time to oppose them) because Yangpu claimed that the Chinese characters 万通 transliterate to "WAN TONG" and mean "ten thousand" and "through. (Exhibits 20-25.) However, Defendant Beijing Vantone Real Estate Co., Ltd., a subsdiary of Vantone Holdings Co., Ltd. and part of the "conglomerate" to which Defendants refer, in its 2012 annual report, admits that these characters translate to "Vantone" in English. (Exhibit 26.)

As a result of this misrepresentation to the USPTO, Plaintiff did not discover these applications until after the period for opposition had passed. (Decl. Gianella ¶14.) On March 1, 2012, Plaintiff wrote to Yangpu, demanding that Yangpu expressly

abandon its three applications. (Decl. Gianella ¶; Exhibit 27.) Defendant Yangpu refused to either discontinue its use of the three marks, or to expressly abandon its applications. (Decl. Gianella ¶.) The marks were thus registered on October 23, 2012, October 30, 2012, and May 21, 2013, respectively. (Decl. Gianella ¶; Exhibits 23-25.)

On May 7, 2012, Plaintiff filed an application for registration of its aforementioned Chinese Character translation of THE VANTONE GROUP ("'998 Application"). (Decl. Gianella ¶10; Exhibit 9.) However, on September 5, 2012, Plaintiff received an office action informing it that Plaintiff's application would be denied due to likelihood of confusion with Defendant Yangpu's pending Chinese character applications. (Decl. Gianella ¶15; Exhibit 28.) On February 4, 2013, Plaintiff filed for cancellation of Yangpu's '555 and '787 Chinese character marks citing likelihood of confusion. (Decl. Gianella ¶15; Exhibit 29.) Plaintiff, as part of its investigation during the initiation of these cancellation proceedings, discovered that the specimen filed by Yangpu in the prosecution of the '787 registration is in fact a screen-shot of another company's website, digitally altered to make it appear that Yangpu is actually using the mark in connection with the services in connection with which it seeks registration. (Decl. Gianella ¶15; Exhibit 31.) Plaintiff therefore filed an amended petition for cancellation of the '787 mark citing, as an alternative ground for cancellation, that the '787 registration was accomplished through a fraud on the USPTO. (Decl. Gianella ¶15.) That action is still pending. (Decl. Gianella ¶15.)

**C.    Plaintiff's Attempts to Police Its Marks and Defendants' Responses, Claiming They Have Made No Use in Commerce in the United States of the Marks**

After discovering Defendants' intent to use the VANTONE mark in commerce in the United States, Plaintiff began sending cease and desist letters to "Vantone" entities. Plaintiff engaged attorney Bret Danow to do so. Mr. Danow sent a cease and desist to Vantone US Inc., at its 7 World Trade Center address, attention Xue YA on November 11, 2010. In response, attorney John Griem, on behalf of China Center and

Vantone US Inc., represented:

> The corporate parent has other subsidiaries in the United States that include the word 'Vantone' in their names, but these company names are not used in communications with customers. As you know, trademark use requires that a mark by used in connection with the distribution of goods or services to third parties. Because 'Vantone' is not used in commerce with customers as a mark in connection with its services, neither China Center or Vantone U.S. Inc. are infringing any rights your client may have in the word 'Vantone.' (Ex. 51)[3]

On about June 7, 2011, Plaintiff sent a cease and desist letter to other various Vantone entities. On June 14, 2011, Plaintiff received a letter in response, written by an attorney in New York, representing Vantone International Group, Inc. and its subsidiary Vantone USA Inc., one of the two entities Defendants' now claim has an earlier date of first use to Plaintiff's. (Ex. 52) This letter stated that Vantone USA was a holding company, that its subsidiary was engaged in the business of distributing consumer products and selling insurance in China, and that its offices were located in China. In addition, this letter admitted that:

> ...neither Vantone International nor Vantone USA nor, for that matter, Shenyang Vantone is engaged in business service in the State of New York. None of the three has an office in New York or anywhere in the United States. None of the three has ever carried on any commercial activities in the United States. And none of the three has engaged in real estate brokerage in the United States or China...

## III.   STANDARD

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural*

---

[3]This document has been redacted to remove any settlement discussions. The remainder, admissions of fact, are admissible, as explained in footnote 4.

