UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE VANTONE GROUP LIMITED LIABILITY COMPANY,<br><br>         Plaintiff,<br><br>    - against -<br><br>YANGPU NGT INDUSTRIAL CO., LTD et al.,<br><br>         Defendants. | Case No.: 13 Civ. 7639 (LTS)(FM) |

# MEMORANDUM OF LAW IN SUPPORT OF THE MOVANT DEFENDANTS' REPLY TO OBJECTIONS TO ITS MOTION FOR A PRELIMINARY INJUNCTION

DACHENG LAW OFFICES LLP
Two Wall Street, 21st Floor
New York, NY  10005
Tel: (212) 380-8388
Fax: (212) 810-1995
*Attorneys for Vantone Holdings Co., Ltd., China Center New York LLC, Vantone Property NY LLC, Vantone Residences LLC, Vamerica Fund LLC, Vantone US LLC n/k/a Vamerica LLC, Vantone US Inc., Beijing Vantone Real Estate Co., Ltd. and Feng Lun.*

# TABLE OF CONTENTS

page

PRELIMINARY STATEMENT ...............................................................................1

FACTS ..................................................................................................................2

LEGAL ARGUMENT ...........................................................................................5

I.  LEONARDO GIANELLA AND THE PLAINTIFF DO NOT CONTEST THAT THEY ARE DILUTING DEFENDANTS' VANTONE MARK AND INJURING THEIR BUSINESS REPUTATION, OR THAT THEY ARE CAUSING IRREPARABLE HARM; RATHER, THEY CHALLENGE ONLY DEFENDANTS' SENIOR USER STATUS WITH REGARD TO THE "VANTONE" NAME ...............................................................................5

II. THE VANTONE DEFENDANTS ARE COMMON LAW OWNERS AND SENIOR USERS OF THE "VANTONE" MARK .............................................6

A.  Related Vantone Entities Have Continually Used and Have Not Abandoned the "Vantone" Mark Since the 1990s .............................................7

B.  Use of the "Vantone" Mark by the Media, Particularly in the Period Shortly Prior to Mr. Gianella's Registration of "VantoneGroup.Com," Inures to the Benefit of the "Vantone" Defendants ...........................................9

CONCLUSION .....................................................................................................10

**PRELIMINARY STATEMENT**

As set forth in the original moving papers of Defendants Vantone Holdings Co., Ltd., China Center New York LLC, Vantone Property NY LLC, Vantone Residences LLC, Vamerica Fund LLC, Vantone US LLC n/k/a Vamerica LLC, Vantone US Inc., Beijing Vantone Real Estate Co., Ltd. and Feng Lun, the Vantone defendants are common law owners and seniors users of the "Vantone" mark, and the plaintiff's trademark registrations and application should be cancelled / rejected based upon lack of prior use by defendants, and for fraudulent procurement, mere sham and token use, lack of bona fide use, and insufficient use by the plaintiff and Leonardo Gianella. Additionally, Mr. Gianella and the plaintiff are irreparably harming defendants by diluting their mark and damaging their business reputation, particularly as the China Center seeks to attract clients in anticipation of its grand opening at One World Trade Center. Accordingly, a preliminary injunction should enter enjoining Mr. Gianella and the Plaintiff from using the "Vantone" mark as this action proceeds.

In opposition to this motion, Leonardo Gianella and the Plaintiff do not contest that they are irreparably harming defendants or diluting the prestigious, unique and distinctive "Vantone" mark, or even that it has been Mr. Gianella's plan to do so in hopes of somehow leveraging from a payday from defendants. Rather, Mr. Gianella and the plaintiff challenge the Vantone defendants' common law ownership and senior user status with regard to the mark. However, as set forth below, the Vantone defendants have been making continuous commercial use of the Vantone "mark" in the United States since the mid-1990s, and significantly, it has also been very widely used by the United States media, particularly in the period immediately preceding the first use by Mr. Gianella and the plaintiff.

1

Accordingly, the Vantone defendants are owners of the "Vantone" mark and a preliminary injunction should enter in this matter.

