UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

THE VANTONE GROUP LIMITED LIABILITY
CO.,

       Plaintiff,

  -v-                                               No.  13CV7639-LTS-MHD

YANGPU NGT INDUSTRIAL CO., LTD., et al.,

       Defendants.

-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

Defendants/Counterclaimants/Third-Party Plaintiffs Vantone Holdings Company, Ltd., China Center New York LLC ("China Center"), Vantone Property NY LLC, Vantone Residences LLC, Vamerica Fund LLC, Vantone US LLC, Vantone US Inc., Beijing Vantone Real Estate Co., Ltd. and Feng Lun (collectively, "Defendants" or the "Moving Parties") move for a preliminarily injunction against Third-Party Defendant Leonardo Gianella ("Gianella") and Plaintiff/Counter-Defendant The Vantone Group LLC (the "Vantone Group," and collectively, the "Nonmoving Parties").  The Moving Parties seek an injunction preventing both Gianella and the Vantone Group from using, promoting, advertising or asserting claims to the right to use the "Vantone" mark during the pendency of this litigation, and affirmatively permitting the Moving Parties to continue using the "Vantone" marks that are the subject of this litigation in business transactions and promotions, among other uses.  The Court has jurisdiction of this case under 28 U.S.C. § 1331.  The Court has carefully considered the parties' submissions and, for the reasons

stated below, denies the Moving Parties' motion for a preliminary injunction in its entirety.[1]

This Memorandum Opinion and Order constitutes the Court's findings of fact and conclusions of law for the purposes of Federal Rules of Civil Procedure 52 and 65. In light of the Moving Parties' failure to provide any evidence in support of their irreparable harm claim, however, the Court finds it unnecessary to make specific findings of fact.[2] Accordingly, the following section briefly summarizes the parties' claims and principal contentions. It is drawn primarily from the Second Amended Complaint ("SAC," Docket Entry Number 123) and declarations filed in connection with the instant motion practice.

BACKGROUND

Plaintiff Vantone Group LLC is a real estate company operating in New York, which was founded by Third-Party Defendant Leonardo Gianella. (SAC ¶ 37.) Gianella allegedly began preparations to use the name "The Vantone Group" for his company in April 2006, when he registered two internet domain names: vantonegroup.com and

---

[1] It is not clear that Vantone Holdings Company, Ltd., Beijing Vantone Real Estate Co., Ltd. and Feng Lun have standing to bring this motion, as they are not designated as either counterclaimants or third-party plaintiffs in Defendants' counterclaim and third party-complaint. (See Docket Entry No. 21.) Since these parties have not asserted affirmative claims against either the Vantone Group or Gianella, it does not appear that they are entitled to relief in the form of an injunction. Nonetheless, because the motion is entirely meritless, the Court denies it with respect to all parties.

[2] "On a motion for preliminary injunction, where 'essential facts are in dispute, there must be a hearing . . . and appropriate findings of fact must be made.'" Fengler v. Numismatic Americana, Inc., 832 F.2d 745, 747 (2d Cir. 1987) (quoting Visual Sciences, Inc. v. Integrated Communications, Inc., 660 F.2d 56, 58 (2d Cir.1981)). Here, however, the Moving Parties have not provided evidence of the essential facts necessary to establish their right to injunctive relief, and therefore the Court need not resolve any factual disputes in deciding this motion.

vantonerealestate.com.  (Id.)  The Vantone Group was formed as New York State limited liability company on April 18, 2007, the date on which the "Vantone" name was allegedly first used in commerce.  (SAC ¶ 37.)  The Vantone Group has been a licensed real estate brokerage in New York since at least January 8, 2008 (id.), and is the record owner of the federally registered trademark "The Vantone Group" for real estate brokerage services.  (Id. ¶ 39.)   The mark was registered on October 5, 2010.  (Id.)  The Vantone Group also owns the rights to the federally registered trademark "The Vantone Group" for financial and investment services, which was registered on November 6, 2012.  (SAC ¶ 40.)  The Vantone Group also owns the New York State service mark "The Vantone Group" for real estate brokerage services.  (Id. ¶ 4, Ex. 4.)  Because a large portion of The Vantone Group's clients are Chinese nationals, Plaintiff began offering a Chinese version of its website in 2012 , which included a Chinese character transliteration of "The Vantone Group" mark.  (Id. ¶ 38.)

       The Moving Parties are members of a China-based "conglomeration" of companies engaged primarily in real estate and business development.  (See generally Declaration of Li Xu in Support of Motion for a Preliminary Injunction ("Xu Dec.").)  According to the Moving Parties, several of these entities have operated in the United States under the "Vantone" mark since the early 1990s.  (See Declaration of Kerry Kaltenbach in Support of Motion for a Preliminary Injunction ("Kaltenbach Dec.") ¶ 3, Exs. B and C.)  These entities allegedly include, or have at times included, Vantone USA, Inc. d/b/a Vantone International Group, Vantone Corp., Vatone Residences LLC, Vantone Property NY LLC and Vantone US, Inc.  (Xu Dec. ¶ 5.)  The Vantone conglomeration also includes The China Center, which is described as "a business and cultural center which will open at the recently completed One World Trade Center in New York City and will occupy six floors."  (Id. ¶ 1.)  The China

