UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE VANTONE GROUP LIMITED LIABILITY COMPANY,<br><br>       Plaintiff,<br><br>- against -<br><br>YANGPU NGT INDUSTRIAL CO., LTD et al.,<br><br>       Defendants. | Case No.: 13 Civ. 7639 (LTS)(FM) |

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT OR IN THE ALTERNATIVE
FOR PARTIAL SUMMARY JUDGMENT

DACHENG LAW OFFICES LLP
Two Wall Street, 21st Floor
New York, NY  10005
Tel: (212) 380-8388
Fax: (212) 810-1995
*Attorneys for Vantone Holdings Co., Ltd., China Center New York LLC, Vantone Property NY LLC, Vantone Residences LLC, Vamerica Fund LLC, Vantone US LLC n/k/a Vamerica LLC, Vantone US Inc., Beijing Vantone Real Estate Co., Ltd. and Feng Lun.*

TABLE OF CONTENTS

page

PRELIMINARY STATEMENT ................................................................1

PROCEDURAL HISTORY ..................................................................1

SUMMARY OF SALIENT FACTS .......................................................2

LEGAL ARGUMENT.........................................................................8

I.      THE VANTONE DEFENDANTS ARE BOTH PRIOR
        USERS OF THE "VANTONE" TRADE NAME AND
        SENIOR USERS AND COMMON LAW OWNERS OF
        THE "VANTONE" MARK.................................................8

II.     THE PLAINTIFF'S FEDERAL AND NEW YORK
        STATE MARK REGISTRATIONS SHOULD BE
        CANCELLED, AND FEDERAL TRADEMARK
        APPLICATION DENIED .................................................10

        A.      The Plaintiff's Federal Mark Application for
                Real Estate Was Void Ab Initio and Non-Correctable,
                and the USPTO Registration No. 3,856,724)
                Should Therefore be Cancelled.................................10

        B.      All of the Plaintiff's Trademark Registrations
                Should Be Cancelled and Its Application Denied
                Based upon Prior Use by Defendants of the
                "Vantone" Trade Name and Mark .............................12

        C.      Both Plaintiff's Mark Registrations Should
                Be Cancelled and Its Application Denied
                Based upon Fraudulent Procurement.........................14

        D.      All of the Plaintiff's Mark Registrations Should
                Be Cancelled and Its Application Denied
                Based upon Abandonment and Insufficient Sales and
                Use of the Vantone Trade Mark................................17

        E.      All of the Plaintiff's Mark Registrations Should
                Be Cancelled and Its Application Denied
                Based upon Sham and Token Use, and
                Lack of Bona Fide Use .........................................19

III.    THE PLAINTIFF'S SECOND AMENDED COMPLAINT
        SHOULD BE DISMISSED IN ITS ENTIRETY ..................................................21

CONCLUSION...........................................................................................................................22

PRELIMINARY STATEMENT

Movants Defendants China Center New York LLC, Vantone Property NY LLC, Vantone Residences LLC, Vamerica Fund LLC, Vantone US LLC n/k/a Vamerica LLC and Vantone US Inc., (hereinafter, the "US Vantone companies") bring this motion for summary judgment, or alternatively for partial summary judgment, on claims in Plaintiff's Second Amended Complaint for relief based upon Plaintiff's alleged rights to the use of "Vantone" as a trademark. For the reasons set forth hereinafter and in the movant defendants' Counterclaims, the movant defendants seek cancellation of Plaintiff's US Patent and Trademark Office ("USPTO") and New York State registrations of "Vantone" as its trademark and a finding that the movants are entitled to use "Vantone" as a mark and trade name because they were prior and senior users of the "Vantone" mark and name.

PROCEDURAL HISTORY

Plaintiff, The Vantone Group Limited Liability Company ("TVG"), filed its Second Amended Complaint *(Dkt. 123)*, on September 9, 2014, against twenty-four defendants and Does 1-10 for twelve (12) separate causes of action arising from TVG's claims to use of the "Vantone" trade name.   The movant defendants have counter-claimed (*Dkt. 124*) to establish their continuing common law rights to the use of the "Vantone" trade name and for cancellation of Plaintiff's USPTO and New York State "Vantone" service mark registrations, and a USPTO service mark application.[1]

---

[1]  With the exception of Beijing Vantone Real Estate Ltd, Feng Lun and Vantone Holdings, Co., Ltd., whose claims are pending the District Court's ruling on a FRCP Rule 12(b) (6) motion (*Dkt. 125*), none of the remaining foreign defendants have been served.  Claims against the landlord defendants and Port Authority (Durst Organization) are stayed pending a determination of summary judgment motion practice (*Dkt.* 64, court hearing transcript pg.14-15) and Jonathan Heath (*Dkt.* 76, Stipulation).

SUMMARY OF SALIENT FACTS

Beginning in 1994, a group of companies based in China, incorporated legal entities in the US using the "Vantone" name. Statement of Material Facts - 1 ("SMF ¶ 1"). The Chinese Vantone group incorporated Vantone USA, Inc., a New York corporation, among other entities in various US jurisdictions, as an expansion of the Chinese group's real estate investment and capital venture financing operations in the United States. (SMF ¶ 3).  Since 1994, one or more related and affiliated Vantone corporate entities have been operating continuously within the United States under the "Vantone" trade name.[2]  Since October 13, 1999, the Chinese Vantone group as a "Venture Capital Firm" operating out of Silicon Valley, California and has actively engaged in interstate business transactions throughout the United States. (SMF ¶¶ 1, 10, 13).

