Richard M. Wirtz (CA SBN 137812)(pro hac vice)
email:  rwirtz@wirtzlaw.com
Erin K. Barns (SBN 286865)(pro hac vice)
email:  ebarns@wirtzlaw.com
**W I R T Z   L A W  A P C**
4365 Executive Drive, Suite 1460
San Diego, California 92121
voice:  858.259.5009

Thomas D. Foster (CA SBN 213414)(pro hac vice)
**TD Foster - Intellectual Property Law**
11622 El Camino Real, Suite 100
San Diego, CA 92130
voice: 858.922.2170
email:  foster@tdfoster.com

Attorneys for Plaintiff THE VANTONE GROUP
LIMITED LIABILITY COMPANY and Counter-Claim Defendants

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE VANTONE GROUP LIMITED LIABILITY COMPANY, a New York Limited Liability Company,<br><br>        Plaintiff,<br><br>v.<br><br>YANGPU NGT INDUSTRIAL CO., LTD, a China Corporation; et al.<br><br>        Defendants. | **Case Number: 13-CIV-7639 (LTS)(FM)**<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| And Related Counter-Claims | |

## TABLE OF CONTENTS

I.      INTRODUCTION ....................................................... 1

II.     BACKGROUND ....................................................... 1

    A.      PROCEDURAL HISTORY ........................................ 1

    B.      STATEMENT OF FACTS ........................................ 2

        1.      Plaintiff's Trademarks .................................. 2

        2.      USPTO Proceedings Between Plaintiff and
                Defendant Yangpu ...................................... 5

        3.      Plaintiff's Attempts to Police its
                Marks and Defendants' Responses,
                Claiming They Made No Use in
                Commerce in the United States of the
                Marks .................................................. 7

III.    STANDARD FOR SUMMARY JUDGMENT ................................ 7

IV.     DISCUSSION ......................................................... 8

    A.      The Vantone Defendants Are Not Prior Users the Vantone Mark
            in the United States Nor Have They Made Adequate "Analogous"
            Use of Vantone as a Trade Name Sufficient to Establish Priority .......... 8

        1.      Defendants Have Not Made
                Commercial Use of the Trademark
                Sufficient to Establish Trademark
                Rights. ................................................ 9

            a.      Defendants Have Repeatedly Admitted That
                    They Have Not Used the Vantone Mark
                    in Commerce in the United States ................. 9

            b.      Vantone USA and Vantone Corp. Have Not
                    Used the Vantone Trademark in Commerce
                    Nor Would Their Use (If Any) Inure to
                    Defendants' Benefit ............................ 10

        2.      Defendants Have Not Proven Analogous Use Sufficient
                to Establish Priority .................................. 13

        3.      Plaintiff, on the Other Hand, Has Priority in the
                Vantone Group Trademark in the United States in
                Connection with Real Estate Services ................... 15

    B.      Plaintiff's Registrations and Applications Should Not Be
            Cancelled/Denied ..................................... 15

1. The Plaintiff's Federal Trademark Application for Real Estate Which Matured into U.s. Trademark Registration No. 3856724 Contained a Correctable Error in How the Applicant Was Identified and Thus Is Not *Void Ab Initio* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

2. Defendants Do Not Have Prior Use in the United States . . . . . 17

3. Plaintiff Did Not Fraudulently Procure the Trademarks . . . . 17

    a. Plaintiff Was under No Duty to Investigate or to Search out Other Users of the Applied-for Mark. . . 18

    b. Only actual knowledge of a prior user when signing the oath constitutes fraud . . . . . . . . . . . . . . . . . 18

    c. At the Time of Signing of the Trademark Application, Plaintiff Had No Actual Knowledge of Defendants and Made No Other Knowingly False Statements . . . . . . . . . . . . . . . . 20

4. Plaintiff Did Not Abandon His Marks and "Insufficient Sales" Is Not a Grounds for Cancellation of a Registered Mark Nor Denial of a Trademark Application . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

5. Plaintiff Did Not Make Sham or Token Use of the Trademarks; His Use Was Bona Fide and Sufficient . . . . . . . . . . . . . . . . . . . . . . . 23

    a. Defendants Are Using the Wrong Standard . . . . . . . . . 23

    b. Plaintiff's Adoption and Use of the Mark Was Not in Bad Faith . . . . . . . . . . . . . . . . . . . . . . . . . 24

    c. Even If Plaintiff Was Aware of Defendants Use of Vantone Abroad (Which it Was Not) this Would Not Amount to Bad Faith . . . . . . . . . . . . . 25

6. Plaintiff's Use Is Not Unlawful . . . . . . . . . . . . . . . . . . . . . . . . . 26

7. Plaintiff's Harm Is Not an Element of Trademark Infringement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

C. There Exists a Triable Issue of Fact Regarding Whether There Is a Likelihood of Confusion If Defendants Continue Their Use of the Vantone Mark in the United States . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

1. Strength of the Mark . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

2. Degree of Similarities Between the Two Marks . . . . . . . . . . . 29

---

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

          **a.**       **Defendants' Use of VANTONE: Similarity Between THE VANTONE GROUP and VANTONE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **29**

      **3.**    **Competitive Proximity of the Products** . . . . . . . . . . . . . . . . . . **30**

      **4.**    **Evidence of Actual Confusion** . . . . . . . . . . . . . . . . . . . . . . . . . . . **30**

      **5.**    **Likelihood That the Plaintiff Will Bridge the Gap by Selling the Product Being Sold by the Defendants** . . . **30**

      **6.**    **Defendants' Good Faith in Adopting the Mark** . . . . . . . . . . . . **31**

      **7.**    **Quality of the Defendants' Product** . . . . . . . . . . . . . . . . . . . . . . . **31**

      **8.**    **Sophistication of the Products** . . . . . . . . . . . . . . . . . . . . . . . . . . . **31**

**V.**     **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **32**

## TABLE OF AUTHORITIES

Cases:

*ABC Rug & Carpet Cleaning Serv., Inc. v. ABC Rug Cleaners, Inc. (*S.D.N.Y. Feb. 10, 2010)

    No. 08 CIV. 5737 RMB RLE, 2010 WL 10091076 . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

*Abercrombie & Fitch Co. v. Hunting World, Inc.* (2d Cir. 1976)

    537 F.2d 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Am. Int'l Grp., Inc. v. London Am. Int'l Corp.* (2d Cir. 1981)

    664 F.2d 348 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*American Security Bank v. American Security and Trust Co.*

    (CCPA 1978) 571 F.2d 564 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Arrow Fastener Co. v. Stanley Works* (2d Cir.1995)

    59 F.3d 384 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Burkina Wear, Inc. v. Campagnolo, S.R.L.* (S.D.N.Y. Jan. 7, 2011)

    No. 07 CIV 3610, 2011 WL 70563 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Cadbury Beverages, Inc. v. Cott Corp.* (2d Cir. 1996)

    73 F.3d 474 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Cullman Ventures, Inc. v. Columbian Art Works, Inc.* (S.D.N.Y. 1989)

    717 F. Supp. 96 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*De Beers LV Trademark Ltd. v. DeBeers Diamond Syndicate, Inc.* (S.D.N.Y. 2006)

    440 F. Supp. 2d 249 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

*EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*

    (2d Cir. 2000) 228 F.3d 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Estate of P.D. Beckwith, Inc. v. Comm'r of Patents* (1920) 252 U.S. 538 . . . . . . . . . . . . . . . . . . 30

*Estee Lauder Inc. v. The Gap, Inc.* (2d Cir.1997)

    108 F.3d 1503 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Evans Chemetics, Inc. v. Chemetics International Ltd.* (T.T.A.B. 1980)

    207 U.S.P.Q. 695 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Gameologist Grp., LLC v. Scientific Games Int'l, Inc.* (2d Cir. 2013)

---

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

508 F. App'x 31 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Genesee Brewing Co., Inc. v. Stroh Brewing Co.* (2d Cir. 1997)

124 F.3d 137 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Girard Polly-Pig, Inc. v. Polly-Pig by Knapp, Inc.* (TTAB 1983)

217 USPQ 1338 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Glick & Dolleck, Inc. v. Tri-Pac Exp. Corp.* (1968) 22 N.Y.2d 439 . . . . . . . . . . . . . . . . . . . . . . . 20

*Grupo Gigante SA De CV v. Dallo & Co., Inc.* (9th Cir. 2004)

391 F.3d 1088 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Hanover Star Milling Co. v. Metcalf* (1916)

240 U.S. 403 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12

*Heaton Enterprises of Nevada Inc. v. Lang,* (TTAB 1988)

7 USPQ2d 1842 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Herbko Intern., Inc. v. Kappa Books, Inc.* (Fed. Cir. 2002)

308 F.3d 1156 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Hiram Ricker and Sons v. Students Intern. Meditation Soc.*(1st Cir. 1974)

501 F.2d 550 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Dixie Restaurants, Inc.* (Fed.Cir.1997)

105 F.3d 1405 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*In re Sun Refining & Marketing Co.* (TTAB 1991)

23 USPQ2d 1072 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Intellimedia Sports Inc. v. Intellimedia Corp.* (TTAB 1997)

43 USPQ2d 1203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*ITC Ltd. v. Punchgini, Inc.*(2d Cir. 2007)

482 F.3d 135 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Jaffe v. Simon & Schuster Inc.* (S.D.N.Y. Jan. 16, 1987)

No. 86 CIV. 1577 (GLG), 1987 WL 124312 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

*Kangol Ltd. v. Kangaroos U.S.A., Inc.* (Fed.Cir.1992) 974 F.2d 161 . . . . . . . . . . . . . . . . . . . . . . 30

*Kemin Industries, Inc. v. Watkins Products, Inc. (*TTAB 1976)

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

192 USPQ 327 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.* (2d Cir. 1974)

495 F.2d 1265 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.* (2d Cir. 1999) 192 F.3d 337 . . . . . . . . . 26

*Liqwacon Corporation v. Browning-Ferris Industries, Inc.* (T.T.A.B. 1979)

203 U.S.P.Q. 305 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Lockheed Martin Corp. v. Network Solutions, Inc.* (C.D. Cal. Nov 17, 1997)

985 F.Supp. 949 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Maid to Order of Ohio Inc. v. Maid-to-Order Inc.* (TTAB 2006)

78 USPQ2d 1899 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Megarry Bros., Inc. v. U.S. for Use of Midwestern Elec. Const., Inc. (8th Cir.1968)

404 F.2d 479 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Neles–Jamesbury, Inc. v. Valve Dynamics* (S.D.Tex.1997)

974 F.Supp. 964 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Nora Beverages, Inc. v. Perrier Group of America, Inc.* (2d Cir.2001)

269 F.3d 114 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Optimal Pets, Inc. v. Nutri-Vet, LLC* (C.D. Cal. June 7, 2010)

No. EDCV-08-1795 MJG, 2010 WL 2305843 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Paddington Corp. v. Attiki Importers & Distributors, Inc.* (2d Cir. 1993)

996 F.2d 577 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Pennsylvania Fashion Factory, Inc. v. Fashion Factory, Inc.* (TTAB 1982)

215 USPQ 1133 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Person's Co., Ltd. v. Chistman* (1990)

900 F.2d 1565 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Physicians Formula Cosmetics Inc. v. W. Cabot Cosmetics, Inc.* (2d Cir. 1988)

