UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

THE VANTONE GROUP LIMITED LIABILITY
CO.,

            Plaintiff,

    -v-                                  No.  13CV7639-LTS-MHD

YANGPU NGT INDUSTRIAL CO., LTD., et al.,

            Defendants.

------------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

         Defendants Vantone Holdings Company, Ltd. ("Holdings Co."), Beijing Vantone

Real Estate Co. ("Beijing Vantone") and Feng Lun (collectively, the "Moving Defendants")

move to dismiss the complaint of Plaintiff Vantone Group Limited Liability Company

("Vantone Group" or "Plaintiff") pursuant to both Federal Rule of Civil Procedure 8, for failure

to satisfy the minimum federal pleading requirements, and Federal Rule of Civil Procedure

12(b)(6), for failure to state a claim upon which relief may be granted.  Plaintiff asserts eleven

causes of action in its complaint – ten of them against a total of 24 defendants – including

federal trademark infringement, false designation of origin, cybersquatting, cancellation of

federally registered marks, state law trademark infringement, state law injury to business

reputation and dilution, deceptive business practices, false advertising, use of name with intent to

deceive, unjust enrichment, and a request for declaratory relief.  The Court has jurisdiction of

this case under 28 U.S.C. § 1331.  The Court has carefully considered the parties' submissions

and, for the reasons stated below, denies the Moving Defendants' motion in its entirety.

<u>BACKGROUND</u>[1]

Plaintiff Vantone Group is the record owner of the federally registered trademark "The Vantone Group" for real estate brokerage services.  (SAC ¶ 39.)  This mark was registered on October 5, 2010. (<u>Id.</u>)  Plaintiff also owns the rights to the federally registered trademark "The Vantone Group" for financial and investment services, including management and brokerage of stocks, bonds, options commodities and other securities.  (<u>Id.</u> ¶ 40.)  This mark was registered on November 6, 2012.  (<u>Id.</u>)  Vantone Group also owns the New York State service mark "The Vantone Group" for real estate brokerage services.  (<u>Id.</u> ¶ 4.)  Plaintiff claims to have first used the name "The Vantone Group" in commerce in 2007.  (<u>Id.</u> ¶ 37.)  Because a large portion of the Vantone Group's clients are Chinese nationals, in 2012 Plaintiff began offering a Chinese version of its website, which included a Chinese character transliteration of "The Vantone Group" mark.  (<u>Id.</u> ¶ 38.)

In January of 2012, Plaintiff Vantone Group submitted its opposition to two federal trademark applications that had been made by non-moving defendant Yangpu NGT Industrial Co., Ltd. ("Yangpu"), both of which sought to register the name "Vantone" in connection with various services.  (<u>Id.</u> ¶ 43.)  In February of 2012, Yangpu abandoned these applications, and registration of the marks was subsequently refused.  (<u>Id.</u>)  On March 1, 2012, Plaintiff wrote Yangpu, demanding that it further abandon three pending applications for Chinese character marks, which Plaintiff alleged incorporated the Chinese transliteration of the registered "The Vantone Group" mark.  (<u>Id.</u> ¶ 44.)  Yangpu refused to do so, and the Chinese

---

[1]    The relevant factual history is drawn from the Second Amended Complaint ("SAC") in this action.  (<u>See</u> Docket Entry. No. 123.)

character marks were registered.  (Id. ¶ 45.)  When Plaintiff attempted to register the Chinese transliteration of its mark in May 2012, it was informed that this application would be denied due to the likelihood of confusion with Yangpu's Chinese character marks.  (SAC ¶ 46.)  On February 4, 2013, Plaintiff filed for cancellation of two of Yangpu's Chinese character marks; these applications are currently pending.  (Id. ¶ 47.)