WIRTZ LAW APC
TRIAL ATTORNEYS
Business | Real Estate | Employment | Intellectual Property
4365 Executive Drive, Suite 1460
San Diego, CA 92130
858.259.5009
6415 S. San Vicente, Suite 350
Los Angeles, CA 90048
310.226.5151

*Resources Defense Council, Inc.* (2008) 555 US 7, 22.

A movant seeking a preliminary injunction must establish: (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.* (2008) 555 US 7, 20; *Federal Express Corp. v. Federal Espresso, Inc.* (2d Cir.2000) 201 F.3d 168, 173.

Irreparable injury is "the single most important prerequisite for the issuance of a preliminary injunction[.]"  *Freedom Holdings, Inc. v. Spitzer* (2nd Cir. 2005) 408 F3d 112, 114.  The Court of Appeals for the Second Circuit has defined "irreparable harm" as "an injury that is not remote or speculative but actual and imminent, and for which a monetary award cannot be adequate compensation." *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*  (2d Cir.1995) 60 F.3d 27, 37 (internal quotations omitted).

## IV.   DISCUSSION

### A.   No Claim Is Currently Pending Which Would Support the Scope of the Injunction Defendants' Seek.

Defendants seek:

...an Order preliminarily enjoining Third-Party Defendant Leonardo Gianella and Plaintiff (Counterrespondent) The Vantone Group Limited Liability Company from any use, promotion, advertising ***or assertion of any claims to the use of the "Vantone" mark*** during the pendency of this litigation and ***permitting the movants and other defendants named in this lawsuit to proceed in any business or other transaction, including the use and promotion of the "Vantone" marks*** claimed by the plaintiff and which is the subject of this litigation." (Defendants' Points and Authorities, Pg. 1, emphasis added)

The preliminary relief sought by Defendants can be divided into three orders sought by Defendants:

WIRTZ LAW APC
TRIAL ATTORNEYS
Business | Real Estate | Employment | Intellectual Property
4365 Executive Drive, Suite 1460    6413 S. San Vicente, Suite 350
San Diego, CA 92130    Los Angeles, CA 90048
858.259.5009    310.226.5151

(1) enjoining Plaintiff and Gianella from any use, promotion, [or] advertising of the "Vantone" mark during the pendency of this litigation;

(2) enjoining Plaintiff and Gianella from any assertion of any claims to the use of the "Vantone" mark during the pendency of this litigation; and

(3) permitting the movants and other defendants named in this lawsuit to proceed in any business or other transaction, including the use and promotion of the "Vantone" marks .

Item (1) seeks to prevent Plaintiff's use in commerce of Plaintiff's marks, presumably pursuant to Defendants' counter-claims, and will be addressed in later sections.

<u>With regards to (2), Defendants' request to enjoin Plaintiff from assertion of any claims to use of the Vantone mark, such an order would be unconstitutional as a prior restraint of Mr. Gianella's rights to free speech.</u>

Any prior restraint bears "a heavy presumption against its constitutional validity." *New York Times Co. v. United States* (1971) 403 U.S. 713, 714. The temporary nature of the district court's order does not relax this presumption because "a prior restraint, by ... definition, has an immediate and irreversible sanction." *Nebraska Press Ass'n. v. Stuart* (1976) 427 U.S. 539, 559.

Defendants do not make any attempt to explain how Plaintiff's assertion of his rights is illegal, nor to identify which counterclaim targets such assertions.  However, even if they were to do so (claiming, for example, that Plaintiff's assertions are harassing or defamatory), generally an injunction will not issue to restrain torts, such as defamation or harassment, against the person. *Kukatush Mining Corp. v. Securities and Exchange Com'n.* (1962) 309 F.2d 647, 651, n. 2; *Kessler v. General Services Administration* (S.D.N.Y.) 236 F.Supp. 693, 698, aff'd per curiam, 341 F.2d 275 (2 Cir. 1964).

<u>With regards to (3), Defendants' request to "permit[] the movants and other defendants named in this lawsuit to proceed in any business or other transaction, including the use and promotion of the 'Vantone' marks claimed by the plaintiff[,]" this</u>

WIRTZ LAW APC
TRIAL ATTORNEYS
Business | Real Estate | Employment | Intellectual Property
4365 Executive Drive, Suite 1460
San Diego, CA 92130
858.259.5009
6415 San Vicente, Suite 350
Los Angeles, A 90048
310.226.5151

is outside the scope of relief permitted via preliminary injunction.