<strong>Gianella's Adoption and Use of the "Vantone" Mark is<br>Contrary to the Principles of the Lanham Act</strong>

<strong><u>FACTS</u></strong>

• **Despite being specifically asked about the origin of the plaintiff's name, Leonardo Gianella inexplicably never testified at his deposition that his family originated from "Vantone" in Italy, and "Vantone" appears to be nothing more than a summer campsite in Northern Italy.**

In his Declaration in opposition to this motion, with regard to registering the domain name "VantoneGroup.com" and subsequently starting the plaintiff company, Leonardo Gianella claims: "I selected 'Vantone,' however, because Vantone … is a small area in Italy where, Gianellas (my family) is from." Dkt. 161, Attachment 1, ¶2. However, when asked at his July 17, 2014 deposition to explain how he chose the "Vantone" name, quite significantly, Mr. Gianella did not testify about a purported family connection to "a small area" in Italy bearing the Vantone name. Specifically, Mr. Gianella testified:

> Q. How did you come up with the [Vantone] name?
> A. As I recall I was looking for a name that wasn't my family name but a corporate sounding name so I came up with a word play of vanquish, the one, but I couldn't decide on a name, everything sounded ridiculous. I thought may my Italian heritage, so I came up vanquish, one Vantone, that's how I came up with the name.

Exhibit "Y," p.49, l.5-12, to p.52. Curiously, Mr. Gianella claimed a family connection to a Vantone in Italy for the first time in his opposition to this motion. Had Mr. Gianella testified at his deposition and during the period of discovery (which ended December 5, 2014) about this "small area in Italy" bearing the Vantone name, it would have allowed follow up deposition questions, further discovery and research to test the truthfulness of his family's connection to it. Notably, as set forth in the annexed Second Declaration of

Kerry J. Kaltenbach, it appears from a "Google" search of the words "Vantone" and "Italy" that "Rio Vantone" is nothing more than a popular summer campsite on a lake, Lago d'Idro, in Northern Italy, between and just north of Milan and Venice. *See* Exhibit "Z." Presumably, Mr. Gianella's "Vantone" family connection was simply invented after some Internet research to provide a further good faith explanation for his domain name and trademark registration. Indeed, Mr. Gianella's inexplicable failure to reveal this purported family connection at deposition, which deprived defendants of the opportunity to verify this new factual claim, and that "Rio Vantone" appears to be nothing more than a summer camp site, strongly suggests this.[1]

- **Leonardo Gianella's September 4, 2013 "strong arm" e-mail correspondence to Vantone's Chinese counsel, Exhibit "X," was an attempt at a $20,000,000 sale; not a settlement offer.**

The September 4, 2013 e-mail correspondence from Mr. Gianella to Vantone's Chinese counsel wherein he indicated that the "Vantone" mark was worth $20,000,000, Exhibit "X," was an attempted sale. Indeed, Mr. Gianella explained that it was an offer of sale at his deposition:

> Q: …did you offer [to] sell the Vantone name?
> A: Yes.
> Q: And did you discuss a price at which you would do that?
> A: Yes.
> Q: And what was the price?
> A: Twenty million.

---

[1] In fact, Mr. Gianella claims in his Declaration that there were two completely separate avenues which, quite coincidentally, led him to the same "Vantone" name: combining "vanquish" and "the one" happened to yield the very same name as the "small area in Italy" from which Mr. Gianella's family purportedly originates, Vantone. The Second Circuit has addressed this type of over-explaining: "To the court's ear … the … motion sounds like Hamlet's words to his mother: 'The lady doth protest too much, me thinks.' Shakespeare, Hamlet, Act II, Scene II, line 242." Rosen v. Dick, 639 F.2d 82, 87 n.6 (2d Cir. 1980). Of course, this coincidence in Mr. Gianella's choice of names for his company is compounded by the further coincidence that Mr. Gianella registered the domain name "VantoneGroup.com" on the 8:17 p.m. on April 13, 2006, the very evening that the phrase "Vantone Group" appeared no less than five times in the New York Times. Moreover, it is yet a further coincidence that Mr. Gianella's company, "The Vantone Group," includes in its name the word "group" notwithstanding that the plaintiff is not a "group" of companies.

3

>Q: Twenty million U.S. dollars?
>A: That's right.

Exhibit "I," p.130, l.1-17. While Mr. Gianella in his opposition now attempts to characterize this attempted sale as a Rule 408 compromise offer, this characterization is belied by his deposition testimony, as well as the tone and character of his "strong arm" correspondence. Exhibit "X."

- **Leonardo Gianella acknowledges in his Declaration that he researched trademark law and he presumably learned of the need to make use of a mark before others can be prevented from using it – mere registration is not enough.**

In his Declaration, Leonardo Gianella acknowledges that he performed Internet research concerning and studied trademark law, as deeply as learning about the several categories of marks including "arbitrary" and "fanciful," and even the levels of legal protection afforded to each. Dkt. 161, Attachment 1, ¶2. Presumably, Mr. Gianella also learned at that time that acquiring and holding a trademark, and excluding others from using it, required "use" of the mark, which explains his token, "sham" use of the Vantone name, *see* plaintiff's opposition to this motion, Dkt. 161, p.3-5, in anticipation of offering to sell the mark to defendants. Exhibit "X."