Center is intended to serve as "a gateway for Chinese and other foreign companies interested in doing business in and investing in the United States," and will purportedly "provide a venue for business, social and cultural exchange . . . particularly, for business leaders from China and the United States to meet, interact and do business." (Xu Dec. ¶ 2.) The China Center has allegedly signed a 21-year lease worth hundreds of millions of dollars, and the interior is supposedly being planned by renowned designer Kengo Kuma at the cost of tens of millions of dollars. (Id. ¶ 3.) According to the Moving Parties, the China Center has several prospective clients, many of whom became interested in the China Center due to its association with the "Vantone" name, which has "tremendous good will and prestige" in the United States. (Xu Dec. ¶ 4.)

The parties have been engaged in a dispute regarding use of the "Vantone" mark for several years. This lawsuit, in which Plaintiff alleges that Defendants' use of Vantone and related marks infringes on his registered marks, was filed on October 29, 2013. (See generally SAC and Docket Entry No. 1.) Defendants have filed counterclaims and a third party complaint asserting, inter alia, that their rights in the Vantone mark are superior, that they are entitled to cancellation of Plaintiffs' marks, and that Plaintiff is engaging in unfair competition and unlawful dilution of their marks. (See generally Answer, Third-Party Complaint and Counterclaim, Docket Entry No. 21.) On November 22, 2014, the Moving Parties filed the instant motion seeking a preliminary injunction, claiming that the impending opening of the China Center increases the likelihood that the Nonmoving Parties' use of the Vantone mark will harm their interests. (See Xu Dec. ¶ 8.)

## DISCUSSION

Preliminary Injunction Standard

A preliminary injunction is "one of the most drastic tools in the arsenal of judicial remedies." Hanson Trust PLC v. SCM Corp., 774 F.2d 47, 60 (2d Cir. 1985). Indeed, the Supreme Court has characterized injunctive relief as "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 22 (2008); see also Sussman v. Crawford, 488 F.3d 136, 139 (2d Cir. 2007) ("[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion") (internal quotation marks and citation omitted). A preliminary injunction is "never awarded as of right," and in each case "courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" Winter, 555 U.S. at 24 (quoting Amoco Production Co. v. Village of Gambell, AK, 480 U.S. 531, 542 (1987)).

"To obtain a preliminary injunction, the moving party must demonstrate (1) irreparable harm absent injunctive relief; (2) either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor; and (3) that the public's interest weighs in favor of granting an injunction." Red Earth LLC v. U.S., 657 F.3d 138, 143 (2d Cir. 2011) (internal quotation marks and citation omitted). The Second Circuit has stated that "[a] showing of irreparable harm is 'the single most important prerequisite for the issuance of a preliminary injunction.'" Faiveley Transport Malmo AB v. Wabtec Corp., 559 F.3d 110, 118 (2d Cir. 2009) (quoting Rodriguez v. DeBuono, 175 F.3d 227, 234 (2d Cir. 1999)). "To satisfy the irreparable harm requirement, Plaintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that

cannot be remedied if a court waits until the end of trial to resolve the harm." See Grand River Enterprise Six Nations Ltd. v. Pryor, 481 F.3d 60, 66 (2d Cir. 2007) (internal quotation marks and citations omitted). Furthermore, "it has always been true that irreparable injury means injury for which a monetary award cannot be adequate compensation and that where money damages is adequate compensation a preliminary injunction will not issue." Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979).

The Moving Parties Have Not Demonstrated Irreparable Harm

The Moving Parties have not proffered facts sufficient to carry their burden of demonstrating that they will suffer irreparable harm in the absence of an injunction. Accordingly, their motion must be denied. See e.g., Ringling Brothers-Barnum & Bailey Combined Shows, Inc. v. B.E. Windows, Corp., 937 F. Supp. 204 (S.D.N.Y. 1996) (finding that, in the absence of a showing of dilution, plaintiff had failed to demonstrate irreparable harm, therefore preliminary injunction must be denied). The Moving Parties' proffer with respect to the element of irreparable harm is wholly conclusory, and is unsupported by even a single specific allegation of fact.[3] The Moving Parties cite only the Declaration of Vantone Holdings Vice Chairman Li Xu for the proposition that "as the China Center is planning its grand opening and its efforts to attract clients intensify, should potential clients associate or continue to

---

[3] In their reply papers, the Moving Parties inexplicably assert that "Mr. Gianella and the plaintiff do not dispute that the damage which they are causing to defendants is irreparable" (Memorandum of Law in Support of the Movant Defendants' Reply to Objections to its Motion For a Preliminary Injunction, at p. 5), despite the fact that Gianella and Plaintiff include in their opposition papers a section captioned "Defendants Have Not Shown That They Are Likely to Suffer Irreparable Harm If a Preliminary Injunction Is Not Granted," in which they offer arguments that directly challenge the Moving Parties' claim of irreparable harm. ( See Nonmoving Parties' Opposition to Defendants' Motion for Preliminary Injunction, pp. 19-20.)