Following the terrorist attacks of September 11, 2001, Feng Lun, the Chairman of the Chinese Vantone group committed to be the first tenant with a significant presence in the new World Trade Center complex. (SMF ¶¶ 1 – 2, 14, 16).  In furtherance of this goal, in early 2005, the Chinese Vantone group engaged a prominent New York real estate advisor, Jones Lang LaSalle, to perform a due diligence and feasibility study to assist the group with locating space for a new center that would provide services to Chinese firms and individuals seeking to conduct business in New York (hereinafter, the "China Center"). (SMF ¶¶ 2, 5, 15). Subsequently, the Chinese Vantone group entered into negotiations with various building owners to lease a location for the China Center in Lower Manhattan. (SMF ¶¶ 5, 11, 15)  According to a brochure created by the Chinese Vantone group, the China Center was described as follows:

> *A place to create and maintain a network of business and social contacts*  - Located in a high –profile area of Manhattan, the China Center presents an opportunity for greater visibility, business growth and increased foreign

---

[2] Between December 27, 2007 and July 23, 2009, during a brief period of reorganization, the Chinese Vantone group consolidated its US operations into new entities bearing the "Vantone" trade name, as well as China Center New York LLC, a New York limited liability company.

investment in high-end, service–oriented surroundings. For Chinese individuals and firms, the center serves as a clearinghouse for government, legal and financial protocol in the US.  It offers a confident, progressive expression of what Chinese culture and business are and will be.  In doing so, it communicates a new prospective on modern China as engaging in international business and embarking on its own version of globalization in New York, and ultimately other locations in key cities.

(Exhibit E, pg. 82; SMF ¶ 13).

In September 2005, New York Governor George Pataki traveled to Beijing, China and engaged in a series of meetings to attract investments to the State of New York.  During this trip, Feng Lun, the Chairman of the China Vantone group, met with Governor Pataki and described his vision of opening a "China Center" within the top floors of one of the replacement structures of the World Trade Center complex, which would operate as a bridge between Chinese and American businesses.  (SMF ¶¶ 2,1 3, 14)

News of Feng Lun's plans and discussions with Governor Pataki created a significant "buzz" in the New York real estate market.  National newspapers and industry publications brought additional attention to Feng Lun's ongoing efforts to execute a lease in one of the new buildings being built at the World Trade Center complex.  (SMF ¶¶ 14, 15)  In preparation for operation the China Center, beginning with the May 2006, the Chinese Vantone group consolidated its US legal structure, organized new entities using the trade names "Vantone" and "China Center," made investments into New York real estate and employed an advance staff.

On May 10, 2006, the Chinese Vantone group organized China Center New York LLC in the State of Delaware and, on June 7, 2006, China Center New York LLC registered to do business in New York State.  (SMF ¶¶ 4, 5; Exhibit "B," pg. 26-32.)

On April 13, 2006, an extensive article was published in the New York Times ("NYT"), which discussed Feng Lun's plans for operating the "China Center" on the top floor of the main

building of the World Trade Center complex, now known as "One World Trade Center."  The NYT article mentioned the "Vantone Group" not less than five times. (SMF ¶ 16; Exhibit "G.")

The same evening the NYT published its feature piece on the Chinese Vantone group, at or about 8:17 p.m., Leonardo Gianella, who would later form the Plaintiff TVG's real estate brokerage company, registered several domain names using variations of the word "Vantone", including "VantoneGroup.com", "Vantonerealestate.com" and "VantoneGroup.net". Exhibit "H."  On April 18, 2007, Gianella organized Plaintiff The Vantone Group LLC, a New York State limited liability company, and on January 8, 2008, TVG became licensed as a New York State corporate real estate brokerage. (SMF ¶ 17; Exhibit "I.")  On March 24, 2009, Plaintiff registered "TheVantonegroup.com" as a domain name.

On June 23, 2009, movant defendants Vantone Residences LLC and Vantone Property NY LLC were organized under the laws of the State of New York, and began to invest in New York real estate.  On December 2, 2009, another movant defendant, Vantone US Inc., was incorporated in the State of Delaware, and began to engage in real estate investments, financial structuring and business development activities for the China Center.   (SMF ¶ 10)

On March 3, 2010, Leonardo Gianella filed a use-based trademark application [case registration No. 3856724], pursuant to Section 1(a) of the Trademark Act of 1946, 15 U.S.C. § 1051(a), listing himself, as an individual owner of "The Vantone Group" mark. After twice amending the original application, Leonardo Gianella filed yet a third amendment seeking to change the name of the original applicant owner to "The Vantone Group LLC".  (SMF ¶¶ 25-26, 30, 48).

Although Gianella and TVG submitted exemplars of proof of use in support of case registration No. 3856724 which claimed that Plaintiff was engaged in the real estate brokerage

business since April 13, 2006, TVG was not licensed as a brokerage entity until January 8, 2008.
Except for references to its website, TVG has not provided any brokerage services since its 2010
trademark application was granted. [Gianella testimony; Honor's Report pgs. 7-9].[3]  None of the
exemplars submitted by Gianella as proof of use by TVG as a licensed real estate brokerage
occurred before the active use of the "Vantone" trade name in New York by the movant
defendants and their affiliated companies.  (SMF ¶¶ 26 – 28, 46- 46d; Exhibit M, pgs. 9 – 11).