857 F.2d 80 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Pizzeria Uno Corp. v. Temple* (4th Cir.1984)

747 F.2d 1522 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

---

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

*Polaroid Corp. v. Polarad Electronics Corp.* (2d Cir.1961)

    287 F.2d 492 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Project Release v. Prevost* (2d Cir. 1983)

    722 F.2d 960 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Rodriguez v. City of New York* (2d Cir. 1995)

    72 F.3d 1051 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Rosso & Mastracco, Inc. v. Giant Food Inc.* (Fed. Cir. 1983) 720 F.2d 1263 . . . . . . . . . . . . . . 18

*SCOA Industries Inc. v. Kennedy & Cohen, Inc.*(TTAB 1975)

    188 USPQ 411 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Selfway, Inc. v. Travelers Petroleum, Inc.* (C.C.P.A. 1978)

    579 F.2d 75 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Sengoku Works Ltd. v. RMC Intern., Ltd.* (9th Cir. 1996) 96 F.3d 1217 . . . . . . . . . . . . . . . . . . . . 9

*SMJ Grp., Inc. v. 417 Lafayette Rest. LLC* (S.D.N.Y. 2006)

    439 F. Supp. 2d 281 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Space Base Inc. v. Stadis Corp* (TTAB 1990)

    17 USPQ2d 1216 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Sports Auth., Inc. v. Prime Hospitality Corp* (2d Cir.1996)

    89 F.3d 955 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Streetwise Maps, Inc. v. VanDam, Inc.* (2d Cir.1998)

    159 F.3d 739 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Tana v. Dantanna's* (11th Cir. 2010)

    611 F.3d 767 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*TCPIP Holding Co. v. Haar Communications, Inc.* (2d Cir.2001) 244 F.3d 88 . . . . . . . . . . . . . . 29

*Thane Intern., Inc. v. Trek Bicycle Corp.* (9th Cir.2002)

    305 F.3d 894 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*U–Neek, Inc. v. Wal–Mart Stores, Inc.* (S.D.N.Y.2001)

    147 F.Supp.2d 158 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*United Nat. Ins. Co. v. Tunnel, Inc.* (2d Cir. 1993)

988 F.2d 351 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Rem* (2d Cir. 1994)

38 F.3d 634 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*U.S. v. Shotwell Mfg. Co.* (7th Cir. 1961) 287 F.2d 667 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Virgin Enterprises Ltd. v. Nawab (2d Cir. 2003) 335 F.3d 141 . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Woodstock's Enterprises Inc. (California) v. Woodstock's Enterprises Inc. (Oregon)*

(TTAB 1997) 43 USPQ2d 1440 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19


Statutes:

Fed. R. Civ. P. 56(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

15 U.S.C.A. §1116 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

15 U.S.C.A. §1117 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

15 U.S.C. §1115(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

15 U.S.C.A. §1127 S . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11


Secondary Sources:

2 McCarthy on Trademarks and Unfair Competition §16:1 (4th ed.) . . . . . . . . . . . . . . . . . . . 13, 15

Trademark Manual of Examining Procedure (Fifth Edition) Section 1201.02( c) . . . . . . . . . 15, 17

WIRTZ LAW APC
TRIAL ATTORNEYS
Business | Real Estate | Employment | Intellectual Property
4365 Executive Drive, Suite 1460
San Diego, CA 92121
858.259.5009
1801 Century Park East, 23rd Floor
Los Angeles, CA 90067
310.226.5151

## I.  INTRODUCTION

At his 2012 inauguration, President Obama prolaimed the ubiquitous American dream: "if you worked hard, you could do well enough to raise a family, own a home, send your kids to college, and put a little away for retirement."  With thoughts of becoming another American success story, Mr. Gianella, a New York businessman, started his own real estate brokerage company, The Vantone Group, LLC.  As he worked hard and struggled to get traction for his new business, not only did he encounter the Great Recession, but he was confronted by a Chinese conglomeration, using a cacophony of indistinguishable and similarly named entities, shared employees, financing, locations, and business models to quell Mr. Gianella's opportunity to achieve his personal American dream. This foreign aggregation of companies wanted Mr. Gianella's federally registered trademark by any means possible, including lying to the USPTO about the meaning of Chinese characters it was registering, manipulating a picture of a third party's web page submitted to the USPTO in order to claim it as its own, and accusing Mr. Gianella and The Vantone Group LLC of conduct (that Defendants was so readily familiar with themselves) that could invalidate its trademark.  This summary judgment is but another specious attempt by Defendants after its compeletly meritless motion for a preliminary injunction to squelch the hard work and good will Mr. Gianella has worked so earnestly to establish.

## II.  BACKGROUND

### A.  PROCEDURAL HISTORY

Plaintiff The Vantone Group LLC's Second Amended Complaint (SAC) was accepted for filing on September 9, 2014, alleging twelve claims related to Defendants' infringement of Plaintiff's federally registered and presumptively valid THE VANTONE GROUP trademarks. (Dkt 121 and 122.)  Defendants China Center New York LLC, Vantone Property NY LLC, Vantone Residences LLC, Vamerica Fund LLC, Vantone US LLC n/k/a Vamerica LLC and Vantone US Inc. filed their answer to the SAC on September 23, 2014, along with Counter-Claims against Plaintiff and its principal, Leonardo Gianella.  (Dkt. 124.)  Defendants Vantone Holdings Co., Ltd., Beijing Vantone Real Estate Co., Ltd. and Feng Lun filed a motion to dismiss the SAC the same day. (Dkt. 125.)  That motion is fully briefed and awaiting the decision of this Court.

---

WIRTZ LAW APC

TRIAL ATTORNEYS

Business | Real Estate | Employment | Intellectual Property

4365 Executive Drive, Suite 1460    1801 Century Park East, 23rd Floor
San Diego, CA 92121                 Los Angeles, CA 90067
858.259.5009                        310.226.5151

On November 24, 2014, Defendants[1] filed a motion for preliminary injunction. (Dkt. 144.) This motion asserted arguments nearly identical to many of the arguments made in the present motion for summary judgment regarding priority. Plaintiff timely opposed Defendants' motion and on March 11, 2015, this Court denied Defendants' motion for preliminary injunction, calling it "entirely meritless" and finding that Defendants "Fail[ed] to provide any evidence in support of their irreparable harm claim." (Dkt. 171, pg 2.) As a result of Defendants' complete failure to satisfy the irreparable harm requirement, this Court had no need to and did not address the merits of Defendants' arguments regarding priority and cancellation. On March 16, 2015, Defendants filed this motion for summary judgment, re-arguing those issues. Now that this Court has occasion to consider the parties' arguments on both sides of these issues, it will find that this motion too is entirely meritless.

**B.      STATEMENT OF FACTS**

**1.      Plaintiff's Trademarks**

Plaintiff provides real estate brokerage services in New York City and is the record owner of the federally registered trademark THE VANTONE GROUP for real estate brokerage services (Reg. No. 3,856,724)("the '724 registration") and for financial and investment services (Reg. No. 4,238,285)("the '285 Registration"). (Decl. Gianella ¶¶ 4, 6; Exhibits 1, 2.) Plaintiff is also the record owner of the New York State Service Mark THE VANTONE GROUP for real estate brokerage services (Reg. No. S21282)("the 'NY Service Mark"). (Decl. Gianella ¶4; Exhibit 3.)

Plaintiff's first <u>documented</u> use of THE VANTONE GROUP mark in commerce was in 2006. On May 22, 2006, The Vantone Group secured an Exclusive Right to Sell an apartment on behalf of a client. (Decl. Gianella ¶5; Ex. 32.)

During the preceding month, on April 13, 2006, Plaintiff's managing member registered www.vantonegroup.com, and www.vantonerealestate.com. (Decl. Gianella ¶3; Exhibit 4, 5.) Vantone was formed as a New York State limited liability company on April 18, 2007. (Decl. Gianella ¶3; Exhibit 6.) It has been licensed in the State of New York as a real estate brokerage since at least

---

[1]When "Defendants" are referred to herein, reference is intended to those Defendants who have made appearances in this case, namely, Vantone Holdings Co., Ltd., China Center New York LLC, Vantone Property NY LLC, Vantone Residences LLC, Vamerica Fund LLC, Vantone US LLC n/k/a Vamerica LLC, Vantone US Inc., Beijing Vantone Real Estate Co., Ltd. and Feng Lun.

WIRTZ LAW APC

TRIAL ATTORNEYS

Business | Real Estate | Employment | Intellectual Property

4365 Executive Drive, Suite 1460   1801 Century Park East, 23rd Floor
San Diego, CA 92121                Los Angeles, CA 90067
858.259.5009                       310.226.5151.

January 8, 2008. (Decl. Gianella ¶3; Exhibit 7.)

From 2006 to the present, Plaintiff has used THE VANTONE GROUP mark continuously in commerce. Though the nature of the real estate business, and the recent recession, necessarily means that "sales" (i.e., commissions) are low in volume per year, and though Plaintiff's documentation does not reflect all of Plaintiff's use in commerce, the following are examples of Plaintiff's documented use in commerce of THE VANTONE GROUP mark:

a.    In the summer of 2008, The Vantone Group was retained to lease a unit at 857 Ninth Avenue (Unit 4D). It successfully did so and received a $1500 commission. (Ex. 33) While this is the only unit in 857 Ninth Avenue for which Plaintiff has documentation of The Vantone Group's engagement to lease, The Vantone Group listed at least three or four other units in that same building in 2008. (Decl. Gianella ¶5.b)

b.    In July of 2008, The Vantone Group purchased a subscription for CoStar, an advertising database for commercial real estate listings.  (Decl. Gianella ¶5c; Ex. 34).

c.    In the Fall of 2008, The Vantone Group was retained to locate a rental for a client and, pursuant to that retention, took the client on showings of potential rentals. (Decl. Gianella ¶5.d; Ex. 35)

d.    In the beginning of 2009, The Vantone Group was retained by Roman Urbanowicz and Jenny Silver to list their condo for sale at 260 Ocean Parkway. Shortly after the exclusive listing expired a buyer procured by The Vantone Group purchased the condo. Thereafter there was a dispute between The Vantone Group and High Class Realty (the seller's broker) over the payment of The Vantone Group's commission.  (Decl. Gianella ¶5.e; Ex. 36)

e.    Also in early 2009, The Vantone Group was retained by Kyle Romeo to list 35 East 30th Street, Units 6B and 6C. As part of this retention, Mr. Gianella commissioned the drawing of floorplans for the units in March 2009. (Ex 37). In addition, pursuant to that retention, Mr. Gianella held an open house in October 2009. (Ex. 38) In November 2009, The Vantone Group LLC earned a $21,000 commission for the sale of Unit 6B.  (Ex. 39) Unit 6C was also later sold, to the same buyer. (Decl. Gianella ¶5.f)

f.    On October 12, 2009, Mr. Gianella requested to view a unit at 350 West 42nd Street