According to the SAC, the defendants[2] have continued to use the allegedly infringing Chinese character marks, as well marks that are "confusingly similar" to the Plaintiff's English "Vantone Group" marks.  (Id. ¶ 48.)  Specifically, the SAC asserts that these marks have been used in connection with real estate and financial services being offered in New York City, including  "the China Center project," which is to be a new tenant at the rebuilt World Trade Center site.  (Id.)  The SAC alleges several additional acts undertaken either by Yangpu or the more amorphous "defendants," including attempts to register other marks incorporating the infringing Chinese characters (id. ¶ 49), registration of several web domains that incorporate a portion of the Plaintiff's English language mark (id. ¶ 50), and inclusion of a link to the Plaintiff's website on the vantone.com site (id. ¶ 51).

The SAC further alleges, on information and belief, that several of the Defendants – including the three Moving Defendants – are alter egos of one another.  For instance, Plaintiff alleges that Defendant Vantone Holdings Co. is a Chinese company that is also "the head of the 'Vantone' entity/joint venture which is structured as a network of shell companies and operates as one entity."  (Id. ¶ 12)  With regard to Defendant Beijing Vantone, the SAC alleges that it is an "affiliated, related or subsidiary company of one or more of the other Defendants" that has

---

[2]     The SAC consistently fails to specify the defendants to which it refers, or if it means to refer to all 24 of those named.

directly and contributorily infringed on the Plaintiff's "The Vantone Group" mark, in part by

"direct[ing] all activities of all affiliates" in the United States on behalf of Holdings Co.  (SAC ¶

20.)  The SAC alleges that Defendant Fen Lung is the chairman of Defendant Holdings Co., that

he has "controlled and directed each of the Defendants," and that he is the "moving, active,

conscious force behind and the principal architect of the infringing acts alleged . . . and is aiding

and abetting the infringement of" the Plaintiff's mark.  (Id. ¶ 33.)

Plaintiff filed its First Amended Complaint in this action on November 12, 2013.

(See Docket Entry No. 5.)  The Moving Defendants moved to dismiss that complaint on grounds

similar to those asserted in this motion.  (See Docket Entry No. 113.)  Plaintiff then requested

leave to file the Second Amended Complaint, which this Court granted, and the Second

Amended Complaint was filed on September 9, 2014, mooting the Moving Defendants' prior

motion to dismiss.  (See Docket Entry Nos. 121-23.)  The instant motion was filed on September

23, 2014.  (See Docket Entry. No. 125.)

Plaintiff's Claims

Plaintiff asserts eleven claims in the SAC, including federal trademark

infringement, false designation of origin, cybersquatting, state trademark infringement, state law

injury to business reputation and dilution, deceptive business practices, false advertising, use of

name with intent to deceive, unjust enrichment, and a request for declaratory relief.  Each of

Plaintiff's claims, with the exception of one for cancellation of two registered trademarks, is

asserted collectively against the 24 defendants.  (See generally SAC.)  The claims are largely

predicated on actions allegedly taken by Yangpu, although the SAC includes factual allegations

that touch specifically on the acts of the Moving Defendants.  (See id.)  The Plaintiff's briefing

elucidates its belief that Holdings Co.'s responsibility rests largely on a theory of alter-ego liability; that Beijing Vantone is liable directly, contributorily and on the basis of alter-ego liability; and that Feng Lun is liable both directly and as the director and sole shareholder of a number of the defendant companies.

DISCUSSION

Federal Rule of Civil Procedure 8

The Moving Defendants first contend that Plaintiff's Second Amended Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 8 for failing to provide fair notice of the grounds upon which the claims alleged are based. Rule 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has elaborated on this requirement, holding that a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Such a complaint "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A "formulaic recitation of the elements of a cause of action will not do," and merely offering "naked assertion[s] devoid of further factual enhancement" will not satisfy Rule 8's requirements. Id. at 678 (internal quotation marks and citations omitted). The purpose of this requirement is to "provide fair notice of the claims and to enable the adverse party to answer the complaint and prepare for trial." Strunk v. U.S. House of Representatives, 68 F. App'x 233, 235 (2d Cir. 2003). A complaint fails to meet the Rule 8 requirements when it is "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised."

Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988).

   The Moving Defendants rest principally on the argument that the Plaintiff has engaged in impermissible "group pleading" and in doing so has failed to provide any of the defendants with notice of the relevant claims against them.  In support of this argument, the Moving Defendants cite several cases in which courts have dismissed complaints that impermissibly lumped together defendants in a manner that failed to put them on notice of the relevant claims.  (See Moving Defendants' Memorandum of Law, Docket Entry No. 126, at pp. 8-9.)  However, the cases cited do not go so far as to stand for the proposition that the Moving Defendants would hope: that "group pleading" can never satisfy federal pleading standards.  The Second Circuit has held that the "key to Rule 8(a)'s requirements is whether adequate notice is given," and that "fair notice" is "that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so that it may be assigned the proper form of trial."  Wydner v. McMahon, 360 F.3d 73, 79 (2d Cir. 2004) (internal quotation marks and citations omitted).  Rule 8 "does not demand that a complaint be a model of clarity" so long as it provides "fair notice of what the plaintiff's claim is and the ground upon which it rests."  Atuahene v. City of Hartford, 10 F. App'x. 33 (2d Cir. 2001) (internal quotation marks and citation omitted).  Further, courts within this Circuit have held that "[n]othing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant."  Hudak v. Berkley Group, Inc., No. 13CV0089-WWE, 2014 WL 354676, at *4 (D. Conn., Jan. 23, 2014).

   It is true that, with regard to ten of the eleven claims asserted in the SAC, the Plaintiff refers to all 24 defendants collectively.  It is also true that this technique muddles the clarity of the allegations contained within the SAC, particularly with regard to those asserted

against defendants who cannot easily be linked with the Chinese companies and their American counterparts.  However, these deficiencies do not rise to the level of a Rule 8 violation.  The Second Circuit has found dismissal appropriate pursuant to Rule 8 when a complaint is "unintelligible" and fails to "explain[] what conduct constituted the violations, which defendants violated which statutes . . . or how the alleged violations harmed [the plaintiff]."  Strunk, 68 F. App'x at 235.  Here, at the very least, the SAC gives the defendants notice of the claims asserted against them for various trademark-related infractions.  The SAC puts all defendants on notice that Plaintiff's claims arise from the allegedly impermissible usage of the Vantone mark and, therefore, the Moving Defendants can readily identify the nature of the case.  In Anwar v. Fairfield Greenwich Ltd., Judge Marrero declined to dismiss a complaint on Rule 8 grounds on the basis of group pleading, finding that the complaint sufficiently distinguished the conduct of each of the defendants.  See 728 F. Supp. 2d 372, 422 (S.D.N.Y. 2010).  Although it is far from precise, the SAC does make factual allegations that distinguish between the conduct of the Moving Defendants, listing specific actions taken by each of them.  (See generally SAC.)

Similarly, the court in Hudak refused to dismiss a complaint that alleged that "two defendants acted jointly in violation of the TCPA," noting that "[p]rior to discovery, plaintiff need not explain the details of each defendant's role in the planning, funding, and executing [of] defendant's alleged joint [] scheme.  Nothing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant."  2014 WL 354676, at *4.  Here, the SAC alleges joint activity amongst the Moving Defendants; it need not elaborate extensively on the details with regard to each defendant to comply with Rule 8.  The test of Rule 8 pleading sufficiency is simply whether Defendants have received adequate notice of the claims.  Wydner, 360 F.3d at 79.  Because the

Court finds that the SAC sufficiently provides the Moving Defendants with notice of the claims asserted against them, there is no basis for dismissal pursuant to Rule 8, and the Court denies this portion of the Moving Defendants' motion.

Federal Rule of Civil Procedure 12(b)(6)

The Moving Defendants also move to dismiss the SAC on the basis of its failure to state a claim pursuant to Rule 12(b)(6).[3]  When deciding a Rule 12(b)(6) motion to dismiss a complaint for failure to state a claim, the Court assumes the truth of facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff.  See Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  A pleading that offers "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (internal citations omitted).  If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  Twombly, 550 U.S. at 570.