There are two types of injunctions: negative and mandatory. Both restrain the actions of the answering party, not the movant. Injunctive relief is not for the aquisition of permissive advisory orders on the legality of a movant's conduct.

**B.    Defendants Have Not Established that <u>They</u>, or Any Affiliate of Theirs, Has Priority in the VANTONE Mark**

    **1.    None of the Moving Defendants Have Submitted Evidence of Their Prior Use in Commerce in the United States of the VANTONE Mark and Have Made Admissions to the Contrary**

It is important to keep in mind *which* Defendants are movants: Vantone Holdings Co., Ltd., China Center New York LLC, Vantone Property NY LLC, Vantone Residences LLC, Vamerica Fund LLC, Vantone US LLC n/k/a Vamerica LLC, Vantone US Inc., Beijing Vantone Real Estate Co., Ltd and Feng Lun.

Defendants have not shown that any one of them have used the mark in commerce in the United States. In fact, Defendants currently claim that they have never used the mark in connection with real estate services. Furthermore, as of January 12, 2011, Defendants admitted[4] that neither China Center nor Vantone US Inc. had used or were using "Vantone" in commerce with customers as a mark in connection with their services. Defendants admitted that their corporate parent "Beijing Vantone Industrial

_____

[4] These admissions of fact were contained in a letter which also communicated a settlement offer. However, it is well settled law that there is an exception to the rule against admissibility of settlement negotiations where the evidence offered relates to admissions of fact which are not hypothetical or conditioned on consummation of the compromise offered. *Hiram Ricker and Sons v. Students Intern. Meditation Soc.*, (1st Cir. 1974) 501 F.2d 550 (There is an exception to the rule against admissibility of settlement negotiations where the evidence relates to admissions of fact as distinguished from hypothetical or provisional concessions conditioned upon the settlement's completion.) *Megarry Bros., Inc. v. U.S. for Use of Midwestern Elec. Const., Inc.*, (8th Cir.1968) 404 F.2d 479 (Unaccepted offers of compromise are not admissible in evidence as admissions, but admissions with respect to independent facts which are made during course of compromise negotiations may be received in evidence). *U.S. v. Shotwell Mfg. Co.* (7th Cir. 1961) 287 F.2d 667, certiorari granted 368 U.S. 946, affirmed 371 U.S. 341, rehearing denied 372 U.S. 950 (There is a distinction between an offer to do something in furtherance of a compromise which is inadmissible in evidence and independent admissions of fact which may be admitted.)

WIRTZ LAW APC
TRIAL ATTORNEYS
Business | Real Estate | Employment | Intellectual Property
4365 Executive Drive, Suite 1460
San Diego, CA 92110
858.259.5009
6415 San Vicente, Suite 350
Los Angeles, CA 90048
310.226.5151

Co. Ltd." has other subsidiaries, presumably the US Vantone Defendants, in the United States that include the word "Vantone" in their names, but these company names are not used in communications with customers.

Furthermore, Defendants' affiliate, Yangpu NGT Industrial Co. Ltd (part of the "conglomeration") applied for registration of VANTONE on December 31, 2010, in an application signed by Defendant Feng Lun, on an *intent to use basis*, thereby implicitly admitting that the conglomeration was not, as of that time, using the VANTONE mark in commerce.  (Ex. 10 & 11) When Plaintiff opposed these applications, they were withdrawn, without Opposer's (Plaintiff's) consent and with prejudice. (Exs. 16 & 17.) As a result, judgment was entered against Yangpu, Plaintiff's opposition was sustained and registration was refused.  (Exs. 18 &19.)

Defendants claim that "through its substantial investments in business and promotional activities in the United States, the Vantone US defendants established their own branding and good will in several states within the United States and with major US and international businesses."  (Pg. 4) This is not "use in commerce" sufficient to endow Defendants with rights in the VANTONE mark in the US.  Defendants have offered no evidence of actual use in commerce of the mark in the US by any of the US Vantone Defendants, and have certainly not offered evidence of use in commerce pre-dating Plaintiff's use in commerce.

> **2.    Defendants Offer the Mere Existence of Two Entities Containing VANTONE in Their Name in the 1990s, Without Offering Evidence of (a) Those Entities' Use in Commerce of the VANTONE Mark, (b) How Any Alleged Rights of Those Entities to the Mark Accrue to Defendants, (c) How Any Alleged Rights of Those *Long Since Dissolved* Entities Were Not Abandoned, (d) Any Alleged Rights of Those Entities Existing Outside of California**

Instead of proving their own use in commerce of the VANTONE mark,

Defendants argue that "various Vantone entities operating under the 'Vantone' mark have been in operation in the United States since the 1990s." "Various" actually means two: Vantone USA Inc. and Vantone Corp.