## LEGAL ARGUMENT

**I.  LEONARDO GIANELLA AND THE PLAINTIFF DO NOT CONTEST THAT THEY ARE DILUTING DEFENDANTS' VANTONE MARK AND INJURING THEIR BUSINESS REPUTATION, OR THAT THEY ARE CAUSING IRREPARABLE HARM; RATHER, THEY CHALLENGE ONLY DEFENDANTS' SENIOR USER STATUS WITH REGARD TO THE "VANTONE" NAME.**

As set forth in defendants' original moving papers, Leonardo Gianella and the plaintiff are diluting defendants' "Vantone" mark and injuring their business reputation within the meaning of New York General Business Law § 360-l, and significantly, in their opposition, Mr. Gianella and the plaintiff unabashedly do not contest that they are doing so.[2]  Rather, they simply argue that they have priority rights to the "Vantone" mark.  Even more importantly, Mr. Gianella and the plaintiff do not dispute that the damage which they are causing to defendants is irreparable, and indeed, it is surely calculated to be.  As noted in Li Xu's Declaration, as the China Center is preparing for its grand opening at One World Trade Center and its efforts to attract American and Chinese clients intensifies, should prospective clients associate the unique, distinctive and prestigious "Vantone" name with Mr. Gianella and his company, the China Center's business operations will be irreparable harmed.  *See* Declaration of Li Xu, Dkt. 146, ¶8.  Moreover, in their opposition, Mr. Gianella and his company, the plaintiff,[3] have not claimed that they are in a position to pay

---

[2] Without a doubt, claiming superior rights to the "Vantone" mark and contriving some sham use of it, diluting defendants' mark and injuring their business reputation, along with attempting to cause embarrassment for Feng Lun and even his arrest, and leveraging all of this into a multi-million dollar pay day, is the actual business plan of Mr. Gianella for the plaintiff.  This plan is most clearly evidenced by Mr. Gianella's blog on his website devoted to the Vantone defendants, Exhibit "U," his letter and e-mail campaign concerning the Vantone defendants and Feng Lun, Exhibit "W," and his "strong arm" correspondence to the Vantone defendants demanding $20 million. Exhibit "X."  This is not Mr. Gianella's first effort to either exploit other companies' well-known marks or force a sale of at least a domain name. *See* Exhibit "L."

[3] It is undisputed by Mr. Gianella that the plaintiff is a mere "side project" for him, and his regular employment is at Trader Joe's specialty grocery store.

5

any damages which may be awarded to defendants in this matter, particularly the China Center. "[M]onetary injury *may* suffice to establish irreparable harm in situations 'where the party that might ultimately be ordered to pay the monetary damages is insolvent or facing imminent bankruptcy, or is in a perilous financial state.'" Centauri Shipping Ltd. v. Western Bulk Carriers KS, 528 F. Supp. 2d 186, 194 (S.D.N.Y. 2007)(*citation omitted*). Accordingly, the sole issue presented in plaintiff's opposition is the question of priority of use of the "Vantone" mark.

## II. THE VANTONE DEFENDANTS ARE COMMON LAW OWNERS AND SENIOR USERS OF THE "VANTONE" MARK.

Several Vantone entities[4] have been operating in the United States since the early to mid-1990s, and the "Vantone" mark has been in continuous commercial use by these entities since that time. These entities include "Vantone USA, Inc., which used the fictitious name Vantone International Group, Vantone Corp., Vantone Residences LLC, Vantone Property NY LLC and Vantone US Inc." Declaration of Li Xu, ¶5, Dkt. 146. Additionally, "Beijing Vantone, through its United States subsidiaries, is an investor in China Center New York LLC" and the China Center's "prospective Chinese clients, including large corporations and real estate developers, … are interested in the China Center because of its connection with the 'Vantone' name." Declaration of Li Xu, ¶¶1,4, Dkt. 146.

---

[4] In defendants' moving papers, the Vantone defendants are characterized as a "conglomeration" rather than a "group," in part to distinguish them from "The Vantone Group," the plaintiff. Indeed, the defendants are often referred to as the "Vantone Group," such as in the April 13, 2006 New York Times article, Exhibit "F", Dkt 147-16. In their opposition papers, Mr. Gianella and the plaintiff suggest that use of the term "conglomeration" in defendants' motion papers imposes a conglomerate-liability upon them based upon a Black's Law Dictionary definition, but doing so is simply reading too much into use of the term.