associate Mr. Gianella and his business with the 'Vantone' name, irreparable harm to this prestigious, multi-billion name will undoubtedly result." (See Memorandum of Law in Support of Defendants' Motion for a Preliminary Injunction ("Moving Parties' Memo"), p. 26; see also Xu Dec. ¶ 8.) They do not elaborate on the nature of the anticipated harm. The Moving Parties do not explain how the anticipated harm is "actual and imminent" rather than speculative, nor do they offer any argument as to why a monetary award would be insufficient to compensate them for any injury actually suffered. Furthermore, although they argue that they are likely to succeed on, inter alia, their New York State law dilution claim, they offer only conclusory assertions as to the fame of their marks, their goodwill and the likelihood of dilution. No facts are proffered concerning the quality of Plaintiff's goods or services, nor the likelihood of dilution by blurring or tarnishment.[4]

Moreover, as the Nonmoving Parties note, the Moving Parties have had notice of the Vantone Group's claim to ownership of the Vantone mark since at least late 2010, when the Vantone Group first sent "cease and desist" letters to several of the Chinese Vantone entities. (See Declaration of Leonardo Gianella in Support of Plaintiff's Opposition to Defendants'

---

[4] The elements of dilution under New York law are "(1) ownership of a mark that is distinctive or has acquired distinctiveness through secondary meaning, and (2) a likelihood of dilution through blurring or tarnishment." Hearts on Fire Company, LLC. v. L C Intern. Corp., No. 04CV2536-LTS, 2004 WL 1724932, at *3 (S.D.N.Y. July 30, 2004). "Blurring occurs where the defendant uses or modifies the plaintiff's trademark to identify the defendant's goods and services, raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product." New York Stock Exchange, Inc. v. New York, New York Hotel LLC, 293 F.3d 550, 558 (2d Cir. 2002) (internal quotation marks and citation omitted). "Tarnishment occurs where a trademark is linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context, with the result that the public will associate the lack of quality or lack of prestige in the defendant's goods with the plaintiff's unrelated goods." Id. (internal quotation marks and citation omitted).

Motion for Preliminary Injunction ("Gianella Dec.") ¶ 16.)  "[C]ourts typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months."  Gidatex, S.r.L. v. Campaniello Imports, Ltd., 13 F. Supp. 2d 417, 419 (S.D.N.Y.1998).  A "failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury" on the horizon.  Citibank, N.A. v. Citytrust, 756 F.2d 273, 277 (2d Cir. 1985) (finding that a nine month delay in requesting a preliminary injunction negated presumption of irreparable harm) (internal quotation marks and citation omitted).  Although the Moving Parties claim that the impending opening of the China Center now makes potential harm imminent, their long delay in seeking an injunction undermines the plausibility of their assertion that they will suffer irreparable harm in the absence of injunctive relief.[5]

      The Moving Parties state that Gianella and the Vantone Group will damage the business reputation and dilute the good name of Vantone and the China Center, but offer no specific factual allegations as to how or why this is the case.  Without such factual support, Defendants' claim of irreparable harm cannot stand.  See e.g., In re United Pan-Europe Communications N.V., No. 02CV16020-RWS, 2003 WL 221819, at *4 (S.D.N.Y. 2003) (rejecting "irreparable harm" argument on the basis that the only potential harm cited was "the conclusory allegation that reputational harm" would ensue, without any "specific allegations" as to what the moving party's reputation was at the time and how it would be affected by the non-

---

[5] The Moving Parties claim that the China Center lease at One World Trade Center was signed in March 2009 (Xu Dec. ¶ 3), and argue that the China Center gained tremendous notoriety as far back as April 2006, when an article about it appeared in the New York Times.  (See Moving Parties' Memo, at p. 7.)  In light of these factual proffers, the Court finds their argument that prospective harm has only recently become "imminent" unconvincing.

moving party's actions); Shepard Indus., Inc. v. 135 East 57th Street, LLC, No. 97CV8447-DAB, 1999 WL 728641, at *8 (S.D.N.Y. Sept. 17, 1999) ("conclusory statements of loss of reputation and goodwill constitute an insufficient basis for a finding of irreparable harm."). "Despite the amorphous nature of good will, courts require some factual predicate to support a finding that, absent an injunction, there is an imminent danger that a party's good will will be irreparably harmed." Golden Krust Patties, Inc. v. Bullock, 957 F. Supp. 2d 186, 195 (E.D.N.Y. 2013).

Because the Moving Parties have failed to demonstrate irreparable harm stemming from the actions of Gianella or The Vantone Group, the Court need not address the remaining injunctive relief factors. The Moving Parties' failure to carry their burden on the issue of irreparable harm is fatal to their claim for injunctive relief.

## CONCLUSION

For the foregoing reasons, the Moving Parties' motion for a preliminary injunction is denied in its entirety.

This Memorandum Opinion and Order resolves docket entry number 144.

SO ORDERED.

Dated: New York, New York
       March 11, 2015

                                                                                                   /s/ Laura Taylor Swain
                                                                                                 LAURA TAYLOR SWAIN
                                                                                                 United States District Judge