   As part of his trademark application, Leonardo Gianella also represented to the USPTO
that a New York State and nationwide search disclosed no other use of the "Vantone" trade name,
despite the fact that there were other entities using the name "Vantone" that were conducting
business in New York and elsewhere in the United States.  (SMF ¶ 28 )

   Plaintiff has two USPTO service mark registrations and one pending application as
follows:

|   | Serial No. | Reg. No. | Word Mark | Reg. Date | Good/Services | Disclaimer |
|---|---|---|---|---|---|---|
| 1 | 3856724 | 3856724 | THE VANTONE GROUP | 10/5/2010 | Real Estate Brokerage. | "GROUP" |
| 2 | 85212437 filed 1/7/2011 | 4238285 | THE VANTONE GROUP | 11/6/2012 | Financial and investment services, namely, management and brokerage in the fields of stocks, bonds, options, commodities, futures and other securities, and the investment of | "GROUP" |

---

[3] / Since the 2010 registration of the "The Vantone Group" trademark, TVG has not rendered any
real estate brokerage services or any financial and investment services under its Class 36
registration covering services related to sale of securities.

| | | | | | funds of others. | |
|---|---|---|---|---|---|---|
| 3 | 85618998 filed 5/7/2012 | Suspended based on pending lawsuit | 万通集团 translation THE VANTONE GROUP | | Real Estate Brokerage. | |

(SMF ¶¶ 25, 30, 31, 36 – 38)  After the USPTO issued case registration No. 3856724, TVG did not conduct any real estate brokerage services.  Rather than use the registered trademark for bona fide brokerage purposes, Gianella and TVG repeatedly offered to sell the "Vantone" trademark to other companies, including the movant defendants and their affiliated entities. (SMF ¶¶ 58 – 62)  In the Second Amended Complaint, Gianella described his only harm and damages resulting from his claims of unlawful use of the "Vantone" trademark, as only his time and efforts spent on litigating this lawsuit.  (SMF ¶¶ 59 – 62).  Between the USPTO registration of the "Vantone" tradename (March 3, 2010) and for the five-year period thereafter, there has been no real estate brokerage or financial services by the Plaintiff. (SMF ¶¶ 49 – 53; Declaration of Hanor, pgs. 7 – 9).

On January 7, 2011, Leonardo Gianella filed application No. 85212437 for "The Vantone Group" trademark for use in conducting "financial and investment services, namely management and brokerage in the fields of stocks, bonds, options, commodities, futures and other securities, and the investment of funds of others." (SMF ¶¶ 31 – 36) The USPTO issued a service mark covering these services in case registration no. 42388285 on November 6, 2012.  The application was filed as an "intent to use" application under Section 1(B) of the Trademark Act of 1946, 15 U.S.C. § 1051.  (Id.)  Gianella submitted that his first use of the mark was his registration of a website domain name on April 13, 2006 and the first date of use in commerce as April 18, 2007, which is the date Gianella formed TVG. He later submitted a website specimen for "The

Vantone Group" trade name which promoted financial services described in his Class 36 registration.  (SMF ¶ 48)

However, when this trademark application and the statement of first use in commerce was filed, neither Leonardo Gianella nor TVG were licensed to provide the securities products or services described in his Class 36 application. (SMF ¶ 34.)  In his deposition, Gianella conceded that TVG is not, and never was, licensed to provide financial and investment services or sell securities as described in his Class 36 registration. (Id.)  He obtained case registration 4238285 (Class 36) to prevent the movant defendants from expanding into (International Class 36) financial and investment services. (SMF ¶ 35.)

After registration of the trade name "Vantone" as a mark, TVG has maintained its registration only for purposes of this lawsuit. (SMF ¶ 62.) Since 2005, the movant defendants and their affiliated Chinese Vantone group have spent millions of dollars in developing their widely-publicized "China Center" to be located at the iconic One World Trade Center which was still under construction. (SMF ¶ 5.) It was during the same time that movant defendants and their affiliates publicized the China Center, that Leonardo Gianella and TVG registered service marks for the "Vantone" trade name; knowing even then that the Vantone trade name and unregistered mark were already in wide use in the United States by the movant defendants and the Chinese Vantone group. (SMF ¶¶ 14-17.)

 In its seven years of alleged operation, TVG completed, at most, only two real estate transactions – both of which were before its March 3, 2010 registration of the "Vantone" trademark. (SMF ¶ 53.)  Gianella also embarked on a scurrilous letter and e-mail writing campaign to newspapers in the United States and China, members of the U.S. Congress, and numerous federal agencies, including the Department of Justice, Securities and Exchange

Commission and the Federal Bureau of Investigation; all in in hope and with the intent of interrupting the movant defendants' business operations and causing them embarrassment. (SMF ¶ 57.)  Furthermore, Gianella and TVG sought to interfere with and prevent Feng Lun, the Chairman of the Chinese Vantone group and the movant defendants, from obtaining a visa to travel to the United States. (Id.)

Thus, having laid the groundwork for his extortive scheme, Gianella then wrote to the movant defendants and their affiliates and let it be known he would cease interfering with, and defaming, their business if they acceded to his demand for payment of $20 million. (SMF ¶¶ 58-59.)

<u>LEGAL ARGUMENT</u>

FRCP Rule 56 provides that summary judgment shall be granted upon a showing that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56;   See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986). As set forth in movant defendants' Statement of Uncontroverted Material Facts and below, there are numerous indisputable facts in this matter upon which movant defendants are entitled to summary judgment, or in the alternative, partial summary judgment.

I.   THE VANTONE DEFENDANTS ARE BOTH PRIOR USERS OF THE "VANTONE" TRADE NAME AND SENIOR USERS AND COMMON LAW OWNERS OF THE "VANTONE" MARK.