---

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

(the Orion), Units 59 A&B, as part of TVG's representation of a client. (Decl. Gianella ¶5.g;  Ex. 40)

g.      On October 12, 2009, Mr. Gianella arranged to view another unit in 350 West 42nd Street, Unit 42G, on behalf of The Vantone Group's client, Paul Denamiel. (Decl. Gianella ¶5.h; Ex. 41)

h.      In March 2010, The Vantone Group became a member of REBNY, and an advertisement of The Vantone Group was listed in the REBNY directory. (Decl. Gianella ¶5.i; Ex. 42)

i.      Also in March 2010, The Vantone Group listed an advertisement with Yellowpages.com. (Decl. Gianella ¶5.j; Ex. 43)

j.      In July 2010, The Vantone Group submitted an advertisement in Bing Local. (Decl. Gianella ¶5.k; Ex. 44)

k.      Mr. Gianella inquired, on July 9, 2010, about two different units on behalf of a client. (Decl. Gianella ¶5.l; Ex. 45)

l.      In November 2011, The Vantone Group registered to advertise with Google. (Decl. Gianella ¶5.m ; Ex. 46)

m.      In June 2012, The Vantone Group purchased a half page online banner from The Real Deal. (Decl. Gianella ¶5.n; Ex. 47)

n.      On March 4, 2014, The Vantone Group received a signed exclusive listing agreement. (Decl. Gianella ¶5.o; Ex. 48)

o.      On July 25, 2014, The Vantone Group received a signed exclusive listing agreement. (Decl. Gianella ¶5.p;  Ex. 49)

p.      In October 2014, The Vantone Group was engaged to list for rent three units at 109 Madison Street (#5, #10, and #19).  (Decl. Gianella ¶5.q; Ex 53)

q.      In November 2014, The Vantone Group was engaged to list two units at 74 Meserole Avenue.  (Decl. Gianella ¶5.r; Ex 50)

In or about 2011, it became apparent to Mr. Gianella that a large portion of the real estate market in New York was Chinese individuals. In order to appeal to that portion of the market, The Vantone Group's website was updated to display in both English and Chinese, and The Vantone Group began to market its services to Chinese clients using a Chinese character transliteration of its THE

VANTONE GROUP mark. (Decl. Gianella ¶9; Exhibit 8.) On May 7, 2012, Vantone applied for registration of this Chinese character transliteration of its federally registered trademarks (App. No. 85618998)("the '998 Application"). (Decl. Gianella ¶10; Exhibit 9.)

### 2.   USPTO Proceedings Between Plaintiff and Defendant Yangpu

Plaintiff filed its application for registration of the '285 mark on January 7, 2011. (Decl. Gianella ¶6.) Though the mark was eventually successfully registered on November 6, 2012, Plaintiff received an office action dated March 29, 2011, which brought to Plaintiff's attention Defendant's intent to infringe upon Plaintiff's trademarks. (Decl. Gianella ¶9.) Plaintiff learned that, on December 31, 2010, Defendant YANGPU NGT INDUSTRIAL CO., LTD ("Yangpu") filed an application for registration of VANTONE for various services *on an intent to use basis* ("the '425 application"). (Decl. Gianella ¶9; Exhibit 10.) In addition, on May 22, 2011, Yangpu filed an application for registration of VANTONE for other various services on an intent to use basis ("the '938 application"). (Decl. Gianella ¶9; Exhibit 11.) Yangpu's '425 application was published for opposition on January 10, 2012, and Yangpu's '938 application was published for opposition on January 3, 2012. (Decl. Gianella ¶11; Exhibits 12 and 13.)

Plaintiff opposed the '425 and '938 applications (oppositions no. 91203415 and 91203526) on January 18, 2012, by filing notices of opposition. (Decl. Gianella ¶10; Exhibits 14 & 15.) Yangpu filed an abandonment of its applications ***with prejudice***, and without Plaintiff's consent. (Decl. Gianella ¶10; Exhibits 16 & 17.) Pursuant to Trademark Rule 2.135, judgment was therefore entered against Yangpu by the Trademark Trial and Appeal Board, Plaintiff's opposition was sustained, and registration of the two infringing marks was refused. (Decl. Gianella ¶10; Exhibits 18 & 19.)

At this point, Plaintiff was unaware of the scope of Defendants' intent to attempt to usurp Plaintiff's trademark. (Decl. Gianella ¶11.)  Plaintiff was under the impression that Yangpu was one Chinese company which had apparently abandoned its attempt to use VANTONE in the United States as a result of Plaintiff's opposition. (Decl. Gianella ¶11.) However, Plaintiff later learned that, in fact, Yangpu had also filed three applications for registration of marks incorporating Chinese character translations of Plaintiff's mark:

      a.      Registration No. 4,230,555 ("the '555 registration"): for various real estate services.

(Decl. Gianella ¶14; Exhibit 20, 23.)

b.      Registration No. 4,234,787 ("the '787 registration"): for services in International class 039, and 041-044. (Decl. Gianella ¶14; Exhibit 21, 24.)

c.      Registration No. 4,339,146 ("the '146 registration"): for various real estate services. (Decl. Gianella ¶14; Exhibit 22, 25.)

All three applications were filed on an intent to use basis. (Exhibits 20-22.) The examining attorney did not refuse registration based on Plaintiff's trademark (and Plaintiff did not discover the applications in time to oppose them) because Yangpu claimed that the Chinese characters transliterate to "WAN TONG" and mean "ten thousand" and "through. (Exhibits 20-25.)  However, Defendant Beijing Vantone Real Estate Co., Ltd., a subsidary of Vantone Holdings Co., Ltd. and part of the "conglomerate" to which Defendants refer, in its 2012 annual report, admits that these characters translate to "Vantone" in English. (Exhibit 26.)

As a result of this misrepresentation to the USPTO, Plaintiff did not discover these applications until after the period for opposition had passed. (Decl. Gianella ¶14.)  On March 1, 2012, Plaintiff wrote to Yangpu, demanding that Yangpu expressly abandon its three applications. (Decl. Gianella ¶14; Exhibit 27.) Defendant Yangpu refused to either discontinue its use of the three marks, or to expressly abandon its applications. (Decl. Gianella ¶14.)  The marks were thus registered on October 23, 2012, October 30, 2012, and May 21, 2013, respectively. (Decl. Gianella ¶14; Exhibits 23-25.)

On May 7, 2012, Plaintiff filed an application for registration of its aforementioned Chinese Character transliteration of THE VANTONE GROUP ("'998 Application"). (Decl. Gianella ¶10; Exhibit 9.)  However, on September 5, 2012, Plaintiff received an office action informing it that Plaintiff's application would be denied due to the likelihood of confusion with Defendant Yangpu's pending Chinese character applications. (Decl. Gianella ¶15; Exhibit 28.)  On February 4, 2013, Plaintiff filed for cancellation of Yangpu's '555 and '787 Chinese character marks citing likelihood of confusion. (Decl. Gianella ¶15; Exhibit 29.) Plaintiff, as part of its investigation during the initiation of these cancellation proceedings, discovered that the specimen filed by Yangpu in the prosecution of the '787 registration is in fact a screen-shot of another company's website, digitally altered to make it appear that Yangpu is actually using the mark in connection with the services in connection with

which it seeks registration. (Decl. Gianella ¶15; Exhibit 31.)  Plaintiff therefore filed an amended petition for cancellation of the '787 mark citing, as an alternative ground for cancellation, that the '787 registration was accomplished through a fraud on the USPTO. (Decl. Gianella ¶15.)  That action is still pending. (Decl. Gianella ¶15.)

### 3.   Plaintiff's Attempts to Police its Marks and Defendants' Responses Claiming They Made No Use in Commerce in the United States of the Marks

After discovering Defendants' intent to use the VANTONE mark in commerce in the United States, Plaintiff began sending cease and desist letters to "Vantone" entities. Plaintiff engaged attorney Bret Danow to do so. Mr. Danow sent a cease and desist to Defendant Vantone US Inc., at its 7 World Trade Center address, attention Xue Ya, on November 11, 2010. In response, attorney John Griem, on behalf of Defendants China Center and Vantone US Inc., represented the following facts:

> The corporate parent has other subsidiaries in the United States that include the word 'Vantone' in their names, but these company names are not used in communications with customers. As you know, trademark use requires that a mark by used in connection with the distribution of goods or services to third parties. Because 'Vantone' is not used in commerce with customers as a mark in connection with its services, neither China Center or Vantone U.S. Inc. are infringing any rights your client may have in the word 'Vantone.' (Ex. 51)(Emphasis added)

On about June 7, 2011, Plaintiff sent a cease and desist letter to other various Vantone entities. On June 14, 2011, Plaintiff received a letter in response, written by an attorney in New York, representing Vantone International Group, Inc. and its subsidiary Vantone USA Inc., one of the two entities through which Defendants' now claim has an earlier date of first use to Plaintiff's. (Ex. 52) This letter stated that Vantone USA was a holding company, that its subsidiary was engaged in the business of distributing consumer products and selling insurance in China, and that its offices were located in China.  In addition, this letter admitted that:

> ...neither Vantone International nor Vantone USA nor, for that matter, Shenyang Vantone is engaged in business service in the State of New York. None of the three has an office in New York or anywhere in the United States. None of the three has ever carried on any commercial activities in the United States. And none of the three has engaged in real estate brokerage in the United States or China...(emphasis added)

## III.   STANDARD FOR SUMMARY JUDGMENT

Summary judgment may only be granted where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

---

P. 56(a). "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." *Rodriguez v. City of New York* (2d Cir. 1995) 72 F.3d 1051, 1060-61. "Ambiguities or inferences to be drawn from the facts must be viewed in a light most favorable to the party opposing the summary judgment motion." *Project Release v. Prevost* (2d Cir. 1983) 722 F.2d 960, 968. "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Rodriguez v. City of New York* (2d Cir. 1995) 72 F.3d 1051, 1061. "On a motion for summary judgment, the court is not to weigh the evidence, or assess the credibility of the witnesses, or resolve issues of fact, but only to determine whether there are issues to be tried." *United States v. Rem* (2d Cir. 1994) 38 F.3d 634, 644.

## IV.    DISCUSSION

### A.    The Vantone Defendants Are Not Prior Users the Vantone Mark in the United States Nor Have They Made Adequate "Analogous" Use of Vantone as a Trade Name Sufficient to Establish Priority

In their motion for preliminary injunction, Defendants argued that they have priority in the trademark VANTONE. Plaintiff's arguments and evidence (including Defendants' own admissions) dispatched that argument, however this Court did not at that time make a finding with regards to priority in the trademark. Here, Defendants have renewed their argument that they have priority in the trademark (claiming to be common law owners of the mark) and have also argued alternatively that they have priority such that Plaintiff's trademarks should be cancelled based on their alleged use of VANTONE as a trade name prior to Plaintiff's bona fide commercial use of the mark.

As for Defendants' first argument, it is again easily dispatched by the law and the evidence before this Court. Plaintiff clearly made the first use in the commerce of the mark VANTONE. Defendants have made several admissions to this effect. As for Defendants' second argument, they have overlooked a key requirement in the law which they cite: to acquire priority based on analogous use (trade name use included), their use must have been open and notorious to the consuming public, which theirs was not. Plaintiff, on the other hand, has clearly proven his date of first use in commerce of the trademark as no later than May 22, 2006. Therefore, it is clear that Plaintiff has priority in the

VANTONE trademark.