To successfully make out a claim for infringement under the Lanham Act, a plaintiff must allege that it holds a mark that is "valid [and] entitled to protection."  77388

---

[3]     Although the Defendants move to dismiss the entire SAC, they argue only the insufficiency of the SAC's claims with regard to Plaintiff's trademark infringement claims.  Accordingly, the Court addresses only those claims in this Memorandum Opinion and Order.

Ontario Ltd. v. Lencore Acoustics Corp., 105 F. Supp. 2d 56, 66 n.4 (E.D.N.Y. 2000).  Plaintiff

must then plead facts demonstrating "the unauthorized use by defendants of plaintiffs' marks in

a manner likely to cause consumer confusion."  C & L Intern. Trading Inc. v. American Tibetan

Health Institute, Inc., No. 13CV2638-LLS, 2013 WL 6086907, at *4 (S.D.N.Y. Nov. 19, 2013).

The same requirements apply to Plaintiff's state law infringement claims, as the standards for

trademark infringement under New York common law are substantively identical to those under

the Lanham Act.  See American Tibetan, 2013 WL 6086907, at *4 ("The requirements of

plaintiffs' trademark infringement claim brought under New York State law . . . are

interchangeable with the requirements of the Lanham Act.").


### Defendants Beijing Vantone and Feng Lun[4]

The Moving Defendants argue that the SAC has not alleged sufficient facts with

regard to either Beijing Vantone or Feng Lun to frame a judicially cognizable cause of action for

trademark infringement.  This contention is incorrect.  Plaintiff has pleaded that it is the record

owner of the federally registered mark "The Vantone Group" for real estate brokerage services,

as well as for financial and investment services.  (SAC ¶¶ 1-2.)  Plaintiff has also pleaded that it

is the record owner of the New York State Service Mark "The Vantone Group" for real estate

---

[4]     The Moving Defendants argue that both Beijing Vantone and Feng Lun are entitled to
invoke the affirmative defense of fair use.  "An affirmative defense may be raised by a
pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary
judgment procedure, if the defense appears on the face of the complaint."  Pani v.
Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir. 1998).  To establish a fair
use affirmative defense in a trademark action, a party must demonstrate that use of the
mark was made: (1) other than as a mark; (2) in a descriptive sense; and (3) in good
faith.  See JA Apparel Corp. v. Abboud, 568 F.3d 390, 400 (2d Cir. 2009).  None of
the three elements of this affirmative defense is apparent on the face of the Second
Amended Complaint.  Thus, the Moving Defendants have failed to demonstrate that
dismissal on fair use grounds is proper.

brokerage services.  (SAC ¶ 4.)  The Lanham Act provides that registration of a mark is

"conclusive evidence of the validity of the registered mark and of the registration of the mark, of

the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered

mark in commerce."  15 U.S.C.S. § 1115 (LexisNexis 2006).  Therefore, Plaintiff has clearly

alleged facts sufficient to establish the first prong of its trademark infringement claim.

       Plaintiff has also alleged facts relating to both Beijing Vantone and Feng Lun

that, if taken as true, demonstrate that their actions are likely to cause confusion with respect to

the Plaintiff's mark.  With regard to Beijing Vantone, Plaintiff has alleged that the company has

"conducted presentations and produced and distributed brochures advertising and promoting the

China Center project under the 'Vantone' mark."  (SAC ¶ 20.)  Plaintiff has also pleaded that

Beijing Vantone has paid for tenant improvements at the China Center's World Trade Center

site.  (Id.)  Furthermore, Plaintiff asserts that Beijing Vantone admitted in its 2012 annual report

that the Chinese characters contained in Yangpu's allegedly infringing trademark applications

"translate and transliterate to 'Vantone' in English."  (Id. ¶ 55.)  Plaintiff has also alleged that