      **(a)    Defendants Offer No Evidence of Vantone USA Inc. Or Vantone Corp's Use of the VANTONE Mark In Commerce**

Defendants claim that Vantone USA, Inc. and Vantone Corp. started doing business "around" "the mid-1990s." (Pg. 18) However, the mere act of incorporation alone does not establish priority of use of the corporate name as a mark. *George Washington Mint, Inc. v. Washington Mint, Inc.* (S.D. N.Y. 1972) 349 F. Supp. 255, 260 ("The prior incorporation of the defendant, in itself, does not establish priority of trademark use.") Defendants do not clarify what they claim "doing business" means, other than mere incorporation.

On the other hand, Vantone USA Inc. has admitted that it did not do business in the United States. On about June 7, 2011, Plaintiff sent a cease and desist letter to various Vantone entities.  On June 14, 2011, Plaintiff received a letter in response, written by an attorney in New York, representing Vantone International Group, Inc. and its subsidiary Vantone USA Inc.  (Ex. 52) This letter stated that Vantone USA was a holding company, that its subsidiary was engaged in the business of distributing consumer products and selling insurance in China, and that its offices were located in China.  In addition, this letter admitted that:

> ...neither Vantone International nor Vantone USA nor, for that matter, Shenyang Vantone is engaged in business service in the State of New York.  None of the three has an office in New York or anywhere in the United States.  None of the three has ever carried on any commercial activities in the United States.  And none of the three has engaged in real estate brokerage in the United States or China...

      **(b)    Defendants Offer No Evidence Which Would Establish**

**that Rights of These Two Entities to the VANTONE mark, if any, Somehow Have Accrued to Defendants**

Neither of these entities, Vantone USA Inc. or Vantone Corp., are Defendants in this action nor movants in this motion.  Movants do not explain the relationship between the entities whose rights they seem to assert and themselves.

**(c)   Vantone USA, Inc. And Vantone Corp. Were Dissolved Ten and Seven Years Ago, Respectively, Resulting in Their Abandonment of Any Alleged Rights in the VANTONE Mark**

15 U.S.C.A. § 1127 provides that: "A  mark shall be deemed to be 'abandoned' ...:(1) When its use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances. Nonuse for 3 consecutive years shall be prima facie evidence of abandonment. 'Use' of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark." Vantone USA, Inc. was dissolved in 2004. Vantone Corp.  was dissolved in 2007.  Dissolution would have prevented these entities' continued use (if any) of the mark in commerce, and would clearly constitute evidence of an intent to abandon such use.   Further, three years after dissolution of each entity, the presumption of abandonment would arise as to each entity.  Once abandoned, "a mark returns to the public domain and may, in principle, be appropriated for use by other actors in the marketplace, in accordance with the basic rules of trademark priority."  *ITC Ltd. v. Punchgini, Inc.* (2d Cir.) 482 F.3d 135, 147.

**(d)   Any Rights Vantone USA Inc. And Vantone Corp. May Have Had in the VANTONE Mark Would Be Confined to California Only**

Even assming, arguendo that Vantone USA Inc. and/or Vantone Corp. Did use the VANTONE mark in commerce in a manner sufficient to create rights (which has not been proven), that Defendants' somehow are the beneficiaries of those rights (which has

WIRTZ LAW APC
TRIAL ATTORNEYS
Business | Real Estate | Employment | Intellectual Property
4365 Executive Drive, Suite 1460
San Diego, CA 92130
858.259.5009
6415 S. San Vicente, Suite 350
Los Angeles, A 90048
310.226.5151

not been established or even explained), and that these rights were not abandoned long ago (which defies the facts), any rights of Vantone USA Inc. and/or Vantone Corp. would be confined to California.