### A. Related Vantone Entities Have Continually Used and Have Not Abandoned the "Vantone" Mark Since the 1990s.

The Lanham Act, with regard to services, defines commercial use to include "services … rendered in more than one State or in the United States and a foreign country[5] and the person rendering the services is engaged in commerce in connection with the services." 15 USCS § 1127. Notably, the Lanham Act, 15 USCS § 1055, contemplates that "related companies" may together make commercial use of a trade or service mark.[6] "[T]he Lanham Act permits an applicant to establish ownership [of a mark] under the 'related companies' doctrine by showing that it controlled the first user of the mark." Rockland Exposition, Inc. v. Alliance of Auto. Serv. Providers, 894 F. Supp. 2d 288, 309 (S.D.N.Y. 2012)(*citation omitted*).[7]

Notably, creation and maintenance of a business entity alone may suffice to constitute commercial use: "corporate formation and continued existence of a New York State corporation with an almost identical name and description of business establishes 'use in commerce,' if barely." Stark Carpet Corp. v. Stark Carpet & Flooring Installations, Corp., 954 F. Supp. 2d 145, 159 (E.D.N.Y. 2013). *See* Exhibit "B."[8] However here,

---

[5] There is certainly no dispute that the Vantone defendants have operated at all relevant times in "a foreign country," that is, China. Mr. Gianella and the plaintiff in their opposition essentially argue, against the plain meaning of the Lanham Act, that interstate commerce can include 'at least two states' and nothing else.

[6] 15 USCS § 1055, "Use by related companies affecting validity and registration," provides in pertinent part: "Where a registered mark or a mark sought to be registered is or may be used legitimately by related companies ..."

[7] Notwithstanding the related companies doctrine, in their opposition to this motion, Mr. Gianella and the plaintiff suggest that each defendant Vantone entity's use of the "Vantone" mark be treated separately.

[8] Abandonment of a mark is presumed after a period of three consecutive years of nonuse, 15 USCS §1127, and here the Vantone entities existed and operated in the United States without a three-year gap: Vantone USA Inc., June 1994 to February 2004; Vantone Corp., December 1995 to December 2007; China Center New York LLC, May 2006 to present; Vantone Residences LLC, July 2009 to present; Vantone Property NY LLC, July 2009 to present; Vantone US Inc., December 2009 to present.

defendants have done much more than merely form six business entities bearing the "Vantone" name. Exhibit "C" contains a sampling of business records concerning the Vantone conglomeration's operations in the United States since the mid-1990s[9], and includes internal and external correspondence with its business partners, annual work summaries, budget proposals, and profit and loss sheets, bank account information, checks and bank wire transfer receipts, and stock certificates, showing Vantone investments in various U.S. business entities in different States. Accordingly, the "Vantone" mark has been in continuous use by the related Vantone defendants since the 1990s,[10] and they are senior users of and have priority to it.[11]

---

[9] Obviously, these are not all of the Vantone business records going back twenty years, and while some of the documents are in Chinese, it is clear they show that the companies were operating and the "Vantone" mark was in use. Additionally, it is impractical on a motion for a preliminary injunction to translate and explain each and every documents. Of course, these documents were exchanged in discovery with counsel for Mr. Gianella and the plaintiff.

[10] In an effort to show that the Vantone defendants were actually not using the "Vantone" name in commerce, Mr. Gianella and the plaintiff offer nothing more than two unsworn 2011 letters from attorneys which had previously represented Vantone entities. Exhibits "51" and "52." First, unsworn statements, including those made by an attorney, are not evidential: "An attorney's unsworn statements in a brief are not evidence." Kulhawik v. Holder, 571 F.3d 296, 298 (2d Cir. 2009). *See also* United States v. 143-147 E. 23rd St., 77 F.3d 648 (2d Cir. N.Y. 1996). Next, Rule 408 explicitly prohibits admission of "a statement made during compromise negotiations" offered "to impeach by prior inconsistent statement or contradiction." Fed. R. Evid. 408. Indeed, these unsworn statements, particularly Exhibit "51," were made during settlement negotiations and Exhibit "51" even bears a legend that it is a "RULE 408 SETTLEMENT COMMUNICATION." Moreover, "bald assertions" lacking any "factual basis," such as those contained in Exhibit "51" and "52" are also insufficient to defeat a proper motion. *E.g.* Hernandez v. Kellwood Co., 2003 U.S. Dist. LEXIS 17862 (S.D.N.Y. Oct. 8, 2003). Finally, Exhibit "52," dated June 14, 2011, concerns Vantone USA, Inc. and its fictitious identity Vantone International Group, which was dissolved on February 23, 2004, Exhibit "B," more than seven years before the letter was written (and accordingly, statements concerning this particular Vantone entity's non-use of the "Vantone" mark in 2011 was accurate).