A "trade name" (or "commercial name") as defined by the Lanham Act, is "any name used by a person to identify his or her business or vocation." 15 USC § 1127.  The United States Supreme Court has noted:

> Whether the name of a corporation is to be regarded as a trade-mark, a trade name, or both, is not entirely clear under the decisions. To some extent the two terms overlap, but there is a difference more or less definitely recognized, which is, that, generally speaking, the former is applicable to the vendible commodity to which

> it is affixed, the latter to a business and its good will.  A corporate name seems to
> fall more appropriately into the latter class. But the precise difference is not often
> material, since the law affords protection against its appropriation in either view
> upon the same fundamental principles.

American Steel Foundries v. Robertson, 269 U.S. 372, 380 (1926).  Trade name use is an "analogous use" to that of a trademark or service mark, and is established by mere "open and public use of such nature and extent as to create, in the mind of the relevant purchasing public, an association of the designation with the goods and services of the party claiming priority rights in the designation."  Diarama Trading Co. v. J. Walter Thompson U.S.A., Inc., 2005 U.S. Dist. LEXIS 19496 at *22 (S.D.N.Y. Sept. 6, 2005) (citations omitted).

"Common law trademark rights develop when goods bearing the mark are placed in the market and followed by continuous commercial utilization."  Cullman Ventures, Inc. v. Columbian Art Works, Inc., 717 F. Supp. 96, 113 (S.D.N.Y. 1989); See also, Buti v. Impressa Perosa S.R.L., 139 F.3d 98 (2d Cir. N.Y. 1998); Mori Lee, LLC v. Sears Holdings Corp., 2014 U.S. Dist. LEXIS 133820 (S.D.N.Y. Sept. 8, 2014); Marshak v. Schaffner, 2012 U.S. Dist. LEXIS 66536 (S.D.N.Y. 2012).  Common law trademark rights confer ownership of the mark. See, Patrizzi v. Bourne in Time, Inc., 2013 U.S. Dist. LEXIS 110355 (S.D.N.Y. 2013); Momentum Luggage & Leisure Bags v. Jansport, Inc., 2001 U.S. Dist. LEXIS 10253 (S.D.N.Y. July 23, 2001).[4]

Movant defendants and their affiliates have been using the trade name "Vantone" within the United States since 1996 and well before the USPTO grant of Plaintiff's registration no.

---

[4] Pursuant the trademark doctrine of "tacking," rights to a mark are retained even if the mark is varied or altered, as long as the new and old forms of the mark create the same, continuing commercial impression. See, Phillips-Van Heusen Corp. v. Calvin Clothing Co., 444 F. Supp. 2d 250 (S.D.N.Y. 2006); Cullman Ventures, Inc. v. Columbian Art Works, Inc., 717 F. Supp. 96 (S.D.N.Y. 1989).  The distinctive "Vantone" name, used in connection with separate but related companies in the United States, creates the same, continuing impression.

3856724 for real estate brokerage services.  The movant defendants and their affiliates were also using "Vantone" as trade name in the City, County and State of New York. The movant defendants and their affiliates' use of "Vantone" as a trade-name was widely publicized in print and web-based publications, and through an English-language website "www.Vantone.com". Even when Gianella registered the "www.VantoneGroup.com" domain name, the domain name "www.Vantone.com" had been in existence since at least 2002 and actively used by the movant defendants and their affiliates. The movant defendants are therefore prior users of the "Vantone" trade name.  Moreover, their interstate commercial use and ownership of the "Vantone" mark is senior to any use by TVG.

     II.    THE PLAINTIFF'S FEDERAL AND NEW YORK STATE MARK REGISTRATIONS SHOULD BE CANCELLED, AND FEDERAL TRADEMARK APPLICATION DENIED.

     A.    The Plaintiff's Federal Mark Application for Real Estate Was Void *Ab Initio* and Non-Correctable, and the USPTO Registration No. 3,856,724 Should Therefore be Cancelled.

An application based upon use in commerce under 15 U.S.C. §1051(a) must be filed by the party who owns the mark on the application filing date. If the applicant does not own the mark on the application filing date, the application is void *ab initio*.  When an application is filed in the name of the wrong party, this defect cannot be cured by amendment or assignment. See, Trademark Manual of Examining Procedure (Fifth Edition), "Application (is) Void if Wrong Party Identified as the Applicant"[5], § 1201.02(b) (citing, 37 C.F.R. §2.71(d)); Huang v. Tzu Wei Chen Food Co. Ltd., 849 F.2d 1458 (Fed. Cir. 1988); Great Seats, Ltd. v. Great Seats, Inc.

---

[5] The Fifth Edition of the Trademark Manual of Examining Procedure is from October 2007, and was effective on the date of Mr. Gianella's March 2010 application.  The most recent edition is from October 2014, and notably, the cited provisions have not changed although additional supporting authority has been added.  All editions are available at: http://www.uspto.gov/trademark/guides-and-manuals/trademark-manual-examining-procedure-april-2014 .

("Great Seats") 84 USPQ2d 1244, Canc. No. 92032524 (TTAB June 14, 2007).  The Trademark

Manual of Examining Procedure further explains:

> Non-Correctable Errors. The following are examples of non-correctable errors in identifying the applicant:
>
> (1) President of Corporation Files as Individual. If the president of a corporation is identified as the owner of the mark when in fact the corporation owns the mark, and there is no inconsistency in the original application between the owner name and the entity type (such as a reference to a corporation in the entity section of the application), the application is void as filed because the applicant is not the owner of the mark.
> …
> (4) Sister Corporation. If an application is filed in the name of corporation A and a sister corporation (corporation B) owns the mark, the application is void as filed, because the applicant is not the owner of the mark. Great Seats, 84 USPQ2d at 1244 (holding §1(a) application void where the sole use and advertising of the mark was made by a sister corporation who shared the same president, controlling shareholder, and premises as the applicant).