### 1. Defendants Have Not Made Commercial Use of the Trademark Sufficient to Establish Trademark Rights.

Priority in, and rights to, a trademark are only proven through evidence of actual use of the trademark in commerce (i.e. in connection with the sale of goods or services). *Hanover Star Milling Co. v. Metcalf* (1916) 240 U.S. 403, 413 ("[T]he right grows out of use, not mere adoption."). See also *Sengoku Works Ltd. v. RMC Intern.*, *Ltd.* (9th Cir. 1996) 96 F.3d 1217, 1219, as modified, 97 F.3d 1460 (9th Cir. 1996) ("To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services."); *Grupo Gigante SA De CV v. Dallo & Co.*, *Inc.* (9th Cir. 2004) 391 F.3d 1088, 1093 ("Under the principle of first in time equals first in right, priority ordinarily comes with earlier use of a mark in commerce."). Defendants have not shown that any one of them have used the mark in commerce in the United States.

### a. Defendants Have Repeatedly Admitted That They Have Not Used the Vantone Mark in Commerce in the United States

As of January 12, 2011, Defendants admitted that neither China Center nor Vantone US Inc. had used or were using "Vantone" in commerce with customers as a mark in connection with their services. Defendants admitted[2] that their corporate parent "Beijing Vantone Industrial Co. Ltd." has other subsidiaries, presumably the US Vantone Defendants, in the United States that include the word "Vantone" in their names, but admitted that these company names are not used in communications

---

[2]These admissions of fact were contained in a letter which also communicated a settlement offer. However, it is well settled law that there is an exception to the rule against admissibility of settlement negotiations where the evidence offered relates to admissions of fact which are not hypothetical or conditioned on consummation of the compromise offered. *Hiram Ricker and Sons v. Students Intern. Meditation Soc.*, (1st Cir. 1974) 501 F.2d 550 (There is an exception to the rule against admissibility of settlement negotiations where the evidence relates to admissions of fact as distinguished from hypothetical or provisional concessions conditioned upon the settlement's completion.); *Megarry Bros., Inc. v. U.S. for Use of Midwestern Elec. Const., Inc.*, (8th Cir.1968) 404 F.2d 479 (Unaccepted offers of compromise are not admissible in evidence as admissions, but admissions with respect to independent facts which are made during course of compromise negotiations may be received in evidence); *U.S. v. Shotwell Mfg. Co.* (7th Cir. 1961) 287 F.2d 667, certiorari granted 368 U.S. 946, affirmed 371 U.S. 341, rehearing denied 372 U.S. 950 (There is a distinction between an offer to do something in furtherance of a compromise which is inadmissible in evidence and independent admissions of fact which may be admitted.).

WIRTZ LAW APC

TRIAL ATTORNEYS

Business | Real Estate | Employment | Intellectual Property

4365 Executive Drive, Suite 1460    1301 Century Park East, 23rd Floor
San Diego, CA 92121                 Los Angeles, CA 90067
858.259.5009                        310.226.5151

with customers.

Furthermore, Defendants' affiliate, Yangpu NGT Industrial Co. Ltd (part of the "conglomeration") applied for registration of VANTONE on December 31, 2010, in an application signed by Defendant Feng Lun, on an *intent to use* basis, thereby implicitly admitting that the conglomeration was not, as of that time, using the VANTONE mark in commerce. (Ex. 10 & 11) When Plaintiff opposed these applications, they were withdrawn, without Opposer's (Plaintiff's) consent and with prejudice. (Exs. 16 & 17.) As a result, judgment was entered against Yangpu, Plaintiff's opposition was sustained and registration was refused.  (Exs. 18 &19.)

Most recently, Defendants admitted in their preliminary injunction motion that:

> ...none of these US Vantone Corporate entities were engaged in real estate brokerage services nor in providing any financial management services for sale of stocks, bonds, commodities or securities and were not licensed to offer either such services within description of those business activities claimed by the TVG registered trademarks... (Dkt. 145, Pg 5, FN 1)

Now suddenly Defendants claim that they are common law owners of the VANTONE mark because they have priority.  This claim is wholly inconsistent with their prior admissions.

> **b.     Vantone USA and Vantone Corp. Have Not Used the Vantone Trademark in Commerce Nor Would Their Use (If Any) Inure to Defendants' Benefit**

Even setting aside their prior admissions, Defendants have not proven that they used the mark in commerce in the United States earlier than Plaintiff's date of first use. Though the header for Section I of Defendants' "Legal Argument" claims that they are common law owners of the VANTONE mark, they offer no arguments or evidence to support this. Rather, in their Separate Statement of Material Facts they claim that the Vantone US Defendants have used the VANTONE mark in interstate commerce since the 1990s and continuing into the 2000s, purportedly referring to two entities formed in the 1990s: Vantone USA (a New York Corporation) and Vantone Corp (a California corporation).  (Defs. Sep. Statement ¶¶11, 13.)  In support of this claim they cite to their Exhibits C and E.  Exhibit C contains: documents setting up bank accounts, what looks like perhaps a budget, several documents in Chinese for which no translation was provided, transfer requests for the transfer of funds between Vantone USA and Vantone Corp, profits and loss statements, and letters on Vantone USA letterhead which discuss (1) a potential investment in the juice market (Defs. Ex.

C pg 9-10), (2)a potential project to co-develop a hotel in China (Defs. Ex. C pg 11-12), and (3) negotiations "regarding the Lisbon Plaza Project" (presumably a project in Portugal)(Defs. Ex C pg 5).  None of these documents were transmitted to customers, and none reflect an actual sale of goods or services.  They consist of internal documents and discussions of business ventures in various industries *outside of the US*.  See *ITC Ltd. v. Punchgini, Inc.*(2d Cir. 2007), 482 F.3d 135, 155 ("The territoriality principle requires the use to be in the United States for the owner to assert priority rights to the mark under the Lanham Act.") This is not use in commerce.  Nor is this use in commerce in the real estate industry (recall that Plaintiff's trademark VANTONE is for real estate services). In fact, Defendants' Exhibit B contains documents which state that Vantone USA's business was "consulting" (Defs. Ex B, pg 16) and Vantone Corp.'s business is "Investment Company" (Defs. Ex B, pg 25).

On the other hand, Vantone USA Inc. has admitted that it did not do business in the United States. On about June 7, 2011, Plaintiff sent a cease and desist letter to various Vantone entities. On June 14, 2011, Plaintiff received a letter in response, written by an attorney in New York, representing Vantone International Group, Inc. and its subsidiary Vantone USA Inc. (Ex. 52) This letter stated that Vantone USA was a holding company, that its subsidiary was engaged in the business of distributing consumer products and selling insurance in China, and that its offices were located in China. In addition, this letter admitted that:

> ...neither Vantone International nor Vantone USA nor, for that matter, Shenyang Vantone is engaged in business service in the State of New York. None of the three has an office in New York or anywhere in the United States. None of the three has ever carried on any commercial activities in the United States. And none of the three has engaged in real estate brokerage in the United States or China...

Furthermore, even if Vantone USA or Vantone Corp had made adequate use in commerce of the VANTONE trademark (which they did not), Defendants have offered no evidence to justify the tacking of these entities' non-existent use to Defendants' later non-existent use. Defendants have not proven that they are in privity with Vantone USA or Vantone Corp.  They have not even attempted to demonstrate their supposed relationship to those entities.

Furthermore, 15 U.S.C.A. §1127 provides that: "A mark shall be deemed to be 'abandoned' ...:(1) When its use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances. Nonuse for 3 consecutive years shall be prima facie evidence of

WIRTZ LAW APC
TRIAL ATTORNEYS
Business | Real Estate | Employment | Intellectual Property
4365 Executive Drive, Suite 1460   1801 Century Park East, 23rd Floor
San Diego, CA 92121                Los Angeles, CA 90067
858.259.5009                       310.226.5151

abandonment. 'Use' of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark."Vantone USA, Inc. was dissolved in 2004. Vantone Corp. was dissolved in 2007.  Dissolution would have prevented these entities' continued use (if any) of the mark in commerce, and would clearly constitute evidence of an intent to abandon such use. Further, three years after dissolution of each entity, the presumption of abandonment would arise as to each entity. Once abandoned, "a mark returns to the public domain and may, in principle, be appropriated for use by other actors in the marketplace, in accordance with the basic rules of trademark priority." *ITC Ltd. v. Punchgini, Inc.* (2d Cir.) 482 F.3d 135, 147.

Finally, even assuming, arguendo that Vantone USA Inc. and/or Vantone Corp. did use the VANTONE mark in commerce in a manner sufficient to create rights (which has not been proven), that Defendants' somehow are the beneficiaries of those rights (which has not been established or even explained), and that these rights were not abandoned long ago (which defies the facts), any rights of Vantone USA Inc. and/or Vantone Corp. would be confined to California. Neither of these entities applied for or acquired a federal trademark registration. Defendants offer no evidence to prove that Vantone USA, Inc. purportedly used the VANTONE mark anywhere but in California, where it registered to do business and where it registered a fictitious business name. Similarly, Defendants offer no evidence to prove that Vantone Corp. purportedly used the VANTONE mark anywhere but in California, where it was formed.  Under the *Tea Rose-Rectanus* rule, the territorial scope of an unregistered mark is limited to the territory in which the mark is known and recognized by those in the defined group of potential customers. *Hanover Star Milling Co. v. Metcalf* (1916) 240 U.S. 403, 415-416 (The "Tea Rose" Case: "Into whatever markets the use of a trademark has extended, or its meaning has become known, there will the manufacturer or trader whose trade is pirated by an infringing use be entitled to protection and redress."). See *Tana v. Dantanna's* (11th Cir. 2010) 611 F.3d 767, 780 ("[I]t is well-established that the scope of protection accorded his mark is coextensive only with the territory throughout which it is known and from which it has drawn its trade." Citing *Hanover Star Milling Co.*)

In short, Defendants have offered no evidence of their own prior commercial use of the VANTONE trademark. With regards to Vantone USA and Vantone Corp.'s supposed prior use (1)

---

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

used in commerce has not been proven, (2) use in commerce *in the United States* specifically has not been proven, (3) these entities do not offer real estate services, (4) Vantone USA has admitted that it did not business in the United States, (5) both these entities would have abandoned any rights they might have, (6) any rights these entities might have would be confined to California, and (7) Defendants have offered no evidence which would permit them to claim priority based on these two non-Defendants' supposed prior use of the mark.

### 2. Defendants Have Not Proven Analogous Use Sufficient to Establish Priority

In an apparent attempt to get around their own admissions that they have not made trademark use of VANTONE in the United States and the lack of evidence, Defendants argue that they have made trade <u>name</u> use of VANTONE and that such "analogous" use establishes their priority in the mark and is grounds for cancellation of Plaintiff's trademarks.  Defendants have ignored a crucial part of the trade name/analogous use analysis.