Beijing Vantone operates in the same general industry that it does; such facts may support an

inference of likelihood of confusion.[5]  (Id. ¶ 20)  See Heptagon Creations, Ltd. v. Core Group

Marketing LLC, No. 11CV1794-LTS, 2011 WL 6600267, at *8 (S.D.N.Y. Dec. 22, 2011).  By

alleging that Beijing Vantone has used a mark identical to the registered marks that Plaintiff

---

[5]     In their Reply Memorandum, Moving Defendants argue that, because Plaintiff has not
alleged precisely enough that the parties are industry competitors, there can be no
inference of confusion, and thus no trademark infringement claim can be made out.
Aside from the fact that Moving Defendants improperly raise this argument for the
first time in their reply briefing (United States v. Letscher, 83 F. Supp. 2d 367, 377
(S.D.N.Y.1999) ("arguments raised in reply papers are not properly a basis for
granting relief")), the Court is not convinced that the Moving Defendants have
sufficiently dispelled any possible basis of confusion.

owns in connection with the services it offers, Plaintiff has successfully pleaded facts that demonstrate the potential for consumer confusion.  Plaintiff has thus pleaded both elements of its trademark infringement claims sufficiently with respect to Beijing Vantone, and the Court denies Beijing Vantone's motion to dismiss these claims pursuant to Rule 12(b)(6).

Plaintiff also has alleged facts that demonstrate Defendant Feng Lun's personal involvement in potentially infringing activities.  The SAC states that Feng Lun was "the signatory on all of Defendant Yangpu's trademark applications," that he has given "interviews advertising and promoting the China Center project in connection with the 'Vantone' mark . . . in which he propagates the belief that . . . the China Center is a 'Vantone' project," and that he "signed a mass mailing letter advertising and promoting the China Center project in connection with the 'Vantone' mark."  (SAC ¶ 33.)  Each of these allegations indicates Feng Lun's use of the Plaintiff's registered mark in a manner that could potentially create confusion within a common industry.  The Court finds that Plaintiff has successfully pleaded facts establishing both elements of its trademark infringement claims with regard to Feng Lun, and denies Feng Lun's motion to dismiss pursuant to Rule 12(b)(6).


Defendant Holdings Co.

The parties' briefs address only Plaintiff's alter-ego theory of liability against Holdings Co.  To prove alter-ego liability, a plaintiff must pierce the corporate veil, which requires "a showing that: (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury."  Tommy Lee Handbags Mfg. Ltd. v. 1948 Corp., 971 F. Supp. 2d 368, 376 (S.D.N.Y. 2013) (internal quotation marks and citation

omitted).  See also Gorrill v. Icelandair/Flugleidir, 761 F.2d 847, 853 (2d Cir. 1985) (holding that to pierce the corporate veil, a plaintiff must show complete control and that "such control [has] been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights.").  Satisfying this test requires more than conclusory allegations of control; the party seeking to establish alter ego liability must plead sufficient "factual allegations to establish that [the parent]'s domination of [the alleged alter ego] was the means by which a wrong was done to plaintiff."  Ross Products Div. Abbott Laboratories Inc. v. Saper, No. 06CV3264-LDW, 2007 WL 1288125, at *6 (E.D.N.Y. Apr. 26, 2007) (adopting Report and Recommendation of Orenstein, M.J.).  "[A] claim sufficient to overcome the presumption of separateness afforded to related corporations . . . is not established by the bare allegation that one corporation dominated and controlled another."  Kiobel v. Royal Dutch Petroleum Co., 621 F.3d 111, 195 (2d Cir. 2010) (internal quotation marks and citations omitted).