Neither of these entities applied for or acquired a federal trademark registration. Defendants offer no evidence to prove that Vantone USA, Inc. purportedly used the VANTONE mark anywhere but in California, where it registered to do business and where it registered a fictitious business name. Similarly, Defendants offer no evidence to prove that Vantone Corp. purportedly used the VANTONE mark anywhere but in California, where it was formed. Under the *Tea Rose-Rectanus* rule, the territorial scope of an unregistered mark is limited to the territory in which the mark is known and recognized by those in the defined group of potential customers. *Hanover Star Milling Co. v. Metcalf* (1916) 240 U.S. 403, 415-416 (The "Tea Rose" Case: "Into whatever markets the use of a trademark has extended, or its meaning has become known, there will the manufacturer or trader whose trade is pirated by an infringing use be entitled to protection and redress."). See *Tana v. Dantanna's* (11th Cir. 2010) 611 F.3d 767, 780 ("[I]t is well-established that the scope of protection accorded his mark is coextensive only with the territory throughout which it is known and from which it has drawn its trade." Citing *Hanover Star Milling Co.*)

## C. Plaintiff Has Priority in THE VANTONE GROUP Mark in Connection with Real Estate Services

Plaintiff's federal registration of THE VANTONE GROUP is prima facie evidence of the mark's validity, of Plaintiff's ownership of the mark, and of Plaintiff's exclusive right to use the mark in commerce in connection with the services specified in the registration. 15 U.S.C. §1115(a). Furthermore, "[t]he basic rule of trademark ownership in the United States is priority of use. For inherently distinctive marks, ownership goes to the first entity to use the designation as a mark." 2 McCarthy on Trademarks and Unfair Competition § 16:1 (4th ed.)

Plaintiff's evidence demonstrates use of VANTONE GROUP in commerce as

WIRTZ LAW APC
TRIAL ATTORNEYS
Business | Real Estate | Employment | Intellectual Property
4365 Executive Drive, Suite 1460
San Diego, CA 92130
858.259.5009
6415 S. San Vicente, Suite 350
Los Angeles, CA 90048
310.226.5151

early as May 22, 2006, when a customer, Albert Grundy, signed an Exclusive Right to Sell Agreement with Vantone Group, thereby engaging Vantone Group's services.[5] Thereafter, Plaintiff has continually used the VANTONE GROUP mark in commerce. See Declaration of Gianella for a timeline of examples of Plaintiff's documented use in commerce of THE VANTONE GROUP mark from 2006 to the present.

> **D.      Even if Plaintiff and Mr. Gianella had known of Defendants' use of the mark in China, this would not affect Plaintiff's superior rights in the mark in the United States.**

Defendants make much of the coincidence of Plaintiff's registration of its domain name, and the April 13, 2006 New York Times article interview of Feng Lun. However, as a matter of law, the implication Defendants wish to draw from this coincidence is of absolutely no consequence to this litigation.

> **(1)      Plaintiff and Mr. Gianella Adopted the Vantone Group Mark in Good Faith; He Never Saw the April 13, 2006 Article**

Mr. Gianella selected "Vantone" for Plaintiff's trademark after much thought. He knew that he wanted to create a protectible brand. He did some research online and found that arbitrary or fanciful marks would be entitled to the highest degree of protection. (Decl. Gianella ¶2.) He therefore set out to come up with a fanciful or arbitrary mark. (Decl. Gianella ¶2.) He first toyed around with arbitrary words like 'vanquish' or 'the one.' (Decl. Gianella ¶2.) He considered combining words to make a fanciful mark. (Decl. Gianella ¶2.) He landed on Vantone, however, because Vantone (pronounced van-tone-nay in Italian) is a small area in Italy, where Gianellas (his

---

[5]Technically, this contract was entered into before formation of Plaintiff by its incorporator, Leonardo Gianella, on behalf of The Vantone Group, LLC. As a matter of New York State law, the contract inures to the benefit of the after-formed entity, Plaintiff, as long as it is adopted or ratified by Plaintiff and executed on Plaintiff's behalf, which it was. *Metro Kitchenworks Sales, LLC v. Cont'l Cabinets, LLC*, 31 A.D.3d 722, 723, 820 N.Y.S.2d 79, 81 (App. Div. 2006) ("[a] corporation may sue upon a contract made for it by its promoters where it has adopted or ratified the contract after coming into legal existence, but the contract must have been executed for or in behalf of the corporation").

family) are from. (Decl. Gianella ¶2.)  The connection to his family and his heritage finalized the selection of Vantone in particular in his mind. (Decl. Gianella ¶2.)  He took the Italian word, chose to pronounce it in English (van-tone, just like it is spelled) and created the mark "The Vantone Group."  (Decl. Gianella ¶2.)