[11] Evidence provided for the first time on a motion and not in discovery should be precluded from consideration on the motion. Malaco Leaf, AB v. Promotion in Motion, Inc., 287 F. Supp. 2d 355 (S.D.N.Y. 2003)("[t]his Court declines to consider [evidence] offered to defendants for the first time on a summary judgment motion and inexplicably not produced during discovery"). Here, notwithstanding appropriate demands, the plaintiff and Mr. Gianella inexplicably never produced in discovery (at least most of) what is annexed to their opposition papers as Exhibits "34" to "38," and "40" to "43," all of which is offered to show that Mr. Gianella made use of the "Vantone" name. It is therefore submitted that these documents should not be considered in opposition to this motion.

**B. Use of the "Vantone" Mark by the Media, Particularly in the Period Shortly Prior to Mr. Gianella's Registration of "VantoneGroup.Com," Inures to the Benefit of the "Vantone" Defendants.**

In evaluating use of a mark, print media coverage concerning the mark is significant. Lebewohl v. Heart Attack Grill LLC, 890 F. Supp. 2d 278, 291 (S.D.N.Y. 2012) ("newspaper citations may be evidence of use in interstate commerce" and "an advertisement in The New York Times contributed to finding use in commerce, because the publication 'enjoys wide interstate circulation'") *citing* Demetriades v. Kaufmann, 698 F. Supp. 521 (S.D.N.Y. 1988); Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC, 470 F. Supp. 2d 365, 372 (S.D.N.Y. 2007)("finding continuous use where mark was used for almost ten years and plaintiff enjoyed substantial coverage in the print media") *citing* Housing & Servs. v. Minton, 1997 U.S. Dist. LEXIS 8883 (S.D.N.Y. 1997); T.A.B. Sys. v. PacTel Teletrac, 77 F.3d 1372, 1375 (Fed. Cir. 1996)(in trademark dispute, the Court considered "the opposer's use of the word or phrase in … articles in newspapers and trade publications"); Sanrio Co., LTD. v. Ann Arctic, Inc., 1998 U.S. Dist. LEXIS 19384 (E.D.N.Y. 1998)(a trade dress matter in which "Sanrio's products have been in continuous use for over twenty years … to great media acclaim").

As set forth in Exhibit "E," the "Vantone" name was very widely used by the media in the period preceding Mr. Gianella's April 13, 2006 registration of the domain name "VantoneGroup.com." This use was by publications including The New York Times, New York Post, Daily News, Wall Street Journal, Forbes, Exhibit "E," and inures to defendants' benefit. Accordingly, the Vantone Defendants are senior common law users and owners of the "Vantone" mark, and have priority to it.[12]

---

[12] While Mr. Gianella and the plaintiff contend that defendants delayed in seeking this preliminary injunction, as set forth in Li Xu's Declaration, in anticipation of its grand opening at One World Trade Center, the China

9

# **CONCLUSION**

For the foregoing reasons, it is respectfully submitted that an Order be entered preliminarily enjoining Third-Party Defendant Leonardo Gianella and Plaintiff (Counterrespondent) The Vantone Group Limited Liability Company from any use, promotion, advertising or assertion of any claims to the use of the "Vantone" mark during the pendency of this litigation and permitting the movants and other defendants named in this lawsuit to proceed in any business or other transaction, including the use and promotion of the "Vantone" marks claimed by the plaintiff and which is the subject of this litigation; and for such other and further relief as this Court may deem just and proper.

Dated: New York, New York
December 29, 2014

DACHENG LAW OFFICES LLP

By: _____
Leodis C. Matthews (*pro hac vice*)
e-mail: leodis.matthews@dachenglaw.com
Two Wall Street, 21st Floor
New York, NY 10005
Tel: (212) 380-8388/Fax: (212) 810-1995
*Attorneys for Vantone Holdings Co., Ltd., China Center New York LLC, Vantone Property NY LLC, Vantone Residences LLC, Vamerica Fund LLC, Vantone US LLC n/k/a Vamerica LLC, Vantone US Inc., Beijing Vantone Real Estate Co., Ltd. and Feng Lun.*

---

Center is now intensifying its efforts to attract American and Chinese clients. Should prospective clients association the unique, distinctive and prestigious Vantone name with Mr. Gianella and his company, the China Center's business operations will undoubtedly be irreparably harmed. *See* Declaration of Li Xu, Dkt. 146, ¶8. While Mr. Gianella's attempts to sully the "Vantone" name, and embarrass and injure Feng Lun, were relatively less significant in the past, they will undoubtedly make an impact now.