Trademark Manual of Examining Procedure (Fifth Edition), "Correcting Error in How the

Applicant is Identified", § 1201.02(c) (emphasis added).

The original application for registration of "The Vantone Group" for real estate

brokerage listed "Leonardo Gianella" as the owner of the mark.  The "Entity" is described as a

"limited liability company."   Gianella admitted in his deposition that Leonardo Gianella LLC, a

New York limited liability company owned by Gianella, "was not involved in anything". Equally,

if in this application Gianella was identifying himself, individually, as the owner of the mark,

then this application was also void as filed, void *ab initio,* and non-correctable pursuant to 15

U.S.C. §1051. Since the "The Vantone Group" service mark application for real estate brokerage

submitted by Leonardo Gianella was void *ab initio*, his registration was invalid and should be

cancelled as a matter of law.  See also. Declaration of Professor Charles W. Hanor, pg. 20–23

(analyzing invalidity and non-correctability of Gianella's initial application to register the "Vantone" mark for real estate brokerage services).[6]

> B. All of the Plaintiff's Trademark Registrations Should Be Cancelled and Its Application Denied Based upon Prior Use by Defendants of the "Vantone" Trade Name and Mark.

It is well settled that a Federal Court has the power to cancel federal trademark registrations. 15 U.S.C. § 1119. "If one of the defenses [to registration] is established, registration constitutes only prima facie and not conclusive evidence of the owner's right to exclusive use of the mark." Haggar Int'l Corp. v. United Co. for Food Industry Corp., 906 F.Supp.2d 96, 106 (E.D.N.Y. 2012) (emphasis added) (citing, Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 199 n. 6 (1985). Such a defense is present in this case. See, e.g., Sterling Drug v. Bayer AG, 14 F.3d 733, 743 (2d Cir. 1994) (holding that a prior or senior user of an unregistered mark can obtain cancellation of a junior user's USPTO registration of a mark); Ford Motor Co. v. Ford, 59 C.C.P.A. 1124, 462 F.2d 1405 (C.C.P.A. 1972); Southern Enterprises, Inc. v. Burger King of Florida, Inc., 57 C.C.P.A. 826, 419 F.2d 460 (C.C.P.A. 1970).

A senior user of a mark, even if it is not registered with the USPTO is nevertheless entitled to cancellation of a junior user's USPTO mark registration. "[T]rademark ownership rights go to the 'first-to-use, not [the] first-to-register.'" Haggar Int'l Corp., 906 F. Supp. 2d at 105 (citations omitted). "It is axiomatic in trademark law that the standard test of ownership is priority of use. To acquire ownership of a trademark it is not enough to have . . . registered it first." Sengoku Works v. RMC Int'l, 96 F.3d 1217, 1219 (9th Cir. 1996). While registration of a mark is prima facie evidence of ownership, "the non-registrant can rebut this presumption by showing that the registrant had not established valid ownership rights in the mark at the time of

---

[6] / Prof Hanor's opinion in relevant parts is offered pursuant to FRE Rule 702.

registration – in other words, if the non-registrant can show that he used the mark in commerce first, then the registration may be invalidated." Sengoku Works, 96 F.3d at 1219-20. "[S]ections 14 and 37 of the [Lanham] Act, 15 U.S.C. §§ 1064 and 1119, authorize a plaintiff to seek to cancel a mark registration even when the plaintiff lacks a registered mark but the defendant possesses one." Mears v. Montgomery, 2004 U.S. Dist. LEXIS 7836 at *47 (S.D.N.Y. May 5, 2004).

Moreover, proof of prior commercial use of a mark is not necessary to cancel a registered mark – senior use of a trade name alone is sufficient. The Lanham Act provides that no mark may be registered if it "[c]onsists of or comprises a mark which so resembles a … trade name previously used in the United States by another and not abandoned . . . ." 15 USC § 1052(d) (emphasis added). "[A] trade name lacking any independent trademark or service mark significance may bar registration of a trademark or service mark." Diarama Trading Co. v. J. Walter Thompson U.S.A., Inc., 2005 U.S. Dist. LEXIS 19496 at *22-23 (S.D.N.Y. 2005) (citing, Martahus v. Video Duplication Servs., Inc., 3 F.3d 417, 421 (Fed. Cir. 1993)).

As established by the facts and supporting law in this case, the movant defendants and their affiliates are the prior "Vantone" trade name users, the senior common law owners, and the senior commercial users of the "Vantone" mark. Therefore, and notwithstanding the plaintiff's USPTO and state registrations of "Vantone Group," based upon the uncontroverted material fact that the movants are senior trade name users of the Vantone name, they are entitled to both the cancellation of those marks and the denial of plaintiff's USPTO application. See also, Declaration of Professor Charles W. Hanor, pg. 4-12; chart on pg. 4–7 (analyzing the defendants' senior user status of "Vantone" both as a trade name and a mark).

       C.      Both Plaintiff's Mark Registrations Should Be Cancelled and Its Application Denied Based upon Fraudulent Procurement.