It is true that there is a limited exception to the first-to-use rule. In certain circumstances, appropriate *analogous* use can prevent the registration of a mark to someone with senior *trademark* use.  However, the key is that any such pre-sales activity "must have been of such a nature and extent as to create an association *in the mind of the consuming public* between the mark and the services to be rendered. "*Selfway, Inc. v. Travelers Petroleum, Inc*. (C.C.P.A. 1978) 579 F.2d 75(emphasis added); See *Herbko Intern., Inc. v. Kappa Books, Inc*. (Fed. Cir. 2002) 308 F.3d 1156, 1162 ("Before a prior use becomes an analogous use sufficient to create proprietary rights, the petitioner must show prior use sufficient to create an association in the minds of the purchasing public between the mark and the petitioner's goods. … [T]he activities claimed to create such an association must reasonably be expected to have a substantial impact on the purchasing public before a later user acquires proprietary rights in a mark."). "That is, any pre-sales publicity must be directed at potential purchasers, not just at persons such as potential investors, a phone company or suppliers who see the mark in the process of getting ready to do business." 2 McCarthy on Trademarks and Unfair Competition §16:14 (4th ed.). "Analogous use  must be open and notorious" *Cullman Ventures, Inc. v. Columbian Art Works, Inc*. (S.D.N.Y. 1989) 717 F. Supp. 96, 113.

Defendants' supposed analogous use simply does not meet this criteria. They have submitted

---

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

no evidence showing their use of VANTONE as a trade name *to potential customers* (and have admitted that they have not used the name in communications with customers). Performing due diligence investigations and feasibility services (and engaging a firm to do so), negotiating a lease, meeting with the Governor of New York (*in China*) and "describing [a] vision", organizing entities, purchasing real estate, hiring staff, hosting a website that is neither advertised nor promoted in the United States, are simply not trade name use directed at the purchasing public. These are private, internal uses of the trade name, not "open and notorious" use.  And if Defendants claim that a few news articles about their potential future activities were enough to "create an association in the minds of the purchasing public between the mark and the petitioner's goods[,]" then they have provided no evidence of this.  The articles contained in Defendants' Exhibit F do not prove definitively whether the public, at the time of their publication, came to associate VANTONE with Defendants. Some of these articles are in the Business or Real Estate section, not on the front page. For some articles it cannot be determined what section they are in. Defendants have not submitted survey evidence of the public's association, and they have not even provided circulation data for the news publications they rely upon.  If anything, whether these articles were enough to constitute "analogous use" sufficient to defeat the rights of one who has made *actual use* of the trademark, and who federally registered that mark, is a question of fact which only the jury may decide.

Furthermore, there must be, at the time of first use, the ability to engage in the trade for which the mark is intended. A first adopter who does not possess the ability to market the goods and services must give way to a later adopter but prior actual seller.  *Liqwacon Corporation v. Browning-Ferris Industries, Inc.* (T.T.A.B. 1979) 203 U.S.P.Q. 305. See also *Evans Chemetics, Inc. v. Chemetics International Ltd.* (T.T.A.B. 1980) 207 U.S.P.Q. 695 (advertising must be quickly followed by actual sales and soon enough to avoid the conclusion that there was merely an attempt to preempt a mark for use at some indefinite future date). Defendants, ***to this day*** have not made actual commercial use of the VANTONE mark.  They have not opened the China Center.  They have not executed a single lease for space in the China Center. At the time of the articles on which Defendants hang their claim to priority, Defendants did not possess the ability to offer the goods and services supposedly discussed in those articles. The China Center was merely a "vision."

**3.**    **Plaintiff, on the Other Hand, Has Priority in the Vantone Group Trademark in the United States in Connection with Real Estate Services**

Plaintiff's federal registration of THE VANTONE GROUP is prima facie evidence of the mark's validity, of Plaintiff's ownership of the mark, and of Plaintiff's exclusive right to use the mark in commerce in connection with the services specified in the registration. 15 U.S.C. §1115(a). Furthermore, "[t]he basic rule of trademark ownership in the United States is priority of use. For inherently distinctive marks, ownership goes to the first entity to use the designation as a mark." 2 McCarthy on Trademarks and Unfair Competition §16:1 (4th ed.)

Plaintiff's evidence demonstrates use of VANTONE GROUP in commerce as early as May 22, 2006, when a customer, Albert Grundy, signed an Exclusive Right to Sell Agreement with Vantone Group, thereby engaging Vantone Group's services. (Ex. 32) Thereafter, Plaintiff has continually used the VANTONE GROUP mark in commerce.  See Declaration of Gianella for a time line of examples of Plaintiff's documented use in commerce of THE VANTONE GROUP mark from 2006 to the present.

**B.**    **Plaintiff's Registrations and Applications Should Not Be Cancelled/Denied**

**1.**    **The Plaintiff's Federal Trademark Application for Real Estate Which Matured into U.S. Trademark Registration No. 3856724 Contained a Correctable Error in How the Applicant Was Identified and Thus Is Not *Void Ab Initio***

Defendants misstate the clear meaning of Section 1201.02( c) of the Trademark Manual of Examining Procedure (Fifth Edition) which was in effect as of March 3, 2010 filing date of Application Serial No.: 77949645 (the '645 application) which later matured into U.S. Trademark Registration No. 3856724. Defendants also conveniently overlook some key steps in the prosecution history of the '645 application. The initial error made in the ownership of the '645 was correctable and was in fact quickly corrected by Mr. Gianella.

The facts are as follows:

On March 3, 2010, Leonardo Gianella *pro se* filed the '645 application in which he mistakenly identified himself as owner while correctly identifying the entity type as a Limited Liability Company.

WIRTZ LAW APC
TRIAL ATTORNEYS
Business | Real Estate | Employment | Intellectual Property
4365 Executive Drive, Suite 1460    1801 Century Park East, 23rd Floor
San Diego, CA 92121    Los Angeles, CA 90067
858.259.5009    310.226.5151

---

He further identified himself as correspondent and The Vantone Group, LLC as the correspondent firm.  See Exhibit 54 which is a true and accurate copy of the '645 application as obtained online through the TSDR portal of the USPTO.

Five days later, on March 8, 2010, Mr. Gianella filed a first Preliminary Amendment to correct the name of the owner to The Vantone Group LLC.  This first amendment is accepted by the Commissioner. See Exhibit 55 which is a true and accurate copy of the first Preliminary Amendment as obtained online through the TSDR portal of the USPTO.

The following day, on March 9, 2010, Mr. Gianella filed a second Preliminary Amendment in which he attempted to correct the owner of the '645 application from Gianella Leonardo to Leonardo Gianella LLC.  This Amendment is apparently ignored by the Commissioner since the owner was no longer identified as Gianella Leonardo but rather The Vantone Group LLC. See Exhibit 56 which is a true and accurate copy of the second Preliminary Amendment as obtained online through the TSDR portal of the USPTO.

The next day, on March 10, 2010, Mr. Gianella filed a third Preliminary Amendment in which he attempted to correct the owner of the '645 application from Gianella Leonardo to The Vantone Group LLC.  This Amendment is also ignored by the Commissioner apparently because the owner was no longer identified as Gianella Leonardo but rather The Vantone Group LLC. See Exhibit 57 which is a true and accurate copy of the third Preliminary Amendment as obtained online through the TSDR portal of the USPTO.

Finally, on June 15, 2010, after communicating with Mr. Gianella, trademark examining attorney amended the application Applicant's entity to read The Vantone Group LLC, a limited liability company legally organized under the laws of New York. See Exhibit 58 which is a true and accurate copy of the Examiner's Amendment as obtained online through the TSDR portal of the USPTO.

The Defendant mistakenly points to only the section on Non-Correctable Errors in support of its supposition that the '645 application was void ab initio. That section does not control since there clearly was "a reference to a corporation in the entity section of the application." To understand why the Commissioner on June 15, 2010 accepted the correction of the owner to The Vantone Group, LLC

one needs to read the corresponding section which explains what are correctable errors. The relevant portions of Trademark Manual of Examining Procedure (TMEP) fifth edition are set forth below:

> 1201.02(c) Correcting Errors in How the Applicant Is Identified

> Correctable Errors. The following are examples of correctable errors in identifying the applicant:

> (4) Inconsistency in Original Application as to Owner Name or Entity. If the original application reflects an inconsistency between the owner name and the entity type, e.g., an individual and a corporation are each identified as the owner in different places in the application, the application may be amended to clarify the inconsistency.

> Example: Inconsistency Between Owner Section and Entity Section of TEAS Form: If the information in the "owner section" of a TEAS application form is inconsistent with the information in the "entity section" of the form, the inconsistency can be corrected, e.g., <u>if an individual is identified as the owner and a corporation is listed as the entity, the application may be amended to indicate the proper applicant name/entity</u>. (Emphasis added)

See pages 28 and 29 of Exhibit 59 which is a true and accurate copy of the relevant section of the Fifth Edition of the Trademark Manual of Examining Procedure (TMEP) which was obtained online through the following archive portal of the USPTO. (http://www.uspto.gov/trademark/guides-and-manuals/trademark-manual-examining-procedure-april-2014)

As in the example above, an individual (Mr. Gianella) was identified as the owner of the '645 application and a corporation (a limited liability company) was listed as the entity. The Commissioner acted properly on June 15, 2010 to correct the ownership of the '645 to The Vantone Group, LLC.

### 2.   Defendants Do Not Have Prior Use in the United States

Plaintiff incorporates Section A of this brief by reference.

### 3.   Plaintiff Did Not Fraudulently Procure the Trademarks

Defendants next argue that Plaintiff's trademark should be cancelled because Plaintiff purportedly obtained his trademark fraudulently. The statement in Plaintiff's trademark application

to which Defendants point states only that Plaintiff believes itself to be the owner of the trademark sought to be registered and believes that no other entity has the right to use the mark in commerce (in the United States).

### a.      Plaintiff Was under No Duty to Investigate or to Search out Other Users of the Applied-for Mark.

In signing the oath, an applicant has no duty to investigate or to search out other users of the proposed mark. *Maids to Order of Ohio Inc. v. Maid-to-Order Inc*. (TTAB 2006) 78 USPQ2d 1899, 1909(A trademark applicant has no duty to investigate potential conflicting uses that might be found through a trademark search, and therefore there is no duty to investigate specific information such as when a third party may have started using a mark.).  It is noteworthy to consider the fact that the oath in the application is phrased in terms of the applicant's subjective "knowledge and belief." Applicant's duty is to list any entity known to it to be a senior user of a clearly conflicting mark, as well as any junior user known to it to have clearly conflicting rights which are clearly established, as, for example, by court decree, by settlement agreement, or by a registration.[3] As Judge Rich put it, the Lanham Act requires in the application oath a "statement of beliefs about exclusive rights, not their actual possession."[4]

### b.      Only actual knowledge of a prior user when signing the oath constitutes fraud

Fraud generally will not be found in cases in which the applicant held an honest, good faith belief that it was entitled to registration of the applied-for mark.  If the applicant believes in good faith

---

[3]See *Rosso & Mastracco, Inc. v. Giant Food Inc.* (Fed. Cir. 1983) 720 F.2d 1263, 219 USPQ 1050, 1053 (no requirement to investigate and report all possible users; senior user ordinarily need not identify junior users in the oath unless rights of a junior user have been "clearly established"); *Pennsylvania Fashion Factory, Inc. v. Fashion Factory, Inc*. (TTAB 1982) 215 USPQ 1133, 1137(duty to investigate only known prior users; existence of other users came to applicant's attention after applicant began use and then only as result of computer-generated search report). See also *In re Sun Refining & Marketing Co*. (TTAB 1991) 23 USPQ2d 1072, 1073 (obligated to amend declaration to acknowledge rights recognized by the terms of a settlement agreement). Cf. *SCOA Industries Inc. v. Kennedy & Cohen, Inc*.(TTAB 1975)188 USPQ 411, 414 (no duty to identify other user where there are arguable differences between the marks).