Courts consider a number of factors in deciding whether one company has exercised the requisite domination over another to pierce the corporate veil, including: whether a parent corporation owns all or most of the subsidiary; whether the parent and subsidiary share officers and directors; whether the parent finances the subsidiary; whether the subsidiary is inadequately capitalized; whether the parent pays the salaries and expenses of employees of the subsidiary; whether the subsidiary has no business except with the parent; whether the directors or executives of the subsidiary receive their orders from the parent corporation in the latter's interest; and whether the formal legal requirements of the subsidiary's governance are observed. See Labor Union of Pico Korea, Ltd. v. Pico Products, Inc., No. 90CV0774-TJM, 1991 WL 299121, at *6 (N.D.N.Y. Dec. 23, 1991).  Here, the SAC contains allegations that align with

many of these factors, including that the defendants "have substantially identical management, the same business purpose . . . operate as one entity, utilize the same equipment and office space, target the same customers in a unified effort under the 'Vantone' mark, are supervised by Vantone Holdings Co., Ltd., through Beijing Vantone Real Estate Co., Ltd., and are generally wholly owned by each other.  Ownership and employees of each shell entity shifts freely between other shell entities . . . [the entities also] do not follow corporate formalities, are inadequately capitalized, and have their expenses paid for by" either Holdings Co. or Beijing Vantone.  (SAC ¶ 52.)  The SAC further alleges that Holdings Co. serves a supervisory function, that it is the "head" of the joint entity, that it is the sole shareholder of at least one other defendant, that it commingles funds with other defendants, that it pays expenses for other defendants, and that it sends management employees to supervise other defendants.  (Id. ¶¶ 12, 52.)

However, Plaintiff fails to satisfy the second element necessary to pierce the corporate veil: demonstrating that Holdings Co. abused the corporate form in order to commit a wrong against it.  Plaintiff must ultimately prove both prongs of the test to succeed and  "[w]here the challenged complaint lacks this causative element – i.e., the use of domination to cause the injury, it should result in the dismissal of the corporate veil-piercing allegation."  CSX Transp., Inc. v. Filco Carting Corp., No. 10CV1055-NGG, 2011 WL 2713487, at *3 (E.D.N.Y. July 11, 2011) (internal quotation marks and citation omitted).  The facts pleaded must be sufficient to indicate that the parent's domination of the alleged alter ego was the "means by which" a wrong was committed against the plaintiff.  Ross Products, 2007 WL 1288125, at *6.  See, e.g., Tommy Lee Handbags, 971 F. Supp. 2d at 376-77 (finding causative link in fact that an alter-ego company was formed "precisely to evade . . . creditors," and allowing for piercing of the

corporate veil.)  Although Plaintiff pleads facts that suggest Holdings Co.'s domination of several of its co-defendants, the SAC contains no facts tending to show that Holdings Co. made use of this domination in order to commit a wrong or perpetrate a fraud against the Plaintiff. Without such a causative link, Plaintiff fails to plead facts sufficient to support alter-ego liability.

Despite the insufficiency of Plaintiff's argument regarding Holdings Co.'s alter-ego liability, the Moving Defendants have failed to demonstrate that the SAC should be dismissed as against Holdings Co.  The Moving Defendants have done nothing to address the ten specific claims asserted against Holdings Co., other than to repeatedly state in conclusory fashion that the SAC provides no grounds for entitlement to relief on any of the numerous causes of action alleged.  The Moving Defendants fail to make either a legal or factual showing addressing the insufficiency of any of the causes of action asserted against Holdings Co. in the SAC, and it is not the role of this Court to divine these arguments on behalf of the Moving Defendants.  The Court thus cannot conclude that the Moving Defendants have carried their burden of demonstrating that dismissal of the SAC pursuant to Rule 12(b)(6) is appropriate with respect to Holdings Co.

C<small>ONCLUSION</small>

For the foregoing reasons, the Moving Defendants' motion to dismiss the Second

Amended Complaint pursuant to Federal Rules of Civil Procedure 8 and 12(b)(6) is denied in its

entirety.

This Memorandum Opinion and Order resolves docket entry number 125.

SO ORDERED.


Dated: New York, New York
      July 2, 2015

                                                             /s/ Laura Taylor Swain
                                          LAURA TAYLOR SWAIN
                                          United States District Judge