The date of registration of the domain is a coincidence.  Mr. Gianella did not see the April 13, 2006 article.  Said article was not major news and was not even on the front page of the newspaper.  Mr. Gianella has testified that he would sometimes purchase the New York Times, but only on Sundays and only to read the real estate section.  (62:13-24.)  He did not see this article before registering the domains.

**(2)    The Standard is First Use in Commerce in the US**

None of the defendants acquired ownership rights in the VANTONE mark via the April 13, 2006 article, or any media coverage of Mr. Lun's intention to enter the U.S. market under the VANTONE name.  To acquire ownership of a trademark, one must actually <u>use</u> the designation as a mark in the sale of goods or services.  Trademark rights grow out of use, not mere adoption. *Hanover Star Milling Co. v. Metcalf* (1916) 240 U.S. 403, 413 ("[T]he right grows out of use, not mere adoption.") The mere fact that a party conceived the idea of a trademark and discussed it with others does not establish priority as of the date of those events.  *Rolley, Inc. v. Younghusband* (9th Cir. 1953) 204 F.2d 209, 212  ("He who first affixes a trade-mark upon his goods is its owner, not the person who first conceives the idea. … Thus, mere discussion of the name 'Voodoo' would not create trade-mark rights."); *La Maur Inc. v. International Pharmaceutical Corporation* (T.T.A.B. 1978) 199 U.S.P.Q. 612 (conception of mark and discussion with others does not establish priority).

Similarly, no priority of use is created as of the date that a party announced to a few persons that he intended to use a certain designation as a mark.  *Allard Enterprises, Inc. v. Advanced Programming Resources, Inc.* (6th Cir. 1998) 146 F.3d 350 ("[T]he question of whether Heagren announced an intention to use the mark is irrelevant to" the issue of priority of use, citing treatise.)

Plaintiff was the first to use THE VANTONE GROUP in commerce with respect to real estate services.  The question of rights to the mark is as simple as that: Plaintiff's good or bad faith is irrelevant.[6]

**(3)    As a Matter of Law, Adoption of a Mark with Knowledge That it Is Used Abroad Does Not Affect Rights in the United States.**

The exact scenario Defendants imagine has already been considered.  In *Person's Co., Ltd. v. Chistman*, (1990) 900 F.2d 1565, a Japanese entity (Person's) adopted the PERSON'S trademark and began to apply it to clothing items in Japan in 1977.  In 1981 an individual (Christman) traveled to Japan, saw the merchandise bearing the mark, purchased some of the merchandise and took it back to the United States with him.  He then began to apply the PERSON'S mark to clothing and sell it in the United States.  He applied for and received a federal trademark registration for PERSON'S for clothing. Person's Japan later attempted to expand its sales into the United States, and applied for and received a registration for PERSON'S on luggage, clothing, and accessories. Person's initiated an action to cancel Christman's registration and Christman counterclaimed for cancellation of Person's registration.

The Court found that Person's arguments of Christman's bad faith ignored the territorial nature of trademark rights and "an inference of bad faith required something more than mere knowledge of prior use of a similar mark in a foreign country."  *Id.* at 1570.  Christman was the senior user in the United States, regardless of his knowledge of Person's in Japan.  "While adoption of a mark with knowledge of a prior actual user in U.S. commerce may give rise to cognizable equities as between the parties, no such equities may be based upon knowledge of a similar mark's existence or on a problematic intent to use such a similar mark in the future.  Knowledge of a foreign use does not preclude good faith adoption and use in the United States."  Id.

Thus even <u>if</u> Mr. Gianella knew of Defendants' use of VANTONE in China

---

[6]Nor have Defendants shown bad faith.

WIRTZ LAW APC
TRIAL ATTORNEYS
Business | Real Estate | Employment | Intellectual Property
4365 Executive Drive, Suite 1460
San Diego, CA 92121
858.259.5009
6413 S. San Vicente, Suite 350
Los Angeles, A 90048
310.226.5151

(which he did not), or of Defendants' intent to expand into the United States (which he did not), this would not, as a matter of law, amount to bad faith adoption of the mark.