The Lanham Act provides for cancellation at any time of registration of a trademark "obtained fraudulently." 15 U.S.C.A. §1064(3); See, Quality Serv. Group v. LJMJR Corp., 831 F. Supp. 2d 705 (S.D.N.Y. 2011).  "Fraud in procuring a trademark registration occurs when an applicant for registration of a mark knowingly makes false, material representations of fact in connection with an application to register." Burkina Wear, Inc. v. Campagnolo, S.R.L., 2011 U.S. Dist. LEXIS 1556 at *8-9 (S.D.N.Y. Jan. 7, 2011); See also, Melodrama Publ'g, LLC v. Santiago, 2013 U.S. Dist. LEXIS 56988 (S.D.N.Y. Apr. 11, 2013); Mears v. Montgomery, 2004 U.S. Dist. LEXIS 7836 (S.D.N.Y. May 5, 2004).  The Second Circuit has held:

> In determining a defendant's intent, "actual or constructive knowledge" of the prior user's mark or dress may indicate bad faith. Where such prior knowledge is accompanied by similarities so strong that it seems plain that deliberate copying has occurred, we have upheld findings of bad faith.

Paddington Corp. v. Attiki Importers & Distribs., Inc., ("Paddington Corp.") 996 F.2d 577, 587 (2d Cir. 1993) (citations omitted).  Likewise, the New York General Business Law provides that a New York State mark registration shall be cancelled if "the registration was obtained fraudulently." N.Y. Gen. Bus. § 360-h(c)(4).[7]

---

[7] Fraudulent registration is also grounds for the recovery of damages:

> Any person who shall for himself or herself, or on behalf of any other person, procure the filing or registration of any mark in the office of the secretary under the provisions hereof, by knowingly making any false or fraudulent representation or declaration, orally or in writing, or by any other fraudulent means, shall be liable to pay all damages sustained in consequence of such filing or registration, to be recovered by or on behalf of the party injured thereby in any court of competent jurisdiction.

N.Y. Gen. Bus. § 360-j.

While Gianella may claim his registrations of the "Vantone Group" domain name and service marks were innocent, in an effort to contrive a factual issue to oppose this motion, there is no genuine[8] issue of material fact that he acted in bad faith and fraudulently within the meaning of <u>Paddington Corp</u>.  Indeed, on April 13, 2006, the term "Vantone Group" appeared no less than five times in a New York Times article (Exhibit "G") and that very evening, at 8:17 p.m., Gianella registered the "www.VantoneGroup.com" domain name (Exhibit "H."). Gianella's company, TVG, is not and has never been a "group" of companies, and undoubtedly, Gianella learned on April 13, 2006, before registering the "www.VantoneGroup.com" domain name, that the English-language website "www.Vantone.com" was already registered in 1996 (Exhibit "D") by the movant defendants' affiliates.  Moreover, as set forth in Exhibit "F," at least 22 news articles were available on the Internet concerning "Vantone" and "Vantone Group" and their interest in developing the China Center at the World Trade Center complex by April 13, 2006.

TVG's registrations of the "Vantone" mark were fraudulently procured due to the fact that on each and every USPTO application Gianella submitted, he falsely declared under penalty of perjury that he:

> believes the applicant to be the owner of the trademark/service mark sought to be registered [and] . . . no other . . . firm [or] corporation . . . has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely . . . .

Exhibits "M", "N", "O". In reality, the facts demonstrate Gianella and TVG knew full-well that the movant defendants and their affiliates had been commercially using, and had owned the

---

[8] "Summary judgment is called for where 'it clearly appears that the issues are not genuine, but feigned.'" <u>United Nat'l Ins. Co. v. Tunnel, Inc.</u>, 988 F.2d 351, 354 (2d Cir. 1993) (citing, <u>Glick & Dolleck, Inc.</u> v. Tri-Pac Export Corp., 22 N.Y.2d 439, 441 (1968)).

Vantone mark for a number of years prior to his filings with the USPTO.  When the Plaintiff filed his trademark application, several of the movant defendants were already in existence and their formation documents were a matter of public record.

Gianella also misrepresented that the marks were first used anywhere "at least as early as 4/13/2006" and in commerce "at least as early as 4/18/2007" on his real estate brokerage application (Exhibit "M").  The owner, Gianella, knew that the Plaintiff was not licensed as a real estate broker until January 8, 2008 and knew that representing it was licensed to sell services as a broker without being licensed would be prohibited.   Therefore, statements of first use of "The Vantone Group" mark for real estate brokerage services in commerce on April, 18, 2007 were apparent and material misrepresentations of the true facts.

As an applicant, Gianella stated that "a search for any business nationwide even containing the name Vantone only pulled up my listing," however, he only included an Internet screenshot of a "www.Yellowpages.com" search within New York.   (Exhibit M at pg. 38.) Gianella and TVG did not include any proof of a national search, or search from an Internet search engine such as Google or Yahoo, or a search of any national business directory.  If plaintiff had conducted any such searches, it would have disclosed, from publicly available data, that the movant defendants were existing and senior users of the "Vantone" trade name. See also, Declaration of Professor Charles W. Hanor, pg. 12-13 (concerning Gianella's fraudulent registration of the "Vantone" name); pg. 22-23 (regarding how the USPTO was unable to detect Gianella's fraud because the trademark examiner spent less than three minutes searching for other marks during the application for registration of "The Vantone Group" service mark for real estate brokerage services).

16

       D.     All of the Plaintiff's Mark Registrations Should Be Cancelled and
             Its Application Denied Based upon Abandonment and Insufficient
             Sales and Use of the Vantone Trade Mark

A trademark must be cancelled for insufficient use.  See, Chandon Champagne Corp. v. San Marino Wine Corp., 335 F.2d 531, 534 (2d Cir. 1964) (sale of a few hundred cases of Dom Perignon held insufficient to reserve unregistered marks for all time against others); D.M. & Antique Import Corp. v. Royal Saxe Corp., 311 F. Supp. 1261, 1270 (S.D.N.Y 1969) (transitory and minimal use by the defendant held to be insufficient use to give defendant priority over the plaintiff's long, continued and notorious use); La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc., 495 F.2d 1265, 1272 (2d Cir. N.Y. 1974) ("we cannot agree that such a meager trickle of business constituted the kind of bona fide use intended to afford a basis for trademark protection").