[4]*American Security Bank v. American Security and Trust Co*. (CCPA 1978) 571 F.2d 564, 568. 197 USPQ 65, 67(original emphasis).

---

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

-18-

WIRTZ LAW APC
TRIAL ATTORNEYS
Business | Real Estate | Employment | Intellectual Property
4365 Executive Drive, Suite 1460   1801 Century Park East, 23rd Floor
San Diego, CA 92121                Los Angeles, CA 90067
858.259.5009                       310.226.5151

that it is the senior user of the mark, this good-faith belief provides a proper basis for the applicant to sign the oath in support of the application for registration.[5]  The applicant has no obligation to disclose to the Patent and Trademark Office third-party users when the applicant reasonably believes that its rights are superior to those third-party users. Nor does the applicant have any obligation to investigate junior users of the mark or third parties who may be using the mark. As stated in one case where no fraud was found: "Where, as in this case, the affiant believed and was claiming that it had a right to the mark superior to that of other parties who might be using it, fraud is not shown by proof that registrant was aware of those other users."[6]  If another party's rights in the same or a similar mark are not known by the applicant to be clearly established or superior to applicant's rights, then the applicant has a reasonable basis for believing that no one else has the right to use the mark in commerce, and the applicant's statement to that effect in the application oath is not fraudulent. *Space Base Inc. v. Stadis Corp.*, 17 USPQ2d 1216, 1218-19 (TTAB 1990)  The Board stated the following:

> Moreover, it is settled that there can be no fraud by reason of a party's failure to disclose the asserted rights of another person, including a prior applicant unless that person is known to possess a superior or a clearly established right to use, and we see nothing in applicant's counterclaim that indicates that opposer was aware of applicant's superior, if any, or a "clearly established," right to use. *Id.*

Defendants themselves cite law stating that "Fraud in procuring a trademark registration occurs when an applicant for registration of a mark **knowingly** makes false, material representations of fact in connection with an application to register." Citing *Burkina Wear, Inc. v. Campagnolo*, S.R.L. (S.D.N.Y. Jan. 7, 2011) No. 07 CIV 3610, 2011 WL 70563, at *3.  The very next sentence of the *Burkina* case states that "[A] party seeking cancellation for fraudulent procurement must prove the alleged fraud by clear and convincing evidence." However, skipping over the standard by which <u>they</u> must prove fraud, Defendants then cite to a case which does not even involve fraud in the procurement of a trademark registration in an apparent attempt to mislead this Court as to the proof of fraud

---

[5]*E.g., Maid to Order of Ohio Inc. v. Maid-to-Order Inc.* (TTAB 2006) 78 USPQ2d 1899, 1908; *Intellimedia Sports Inc. v. Intellimedia Corp.* (TTAB 1997) 43 USPQ2d 1203, 1206; *Woodstock's Enterprises Inc. (California) v. Woodstock's Enterprises Inc. (Oregon)*, (TTAB 1997) 43 USPQ2d 1440, 1444, aff'd, 1998 U.S. App. LEX1S 3777 (Fed. Cir. March 5, 1998) (unpublished); *Kemin Industries, Inc. v. Watkins Products, Inc.* (TTAB 1976) 192 USPQ 327, 330; *Girard Polly-Pig, Inc. v. Polly-Pig by Knapp, Inc.* (TTAB 1983) 217 USPQ 1338, 1342; *SCOA Industries Inc. v. Kennedy & Cohen, Inc.* (TTAB 1975) 188 USPQ 411, 414.

[6]*Heaton Enterprises of Nevada Inc. v. Lang*, (TTAB 1988) 7 USPQ2d 1842, 1849.

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

WIRTZ LAW APC

TRIAL ATTORNEYS

Business | Real Estate | Employment | Intellectual Property

4365 Executive Drive, Suite 1460   1801 Century Park East, 23rd Floor
San Diego, CA 92121              Los Angeles, CA 90067
858.259.5009                    310.226.5151.

necessary. The citation to the *Paddington* case, *Paddington Corp. v. Attiki Importers & Distributors, Inc.* (2d Cir. 1993) 996 F.2d 577, 586, is drawn from a section where the Court is analyzing the "bad faith" *Polaroid* factor (i.e. whether a junior user adopted a senior user's mark in bad faith as one of the factors used in determining whether there is a likelihood of confusion). That case did not involve allegations of fraud on the USPTO and the section cited does not relate in any way to the level of knowledge necessary to prove that an applicant committed fraud on the USPTO. As the *Burkina* case makes clear, only <u>knowing</u> misrepresentations of material fact, proven by clear and convincing evidence, constitute fraud on the USPTO.

### C.   At the Time of Signing of the Trademark Application, Plaintiff Had No Actual Knowledge of Defendants and Made No Other Knowingly False Statements

Defendants have not introduced evidence to satisfy the clear and convincing standard of proof. Defendants claim that when Plaintiff filed his trademark application, several of the movant defendants were in existence and their formation documents "were a matter of public record." First, the fact that defendants were "in existence" does not mean that they owned the trademark or had the right to use the mark in commerce (which they, in fact, did not). Second, Defendants do not provide evidence showing that Gianella *knew* these entities were in existence at the time (and certainly not evidence sufficient to satisfy the clear and convincing standard)[7]. And third, whatever Defendants mean by "were a matter of public record" does not equate to Plaintiff's actual knowledge thereof. Certainly a trademark applicant is not required to search the secretary of state's database for every state for any entities bearing a name similar to the mark to be registered prior to signing a trademark application.

---

[7]Defendants claim that Gianella's sworn declaration that he was <u>not</u> aware of Defendants when he registered the domains and the trademarks is an attempt to create a "feigned" issue of fact. "The court may not weigh the credibility of the affiants on a motion for summary judgment unless it clearly appears that the issues are not genuine, but feigned." *Glick & Dolleck, Inc. v. Tri-Pac Exp. Corp.* (1968) 22 N.Y.2d 439, 441, 239 N.E.2d 725, 726 Defendants' citation to this rule in *United Nat. Ins. Co. v. Tunnel, Inc.* (2d Cir. 1993) 988 F.2d 351 is unavailing as the rule in the 2nd circuit is that a party may not, in order to defeat a summary judgment motion, create a material issue of fact by submitting an affidavit disputing his own prior sworn testimony. *United Nat. Ins. Co. v. Tunnel, Inc.* (2d Cir. 1993) 988 F.2d 351, 354 Defendants make no claim that any affiant in this case has attempted to contradict prior sworn testimony; Defendants only claim that Gianella knew that Defendants had been using and owned the Vantone mark prior to the application for the mark, which Defendants claim was fraudulent. It is not that the case that in a prior sworn statement Plaintiff stated it knew Defendant owned the Vantone mark, only to later claim in some subsequent testimony or declaration that Plaintiff believed it was the only owner of the Vantone mark.

WIRTZ LAW APC
TRIAL ATTORNEYS
Business | Real Estate | Employment | Intellectual Property
4365 Executive Drive, Suite 1460   1801 Century Park East, 23rd Floor
San Diego, CA 92121   Los Angeles, CA 90067
858.259.5009   310.226.5151

Such databases do not even list the goods or services offered by entities and therefore would not allow a trademark applicant to determine if a similarly named entity had rights to a mark relative to the same goods or services as applicant. As Defendants themselves admit, even the examining attorney's searches did not turn up Defendants' existence.

Defendants also argue that Plaintiff misrepresented its date of first use. Plaintiff claimed a date of first use anywhere at least early as 4/13/2006 and in commerce at least as early as 4/18/2007. These representations were not false. Plaintiff did use THE VANTONE GROUP first on 4/13/2006, when its website was registered. Its date of first use of the mark in commerce was May 22, 2006, so its representation that its date of first use in commerce was at least as early as 4/18/2007 was not false. Defendants' red herring is the fact that Plaintiff, The Vantone Group LLC, was not licensed as a brokerage until January 8, 2008. But they ignore the fact that Mr. Gianella, its principal, was licensed at the time of first use. He did in fact execute an exclusive listing agreement bearing the mark THE VANTONE GROUP on May 22, 2006. There is no misrepresentation in Plaintiff's application.

Defendants also make much of the fact that Plaintiff, in its application stated that a search of other businesses nationwide containing the name Vantone only pulled up Plaintiff's listing. However, significantly, Plaintiff attached the results of that search to the application. That attachment shows that the search was limited to New York. Clearly, this was simply a mistake on Plaintiff's part. If Plaintiff had knowingly tried to mislead the USPTO it surely would not have attached to its application a printout which contradicted its statement.

### 4. Plaintiff Did Not Abandon His Marks and "Insufficient Sales" Is Not a Grounds for Cancellation of a Registered Mark Nor Denial of a Trademark Application

Despite Defendants' unsupported assertions to the contrary, it is clear that there is not a minimum number of uses in commerce which must be shown to acquire and retain trademark. A single use in commerce is enough to acquire rights to a trademark and as long as subsequent use is "continuous" there is no set number of sales that is required. Naturally, the number of completed transactions will depend upon the industry. A trademark registrant selling candy bars would naturally be expected to sell a higher quantity than a registrant selling more expensive items.

Defendants' citations of law are either mis-interpreted or distinguishable. For example, the *Buti* case cited by Defendants states that "mere advertising" of a mark is insufficient to constitute use in commerce where it is unaccompanied by any actual rendering of the services. First, that is not the case here as Plaintiff has shown much more use than mere advertising. Second, *Buti* was discussing the ability of advertising to constitute use in commerce for the purpose of *acquiring* trademark rights in the first place, not maintaining rights after a bona fide first use in commerce has been made.

Defendants' citation to *Gameologist* is likewise inapposite and distinguishable. First, *Gameologist Grp., LLC v. Scientific Games Int'l, Inc.* (2d Cir. 2013) 508 F. App'x 31 was not selected for publication in the Federal Reporter. Second, it is easily distinguished from the present case. In *Gameologist*, plaintiff–appellant sued Scientific Games Corporation, Inc. alleging that it infringed on its mark by using the word "bling" on several lottery tickets. *Gameologist Grp., LLC v. Scientific Games Int'l, Inc.* (2d Cir. 2013) 508 F. App'x 31, 32. Gameologist's only use in commerce was a licensing agreement with Scientific's subsidiary, a licensing agreement that produced no sales, and the parties agreed to cancel the agreement after five months. *Id*. Further, Gameologist had not registered its trademark for use in the lottery-ticket industry; therefore, the court ruled against Gameologist. *Id*. In the present case, Plaintiff has registered THE VANTONE GROUP mark and has done more in the real estate industry than just have one agreement that produced no sales and was cancelled after five months. Plaintiff has continually used THE VANTONE GROUP mark from 2006 through the present. Plaintiff's use of THE VANTONE GROUP mark in commerce has included, but is not limited to, the use of the domains www.vantonegroup.com and www.vantonerealestate.com, purchase of a subscription for CoStar an advertising database for commercial real estate listings in July of 2008, becoming a member of REBNY, obtaining an advertisement of The Vantone Group in the REBNY directory, obtaining an advertisement with Yellowpages.com and in Bing Local, purchasing a half page online banner from The Real Deal, and client retention of The Vantone Group to lease, rent, sell, or buy a property on a least ten (10) separate occasions for different properties.