**E.    Defendants Have Not Shown That They Are Likely to Suffer Irreparable Harm If a Preliminary Injunction Is Not Granted**

**1.    China Center Claims it Has Not Used Vantone in Commerce and Does Not Intend to Use Vantone in Connection with its Services.**

Defendants argue only that China Center will be harmed if Plaintiff and Gianella are not enjoined from using their THE VANTONE GROUP marks.  However, China Center claims it has no intent, and has never used VANTONE as a mark in commerce. (See Ex. 51 (claiming that China has not used the mark in commerce).

In fact, Defendants claim, in their moving papers that "[n]one of the defendants are involved in providing real estate brokerage services..."  (Pg. 13) It is therefore unclear how Defendants claim they will be harmed by Plaintiff's continued use of it's THE VANTONE GROUP mark in connection with its real estate services.

**2.    Defendants Long Delay in Seeking Relief as against Plaintiff and Mr. Gianella, Shows That There is No Likelihood of Irreparable Harm**

Unexplained delay in seeking preliminary injunctive relief may undercut claims that plaintiff is threatened with "irreparable injury." *Apple, Inc. v. Samsung Electronics Co., Ltd.* (Fed. Cir. 2012) 678 F3d 1314, 1325–1326.  Defendants have known about Plaintiff's use of the THE VANTONE GROUP trademark, and Plaintiff's claims to ownership therein since at least 2010, when Plaintiff sent Defendants a cease and desist letter.  Yet Defendants did not file a lawsuit seeking injunctive relief at that time, over four years ago.  Even after Plaintiff's suit was filed, Defendants did not attempt to file for preliminary injunctive relief.  They did not even mention doing so until Plaintiff filed its letter requesting a pre-motion conference regarding *Plaintiff's* motion for preliminary injunction.  This long delay weighs heavily against Defendants' claim that

there is a likelihood of irreparable harm to Defendants absent a preliminary injunction. This is true in particular because trial of this matter is now so close.

> **3.    In addition to the fact that Defendants' Have No Grounds to Enjoin Mr. Gianella's Assertion of His or Plaintiff's Rights, Defendants are also Not Likely to Suffer Irreparable Harm From Any Speculative Future Assertion of Rights by Gianella**

Defendants include with their moving papers evidence of Mr. Gianella's attempts to stop Defendants' infringement and Mr. Lun's fraud in support of Defendants' infringement. These efforts include the reporting of Defendants' infringement and Mr. Lun's fraud to various agencies.

First, none of Mr. Gianella's actions were illegal. He has every right to seek redress by any means available to him.

Second, unfortunately, nothing has come of Mr. Gianella's reports to authorities. As Defendants admit in their papers, "Mr. Gianella's campaign against the Feng Lun and the Vantone defendants utterly failed." Defendants have suffered no harm from Mr. Gianella's past actions, making the likelihood that they will suffer future harm from speculative future actions highly dubious.

Third, Defendants offer no evidence to demonstrate that Mr. Gianella is likely to continue in his efforts to report Defendants' illegal activities to authorities. Mr. Gianella, through Plaintiff is now seeking redress via this lawsuit. He has no reason to pursue alternative means of redress.

## V.    CONCLUSION

Defendants' motion is disingenuous at best. Defendants' claims to first use of the VANTONE mark in commerce in the United States are belied by their own admissions that they were not, as of 2011, using the mark in commerce. They speak from both sides of their mouths: on the one hand claiming to never have used the mark in commerce (to escape liability for infringement of Plaintiff's trademarks) and on the other hand claiming prior first use in commerce of the mark sufficient to establish

priority!  There is a difference between inconsistent pleading and arguing completely inconsistent factual positions.  Defendants are doing the latter.

Defendants try to discredit Plaintiff's use in commerce of the mark by labelling such use "token" use.  This is clearly inaccurate.  Priority is not a matter of establishing a certain quantity of uses in commerce.  Plaintiff is a small business, struggling to expand its business and its brand, but weighed down by Defendants' attempts to steamroll over it.  Nevertheless, it has shown regular and consistent use in commerce from 2006 to the present.

The rule of trademark priority is first use in commerce in the United States.  Under this standard, Plaintiff clearly has priority in the United States, whatever Defendants' rights in China may be.  Defendants therefore have no right to enjoin Plaintiff's use of its own mark in commerce, nor to impose a prior restraint on Plaintiff's or Mr. Gianella's right to free speech and to seek redress for grievances.  Defendants' motion must be denied.

Respectfully Submitted,

DATED:      December 19, 2014          **WIRTZ LAW APC**

By:   _____
        Richard M. Wirtz
        Attorney for Plaintiff