Significantly, while advertisement of services is a factor to be considered in "use in commerce," sufficient actual sales of the services are necessary to satisfy the Lanham Act definition of "use in commerce" which requires "…and the services are rendered in commerce." 15 USC § 1127 (emphasis added).  Accordingly, the Second Circuit has held:

> the mere advertising or promotion of a mark in the United States is insufficient to
> constitute "use" of the mark "in commerce," within the meaning of the Lanham
> Act, where that advertising or promotion is unaccompanied by any actual
> rendering in the United States or in commerce which may lawfully be regulated
> by Congress 15 U.S.C. § 1127, of the services…

Buti v. Impressa Perosa S.R.L., 139 F.3d 98, 105 (2d Cir. 1998) (emphasis added) (citing, United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90 (1918)).  Indeed, "[m]ere advertising and promotion of a mark in this country are not enough to constitute 'use' of the mark 'in commerce.'" Morningside Group, Ltd. v. Morningside Capital Group, L.L.C., 182 F.3d 133, 138 (2d Cir. 1999) (emphasis added); See also, Gameologist Group, LLC v. Sci. Games Int'l, Inc.,

17

508 Fed. Appx. 31, 33 (2d Cir. 2013) ("Gameologist's other uses of the mark—its promotional efforts and its sale of approximately 250 board games over several years—similarly cannot satisfy the requirement of use in commerce").

Such is the case here. Particularly, since the plaintiff entity was formed and became a licensed real estate brokerage on January 8, 2008, it has performed only two revenue-generating services:

> (1)   A $1,500 commission for brokerage of an apartment rental on July 24, 2008 to Juan Cruz at 857 Ninth Avenue in Manhattan, the building in which Mr. Gianella was living at that time (Exhibit "T"); and
>
> (2)   A $21,000 commission on November 4, 2009 for sale of an apartment at 35 East 30th Street in Manhattan (Exhibit "U").

Since Mr. Gianella's first $1,500 commission was for the brokerage of an apartment within his own building it does not constitute "use" of the "Vantone" name pursuant to the Lanham Act: "A user's early sales to friends and relatives do not 'actually put the product on the market,' so that trademark rights will attach." Jaffe v. Simon & Schuster, Inc., 1987 U.S. Dist. LEXIS 14902 (S.D.N.Y. Feb. 3, 1987) (citing, La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc., 495 F.2d 1265 (2d Cir. 1974)).  Therefore, since the first purported "use" of the real estate brokerage mark does not count, a fortiori, in the over-seven years that it has been in operation, the  TVG has performed only one real estate brokerage service which constitutes "use" of the Vantone name, and that service was performed over five year ago.[9]  This is precisely the type of insufficient use of a mark which warrants its cancellation as a matter of law.

---

[9] Not only did Gianella and the plaintiff never use the "Vantone" mark for financial services, but they could not legally use it for financial services because Mr. Gianella did not have an active license to do so.  In fact, he only registered the mark for financial services to prevent the defendants from doing so.

The plaintiff's "use" of the mark for financial services would have been unlawful and thus invalid because during the plaintiff's existence, neither Gianella nor the plaintiff were licensed to sell such financial or investment (Internantional Class 36) services. "Unlawful use will be found where: (1) the issue of compliance has previously been determined (with a finding of noncompliance) by a court or government agency having competent jurisdiction under the statute involved, or (2) where there has been a per se violation of a statute regulating the sale of a party's goods." Dessert Beauty, Inc. v. Fox, 617 F. Supp. 2d 185 (S.D.N.Y. 2007). Gianella *admitted* that he did not possess the requisite license to sell financial services during the plaintiff's existence and although planned, the plaintiff was never licensed to provide Class 36 services. Use of a mark in violation of securities regulation constitutes unlawful and invalid use. See, Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc., 192 F.3d 337, 342 (2d Cir. 1999)*;* See also, Declaration of Professor Charles W. Hanor, pgs. 7-10. Even if Gianella's registrations of the "Vantone" mark were valid, which they were not, plaintiff's use of the mark was insufficient to maintain its registration and they are subject to cancellation based upon insufficient use alone. See Id., pgs. 16-17. No valid use registration is permissible if such use would be unlawful. Id.

> E.    All of the Plaintiff's Mark Registrations Should Be Cancelled and
>        Its Application Denied Based upon Sham and Token Use, and
>        Lack of Bona Fide Use.

For registrations of trademarks, the Lanham Act requires that the marks be "used in commerce," 15 U.S.C.A. § 1051, and under the Act, "use in commerce" requires "the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C.A. § 1127 (emphasis added). "A bona fide 'use in commerce' does not include a token use whose only purpose is to support an application for trademark registration." Chere Amie,

Inc. v. Windstar Apparel, Corp., 2002 U.S. Dist. LEXIS 4950 (S.D.N.Y. Mar. 25, 2002) (citing Chance v. Pac-Tel Teletrac Inc., 242 F.3d 1151 (9th Cir. 2001)).  Significantly, the Second Circuit has noted that "a 'sham use' of a trademark . . . did not suffice to establish or preserve rights to that trademark." Del-Rain Corp. v. Pelonis USA, Ltd., 29 Fed. Appx. 35, 38 (2d Cir. 2002).  Indeed, "[i]t is … something of an oxymoron to contend that a bad-faith use should be deemed a 'bona fide use.'" Id.; See also, I.H.T. Corp. v. News World Communs., Inc., 1984 U.S. Dist. LEXIS 15260 (S.D.N.Y. July 3, 1984) ("use . . . must constitute more than 'sham transactions' designed exclusively to satisfy the trademark laws").