Defendants' reliance on *Jaffe* is likewise misplaced. First, *Jaffe v. Simon & Schuster Inc.* is again not a reported case. Secondly, even if *Jaffe* were applicable, it is distinguishable from the present case because Plaintiff is not trying to invoke Federal trademark laws by "a small, isolated

WIRTZ LAW APC
TRIAL ATTORNEYS
Business | Real Estate | Employment | Intellectual Property
4365 Executive Drive, Suite 1460     1801 Century Park East, 23rd Floor
San Diego, CA 92121                         Los Angeles, CA 90067
858.259.5009                                      310.226.5151

shipment of goods between business associates." *Jaffe v. Simon & Schuster Inc.* (S.D.N.Y. Jan. 16, 1987) No. 86 CIV. 1577 (GLG), 1987 WL 124312, at *4 In *Jaffe* the court notes that the plaintiff relied on two sales to establish prior use of the mark and follow-up activity after the initial use; however, both of the sales were to personal friends and relatives.  In contrast, in the present case there is no evidence that any of Plaintiff's real estate transactions were with a relative or personal friend. Defendants' observation that Mr. Gianella's commission for an apartment within his own building does not amount to evidence that the transaction was with a personal friend or relative. Trademark rights have often been upheld in spite of modest sales program when the sales are part of an ongoing program to exploit the mark commercially. *La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.* (2d Cir. 1974) 495 F.2d 1265, 1272 Defendants cannot dispute that Plaintiff has made ongoing efforts to commercially exploit the mark because Plaintiff has continually made efforts to advertise and to be retained to represent clients to sell, rent, lease, or buy real property.

### 5.    Plaintiff Did Not Make Sham or Token Use of the Trademarks; His Use Was Bona Fide and Sufficient

Defendants claim that Plaintiff's use is not bona fide because it was in bad faith. Initially, it must be noted that issues of good faith are fact-intensive and ill-suited for summary judgment.  *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.* (2d Cir. 2000) 228 F.3d 56, 67-68- MSJ denied ("[i]ssues of good faith are generally ill-suited for disposition on summary judgment")

### a.    Defendants Are Using the Wrong Standard

Defendants apparently are trying to confuse the issues by citing law that relates to the likelihood of confusion, rather than to law regarding the bona fide use of THE VANTONE GROUP trademark. Defendants cite, *inter alia*, *ABC Rug & Carpet Cleaning Serv., Inc. v. ABC Rug Cleaners, Inc.* (S.D.N.Y. Feb. 10, 2010)  No. 08 CIV. 5737 RMB RLE, 2010 WL 10091076 and *De Beers LV Trademark Ltd. v. DeBeers Diamond Syndicate, Inc.* (S.D.N.Y. 2006) 440 F. Supp. 2d 249, 278, which acknowledge law that in cases involving an analysis of whether there is likelihood of confusion, the court will look to evidence of bad faith on the part of the junior user's use of the mark and that a plaintiff can infer bad faith on the part of a defendant by proving the defendant (the junior user) had constructive knowledge of the prior user's mark.  Proving bad faith and the likelihood of confusion

WIRTZ LAW APC

TRIAL ATTORNEYS

Business | Real Estate | Employment | Intellectual Property

4365 Executive Drive, Suite 1460    1801 Century Park East, 23rd Floor
San Diego, CA 92121                 Los Angeles, CA 90067
858.259.5009                        310.226.5151.

---

is not relevant to the analysis as to whether Plaintiff used the mark in commerce and whether such use was bona fide. Use of constructive knowledge to prove bad faith would only be relevant if Defendants were the senior user of the mark and Plaintiff were the junior user and the issue to be analyzed was likelihood of confusion. As is shown in this opposition to the present motion, Plaintiff is the senior user, Defendants are the junior user. Thus, the present case is clearly distinguishable from *ABC Rug & Carpet Cleaning Serv., Inc.* because plaintiffs (senior users) in that case occupied the analogous position that Plaintiff (senior user) occupies in the present case – Defendants hope to confuse the Court into believing it is the opposite. In *ABC Rug & Carpet Cleaning Serv., Inc.* the defendants (junior users) were aware of the ABC Carpet and ABC Marks when they came up with their name and design. Defendants testified that they used the ABC name even after becoming aware of the existence of the plaintiffs' use of the names and marks and defendants made no efforts to discover the trademark status of the name and design before adopting it. *ABC Rug & Carpet Cleaning Serv., Inc. v. ABC Rug Cleaners, Inc.* (S.D.N.Y. Feb. 10, 2010) No. 08 CIV. 5737 RMB RLE, 2010 WL 10091076, at *19 report and recommendation adopted, No. 08 CIV 5737 RMB RLE, 2011 WL 182114 (S.D.N.Y. Jan. 13, 2011) In the present case, Plaintiff was the senior user of the mark, Plaintiff registered the mark in good faith, without actual knowledge of Defendants and used it after conducting a search for the status of the Vantone trademark and found none.

**b.   Plaintiff's Adoption and Use of the Mark Was Not in Bad Faith**

Further, even if Plaintiff were the junior user "[t]he Second Circuit 'has never held adoption of a mark with no knowledge of a prior similar mark to be in bad faith, even in the total absence of a trademark search.' (Citation omitted)" *De Beers LV Trademark Ltd. v. DeBeers Diamond Syndicate, Inc.* (S.D.N.Y. 2006) 440 F. Supp. 2d 249, 278

Mr. Gianella selected "Vantone" for Plaintiff's trademark after much thought. He knew that he wanted to create a protectible brand. He did some research online and found that arbitrary or fanciful marks would be entitled to the highest degree of protection. (Decl. Gianella ¶2.) He therefore set out to come up with a fanciful or arbitrary mark. (Decl. Gianella ¶2.) He first toyed around with arbitrary words like 'vanquish' or 'the one.' (Decl. Gianella ¶2.) He considered combining words to

make a fanciful mark. (Decl. Gianella ¶2.) He landed on Vantone, however, because Vantone (pronounced van-tone-nay in Italian) is a small area in Italy, where Gianellas (his family) are from. (Decl. Gianella ¶2.) The connection to his family and his heritage finalized the selection of Vantone in particular in his mind. (Decl. Gianella ¶2.)  He took the Italian word, chose to pronounce it in English (van-tone, just like it is spelled) and created the mark "The Vantone Group." (Decl. Gianella ¶2.)

The date of registration of the domain is a coincidence.  Mr. Gianella did not see the April 13, 2006 article. Said article was not major news and was not even on the front page of the newspaper. Mr. Gianella has testified that he would sometimes purchase the New York Times, but only on Sundays and only to read the real estate section.  (62:13-24.)  He did not see this article before registering the domains.

**c.      Even If Plaintiff Was Aware of Defendants Use of Vantone Abroad (Which it Was Not) this Would Not Amount to Bad Faith**

Finally, Defendants' citations directly contradict precedent which is <u>squarely</u> on point on this issue.  Defendants make much of the coincidence of Plaintiff's registration of its domain name, and the April 13, 2006 New York Times article interview of Feng Lun. The exact scenario Defendants imagine has already been considered.  In *Person's Co., Ltd. v. Chistman*, (1990) 900 F.2d 1565, a Japanese entity (Person's) adopted the PERSON'S trademark and began to apply it to clothing items in Japan in 1977.  In 1981 an individual (Christman) traveled to Japan, saw the merchandise bearing the mark, purchased some of the merchandise and took it back to the United States with him.  He then began to apply the PERSON'S mark to clothing and sell it in the United States. He applied for and received a federal trademark registration for PERSON'S for clothing. Person's Japan later attempted to expand its sales into the United States, and applied for and received a registration for PERSON'S on luggage, clothing, and accessories. Person's initiated an action to cancel Christman's registration and Christman counterclaimed for cancellation of Person's registration.

The Court found that Person's arguments of Christman's bad faith ignored the territorial nature of trademark rights and "an inference of bad faith required something more than mere knowledge of prior use of a similar mark in a foreign country." *Id.* at 1570. Christman was the senior user in the

United States, regardless of his knowledge of Person's in Japan. "While adoption of a mark with knowledge of a prior actual user in U.S. commerce may give rise to cognizable equities as between the parties, no such equities may be based upon knowledge of a similar mark's existence or on a problematic intent to use such a similar mark in the future. Knowledge of a foreign use does not preclude good faith adoption and use in the United States." *Id.*

Thus even if Mr. Gianella knew of Defendants' use of VANTONE in China (which he did not), or of Defendants' intent to expand into the United States (which he did not), this would not, as a matter of law, amount to bad faith adoption of the mark.

### 6.   Plaintiff's Use Is Not Unlawful

Defendants argue that Plaintiff's use of the registration for financial services is unlawful and cite the *Lane Capital Management* case.  *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.* (2d Cir. 1999) 192 F.3d 337. However, actual reference in the *Lane Capital Management* is to an appellant argument, not a holding from the case. Moreover, the declaration of Mr. Hanor cannot be considered and must stricken. It provides nothing more than improper legal argument and conclusions of law on the issues this court is to decide. An expert is not permitted to opine that the work of the USPTO was not proper. See Objection to Declaration of Mr. Hanor, filed concurrently herewith. As for Plaintiff's ability to use a mark for financial services, Defendants have cited no authority for the proposition that Mr. Gianella cannot guide clients into real estate opportunities.

Further, Defendants are clearly viewing the term "Financial Services" incorrectly, as Mr. Gianella was clearly able to use the mark for certain Financial Services.  Mr. Gianella testified that he had a series six license with FINRA, which allowed him to provide the services of selling mutual funds, closed-end funds, unit investment trusts, and variable annuities.  Gianella depo. pg.149, ln.19 thru pg. 150, ln. 8. Further, Mr. Gianella testified that he "was going to sell the product that [he] was familiar with, with being employed at Chase Bank." Gianella depo. pg. 150, ln. 2-8.

### 7.   Plaintiff's Harm Is Not an Element of Trademark Infringement

To succeed on a claim for trademark infringement, Plaintiff must prove four elements: (1) that he possesses the trademarks at issue, (2) that defendants' use of the marks is in commerce, (3) that defendants' use of the marks is in connection with goods or services, and (4) that the defendants' use

WIRTZ LAW APC

TRIAL ATTORNEYS

Business | Real Estate | Employment | Intellectual Property

4365 Executive Drive, Suite 1460   1801 Century Park East, 23rd Floor
San Diego, CA 92121                Los Angeles, CA 90067
858.259.5009                       310.226.5151

of the marks is likely to cause confusion. *SMJ Grp., Inc. v. 417 Lafayette Rest. LLC* (S.D.N.Y. 2006) 439 F. Supp. 2d 281, 286. Defendants attempt to add an additional element of "harm" or damage is misleading.   Upon establishing that the defendants have infringed Plaintiffs trademark, Plaintiff will be entitled to injunctive relief and/or damages at trial.   15 U.S.C.A. §§1116, 1117. However, for purposes of defeating Defendants summary judgment motion, Plaintiff's damages is not relevant to the determination. Proof of harm, whether it is lost profits due to the infringement or profits of Defendant gained from their infringement, or whether it is simply injunctive relief are issues for trial– not summary judgment.