In ABC Rug & Carpet Cleaning Serv., Inc. v. ABC Rug Cleaners, Inc., this Court explained:

> Bad faith is present where "the defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between his and the senior user's product," and can be demonstrated through "a showing of actual or constructive knowledge of the prior user's mark." "[W]here the infringing marks are identical, defendant has the burden of persuading the court that there is a credible innocent explanation".

ABC Rug & Carpet Cleaning Serv., Inc. v. ABC Rug Cleaners, Inc., 2010 U.S. Dist. LEXIS 145896 at *51 (S.D.N.Y. 2010) (citing, Lang v. Ret. Living Publ'g Co., 949 F.2d 576 (2d Cir. 1991); See also, Tri-Star Pictures, Inc. v. Unger, 14 F. Supp. 2d 339 (S.D.N.Y. 1998); Gianni Versace, S.p.A. v. Versace, 2003 U.S. Dist. LEXIS 14858 (S.D.N.Y. 2003); Paddington Corp. v. Attiki Imps. & Distribs., Inc., 996 F.2d 577 (2d Cir. 1993).  Obviously, "bad faith 'may be inferred from the junior user's actual or constructive knowledge of the senior user's mark." Lopez v. Gap, Inc., 883 F. Supp. 2d 400, 423 (S.D.N.Y. 2012), citing De Beers LV Trademark Ltd. v. DeBeers Diamond Syndicate Inc., 440 F. Supp. 2d 249 (S.D.N.Y. 2006).  As for trademarks and service marks, the New York General Business Law requires a bona fide use:

"[t]he term 'use' means the bona fide use of a mark in the ordinary course of trade," N.Y. Gen. Bus. § 360(h).

Plaintiff is the junior user of the "Vantone" mark and the USPTO registration was made with, at the least, constructive knowledge of the use of the "Vantone" name by movant defendants at the time of the mark's registrations.  Even after registration, there has been only token, sham and bad faith use of the mark for purposes of this lawsuit.  With respect to the International Class 36 mark, there has been no use at all by the Plaintiff with respect to the sale of securities or any financial services.  Cancellation is appropriate for these reasons alone.  See also, Declaration of Professor Charles W. Hanor, pgs. 17-19.

III.   THE PLAINTIFF'S SECOND AMENDED COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY.

As set forth above, the movant defendants and their affiliates are prior users of the "Vantone" trade name and senior users and common law owners of the "Vantone" mark.  On that basis, among others, the defendants are entitled to cancellation of the plaintiff's "Vantone"-related registrations.  As set forth in the plaintiff's Second Amended Complaint (Dkt. 123) the plaintiff brings claims against the defendants for (1) federal trademark infringement, (2) false designation of origin, (3) cybersquatting, (4) cancellation of federal registrations, (5) state trademark infringement, (6) injury to business reputation and dilution under state law, (7) deceptive business acts or practices, (8) false advertising, (9) use of name with intent to deceive, (10) common law passing off and unfair competition, (11) unjust enrichment, and (12) for declaratory relief (that "the acts of Defendants constitutes infringement", Dkt. 123, ¶125).  All of

these claims are premised upon ownership of the "Vantone" mark,[10] and it is Movant Defendants and not the Plaintiff which own the "Vantone" trade name and had an entitlement to the Vantone mark.  Accordingly, summary judgment dismissing all of the plaintiff's claims and its Second Amended Complaint in its entirety is warranted.

Moreover, the Plaintiff cannot present any evidence whatsoever of the mark's likelihood of confusion. Statement of Material Facts ¶¶ 56a-56c; See, Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492 (2d Cir. 1961). Because it cannot meet the elements of its claims, is not entitled to injunctive relief, has no damages such as lost commissions and is claiming only "diverted time and energy" from participation in the lawsuit, which is not an appropriate basis for damages, the Court should grant summary judgment on those claims for lack of proof of confusion.

<u>CONCLUSION</u>

For the foregoing reasons, it is respectfully submitted that an Order be entered in favor of the Movants' Motion for Summary Judgment, and granting such other relief as the Court deems just and appropriate.


Dated:  New York, New York
        March 16, 2015

---

[10] This includes plaintiff's cybersquatting action.  15 U.S.C. § 1125(d). The Anti-Cybersquatting Consumer Protection Act permits an action only by the "owner of a mark."   15 U.S.C. § 1125(d)(1)(A).

DACHENG LAW OFFICES LLP

By:  /s/ Kerry J. Kaltenbach
      Kerry J. Kaltenbach (KK 8045)
      e-mail: kerry.kaltenbach@dachenglaw.com
      Leodis C. Matthews (*admitted pro hac vice*)
      e-mail: leodis.matthews@dachenglaw.com
      Two Wall Street, 21st Floor
      New York, NY  10005
      Tel: (212) 380-8388/Fax: (212) 810-1995
      *Attorneys for Vantone Holdings Co., Ltd., China Center New York LLC, Vantone Property NY LLC, Vantone Residences LLC, Vamerica Fund LLC, Vantone US LLC n/k/a Vamerica LLC, Vantone US Inc., Beijing Vantone Real Estate Co., Ltd. and Feng Lun.*