Notwithstanding the irrelevance of the damages issue, Defendants misrepresent Mr. Gianella's testimony to support their argument that his only damage is this lawsuit. In reality, Mr. Gianella testified that the time he spent on this lawsuit was interfering with his time in his business.   Mr. Gianella's statement was a comment explaining the amount of his sales, not a statement of damages for his time dealing with the case.

### C.   There Exists a Triable Issue of Fact Regarding Whether There Is a Likelihood of Confusion If Defendants Continue Their Use of the Vantone Mark in the United States

As a last-ditch effort, Defendants (in a single sentence) throw out the argument that Plaintiff cannot present any evidence of the likelihood of confusion. This is wrong.

Whether or not there is a likelihood of confusion is a question of fact as to the probable or actual actions and reactions of prospective purchasers of the goods or services of the parties. *Am. Int'l Grp., Inc. v. London Am. Int'l Corp.* (2d Cir. 1981) 664 F.2d 348, 351. "Summary judgment based on likelihood of confusion under the *Polaroid* analysis is appropriate where the undisputed evidence would lead only to one conclusion." *U–Neek, Inc. v. Wal–Mart Stores, Inc.* (S.D.N.Y.2001) 147 F.Supp.2d 158, 173(citing *Sports Auth., Inc. v. Prime Hospitality Corp.* (2d Cir.1996)  89 F.3d 955, 960 (internal quotation marks omitted). "The bottom line on a motion for summary judgment is not how many factors favor each side but whether a reasonable trier of fact might differ as to likelihood of confusion." *Physicians Formula Cosmetics Inc. v. W. Cabot Cosmetics, Inc.* (2d Cir. 1988) 857 F.2d 80, 85. Even if the basic facts are undisputed, summary judgment is still improper where factual inferences must be drawn to arrive at a particular finding. *Cadbury Beverages, Inc. v. Cott Corp.* (2d

Cir. 1996) 73 F.3d 474, 478:

> The district court began its analysis with the proposition that the facts of this case are not in dispute, and that it needed only to determine the "legal conclusions to be drawn from these facts." 850 F.Supp. at 257. That the parties do not dispute the basic facts in this case does not necessarily mean that these facts alone compel certain findings as to each of the Polaroid factors. If a factual inference must be drawn to arrive at a particular finding on a Polaroid factor, and if a reasonable trier of fact could reach a different conclusion, the district court may not properly resolve that issue on summary judgment. With this in mind, we examine the district court's decision.

In evaluating the likelihood of consumer confusion courts look to the factors that the Second Circuit first set forth in *Polaroid Corp. v. Polarad Electronics Corp.* (2d Cir.1961) 287 F.2d 492, 495 . These factors are: the strength of the mark; the degree of similarities between the two marks; the competitive proximity of the products; evidence of actual confusion; the likelihood that the plaintiff will bridge the gap by selling the product being sold by the defendants; the defendants' good faith in adopting the mark; the quality of the defendants' product; and the sophistication of the products. The Polaroid factors must be applied with an eye toward the likelihood of consumer confusion, and no factor is dispositive of this inquiry. See *Virgin Enters. Ltd.*, 335 F.3d at 146. The Polaroid factors are not applied mechanically; no single factor is dispositive, and in certain cases a factor may be irrelevant. *Arrow Fastener Co. v. Stanley Works* (2d Cir.1995) 59 F.3d 384, 40

The likelihood of confusion is an issue of fact rarely decided on summary judgment. *Neles–Jamesbury, Inc. v. Valve Dynamics,* (S.D.Tex.1997) 974 F.Supp. 964, 971 ("[L]ikelihood of confusion is a fact issue that, except in rare circumstances, should not be determined on a motion for summary judgment."). Summary judgment on the issue of likelihood of confusion is warranted only in rare instances and "only if 'no genuine issue' exists regarding likelihood of confusion." *Optimal Pets, Inc. v. Nutri-Vet, LLC* (C.D. Cal. June 7, 2010) No. EDCV-08-1795 MJG, 2010 WL 2305843, at 6 citing *Thane Intern., Inc. v. Trek Bicycle Corp.* (9th Cir.2002) 305 F.3d 894, 901-02.

## 1.     Strength of the Mark

The strength of a mark refers to its ability to identify the source of the goods being sold under it. See *Nora Beverages, Inc. v. Perrier Group of America, Inc.* (2d Cir.2001), 269 F.3d 114, 123. There are two components of a mark's strength: its inherent distinctiveness and the distinctiveness it has acquired in the marketplace. See *Streetwise Maps, Inc. v. VanDam, Inc.* (2d Cir.1998) 159 F.3d

739, 743–44. The former, inherent distinctiveness, examines a mark's theoretical potential to identify plaintiff's goods or services without regard to whether it has actually done so. The latter, acquired distinctiveness, refers to the recognition plaintiff's mark has earned in the marketplace as a designator of plaintiff's goods or services. See *TCPIP Holding Co. v. Haar Communications, Inc.* (2d Cir.2001) 244 F.3d 88, 97.

Courts assess inherent distinctiveness by classifying a mark in one of four categories arranged in increasing order of inherent distinctiveness: (a) generic, (b) descriptive, (c) suggestive, or (d) fanciful or arbitrary. *Streetwise*, 159 F.3d at 744; *Estee Lauder Inc. v. The Gap, Inc*. (2d Cir.1997) 108 F.3d 1503, 1508. "[T]he term 'fanciful', as a classifying concept, is usually applied to words invented solely for their use as trademarks. When the same legal consequences attach to a common word, i. e., when it is applied in an unfamiliar way, the use is called 'arbitrary.'" *Abercrombie & Fitch Co. v. Hunting World, Inc.* (2d Cir. 1976) 537 F.2d 4, 14. Marks that are arbitrary or fanciful are afforded the greatest degree of protection–i.e. they are entitled to protection absent any proof of acquired distinctiveness (aka secondary meaning). *Genesee Brewing Co., Inc. v. Stroh Brewing Co.* (2d Cir. 1997) 124 F.3d 137, 143.

THE VANTONE GROUP is a fanciful mark. It's dominant component–VANTONE– is not defined in any dictionary. It has no common meaning aside from as a trademark. Therefore this factor weighs in favor of a likelihood of confusion.

### 2. Degree of Similarities Between the Two Marks

#### a. Defendants' Use of VANTONE: Similarity Between THE VANTONE GROUP and VANTONE

The dominant portion is Plaintiff's trademark is the word VANTONE. "The" and "Group" are generic words that were properly disclaimed in Plaintiff's trademark registration, giving rise to the presumption that the remaining undisclaimed word VANTONE, is the dominant portion of the mark. See *Lockheed Martin Corp. v. Network Solutions, Inc*. (C.D. Cal. Nov 17, 1997) 985 F.Supp. 949, 964(noting that when a party disclaims portions of the mark, the undisclaimed portions are considered "dominant" for purposes of customer confusion); see also *In re Dixie Restaurants, Inc*.(Fed.Cir.1997) 105 F.3d 1405, 1407.

In determining the similarity of the two marks, a Court must place greater weight on the similarity of the dominant portions of the marks. While conflicting marks are to be compared by looking at them as a whole, rather than breaking the marks into their component parts for comparison, *Estate of P.D. Beckwith, Inc. v. Comm'r of Patents*, (1920) 252 U.S. 538, 545–46, 40 S.Ct. 414, 64 L.Ed. 705 , it is appropriate in determining the question of likelihood of confusion to give greater weight to the important or "dominant" parts of a composite mark, *Kangol Ltd. v. Kangaroos U.S.A., Inc.* (Fed.Cir.1992) 974 F.2d 161, 163; *Pizzeria Uno Corp. v. Temple* (4th Cir.1984) 747 F.2d 1522, 1530(stating that it is a "settled principle of trademark law that the dominant part of a mark may be given extra weight on the issue of likelihood of confusion"). The proper analysis therefore is of the similarity between the dominant portion of Plaintiff's mark–the word VANTONE–and Defendant's mark–also VANTONE.

VANTONE is identical in sight and sound to the dominant–and inherently distinctive–portion of Plaintiff's  THE VANTONE GROUP trademark.  This factor therefore weighs in favor of a likelihood of confusion.

### 3.    Competitive Proximity of the Products

Plaintiff provides real estate and financial services in New York City.  Defendants also provide real estate services.  At their China Center, Defendants intend to lease offices.  Given the fact that the services of Plaintiff and the Defendants are in direct competition, this factor weighs in favor of a likelihood of confusion.

### 4.    Evidence of Actual Confusion

Defendants appear to have either intentionally attempted to mislead the public with regards to their affiliation with Plaintiff or were themselves confused. On Defendants' website, www.vantone.com, Defendants advertised one of their real estate projects and included a link designated "website:"–this hyperlink links to Plaintiff's website. Given Defendants' own apparent confusion this factor weighs in favor of likelihood of confusion.

### 5.    Likelihood That the Plaintiff Will Bridge the Gap by Selling the Product Being Sold by the Defendants

Given the fact that Plaintiff and Defendants are selling identical real estate services this factor

---

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

weighs in favor of likelihood of confusion

### 6.   Defendants' Good Faith in Adopting the Mark

Defendants have acted fraudulently and in bad faith in their attempts to adopt Plaintiff's marks. In addition to the fact that Defendants had constructive knowledge of Plaintiff's rights because Plaintiff's mark is federally registered, Defendants have also known of Plaintiff's rights since their failed attempt to register VANTONE as their own trademark. As an end round to the denial of their application, Defendants instead registered Chinese language marks incorporating the Chinese translation of VANTONE and, rather than honestly provide the translation ("Vantone") to the USPTO, declared only a misleading transliteration of the Chinese Character mark and a false "meaning."

Even more blatantly, Defendants submitted, under penalty of perjury, fraudulent specimens to the USPTO to establish their "use" of the marks. It appears that Defendants will do anything they feel necessary–legal or not–to usurp the mark. Defendants' bad faith therefore weighs in favor of a likelihood of confusion.

### 7.   Quality of the Defendants' Product

Plaintiff has no information regarding the quality of Defendants' real estate services. However, given Defendants' unethical behavior thus far with regards to Plaintiff's trademarks, it can be inferred that Defendants are likely to behave in a similar unethical manner in their real estate transactions.  This factor thus weighs in favor of a likelihood of confusion.

### 8.   Sophistication of the Products

Real estate and financial services are admittedly more sophisticated and consumers may therefore take more care in choosing from whom to purchase these services.  However, given the high similarity between Plaintiff's marks and those marks Defendants are using, the fact that Plaintiff and Defendants both provide identical real estate services, and Defendants' bad faith and fraudulent actions thus far, this factor does not outweigh the high likelihood of confusion.

**V.      CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment must be denied.

Respectfully Submitted,

DATED:        May 4, 2015                    **W I R T Z  L A W A P C**


                                             By:      /s/ Richard M. Wirtz
                                                      Richard M. Wirtz
                                                      Attorney for Plaintiff