UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

THE VANTONE GROUP LIMITED LIABILITY
CO.,

        Plaintiff,

 -v-                                                      No. 13CV7639-LTS-FM

YANGPU NGT INDUSTRIAL CO., LTD., et al.,

        Defendants.

-------------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

        Defendant Yangpu NGT Industrial Co. ("Yangpu") moves, pursuant to Federal Rules of Civil Procedure 12(b)(5) and 4(m), for dismissal of the Second Amended Complaint (Docket Entry No. 123 ("SAC")) of Plaintiff The Vantone Group LLC ("Vantone") on the dual bases of insufficient and untimely service.[1] The Court has jurisdiction of this case pursuant to 28 U.S.C. § 1331.

        The Court has carefully considered all of the parties' submissions. For the reasons stated below, the Court grants Yangpu's motions to dismiss, without prejudice to: (1) renewal of Hague Convention service efforts after good faith efforts to ascertain Yangpu's address in China; and/or (2) initiation of motion practice seeking authorization of an alternative method of service

---

[1] As explained infra, Yangpu has filed two motions to dismiss the Complaint. (See Docket Entry Nos. 210 and 227). This Memorandum Opinion and Order addresses both.

BACKGROUND[2]

On October 29, 2013, Plaintiff Vantone filed the initial complaint in this action, asserting numerous causes of action pursuant to the Lanham Act and New York General Business Law, as well as common law claims of unfair competition and unjust enrichment, against Defendant Yangpu and several affiliated entities. (See Docket Entry No. 1.) Plaintiff filed its First Amended Complaint on November 12, 2013 (Docket Entry No. 5), and thereafter filed a Second Amended Complaint on September 9, 2014. (Docket Entry No. 123.)

Thirteen of the remaining twenty-two named defendants in this action have been served and have answered. Vantone represents[3] that, in attempting to serve Yangpu in this action, it initially requested that Yangpu's prior counsel, Jack Griem, accept service on Yangpu's behalf, but this request was rebuffed. (See Docket Entry No. 217, Declaration of Erin K. Barns ¶ 4.) Vantone also sent Yangpu's prior counsel a request for a waiver of service pursuant to Federal Rule of Civil Procedure 4, but counsel refused to sign this waiver. (Declaration of Erin K. Barns ¶ 6.) Vantone thereafter attempted to serve Yangpu pursuant to the terms of the Hague Convention, using a Chinese address listed on the trademark applications that are challenged in this action. (Id. ¶ 4.)[4] Several months later, the service package was returned as undeliverable. (Id., Ex. 5.)

On July 23, 2015, Vantone filed a certificate of service with this Court, purporting

---

[2] In light of the prior motion practice in this case, the Court assumes the parties' familiarity with the underlying facts, and provides only a brief summary of the procedural history relevant to this motion practice.

[3] Yangpu does not contest Vantone's proffers with respect to efforts made to effectuate service.

[4] The Court notes that Vantone has made no proffer indicating that it made any other efforts to ascertain a service address for Yangpu.

to demonstrate that Defendant Yangpu had been effectively served pursuant to 15 U.S.C. § 1051(e) ("Section 1051(e)") through service of the SAC on the General Clerk of the United States Patent and Trademark Office.  (Docket Entry No. 206.)  On August 31, 2015, Yangpu filed its first motion to dismiss the SAC, arguing that Vantone's purported service was both insufficient and untimely and suggesting that Plaintiff's current attorneys would have been the appropriate addressees of service pursuant to Section 1051(e).  (Docket Entry No. 210.)  Vantone thereafter attempted to effectuate Section 1051(e) service by serving a copy of the SAC on Yangpu's current attorneys, Dacheng Law Offices LLP.  (See Docket Entry No. 230.)  On October 30, 2015, Yangpu filed its second motion to dismiss, arguing that Section 1051(e) is not an appropriate vehicle for service of process in this action, and that the SAC should be dismissed for failure to serve Yangpu within the time frame prescribed by Federal Rule of Civil Procedure 4(m).  (Docket Entry No. 227.)

DISCUSSION

Federal Rules of Civil Procedure 12(b)(5) and 4(m)

Federal Rule of Civil Procedure 12(b)(5) permits a party to move for dismissal of a complaint due to insufficient service of process.  See Fed. R. Civ. P. 12(b)(5).  "Once a defendant challenges the sufficiency of service of process, the burden of proof is on the plaintiff to show the adequacy of service."  Howard v. Klynveld Peat Marwick Goerdeler, 977 F. Supp. 654, 658 (S.D.N.Y. 1997), affirmed, 173 F.3d 844 (2d Cir.1999) (internal quotation marks and citations omitted).  "In deciding a Rule 12(b)(5) motion, a Court must look to Rule 4, which governs the content, issuance, and service of a summons."  DeLuca v. AccessIT Group, Inc., 695 F. Supp. 2d 54, 64 (S.D.N.Y. 2010).  Rule 4 provides, in pertinent part, that a corporation may be

served in the United States by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process" or "at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." Fed. R. Civ. P. 4(h). Rule 4(f) provides for service on a foreign defendant by "any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Fed R. Civ. P. 4(f).

As to the timing of service, Rule 4(m) sets forth a general rule that, "[i]f a defendant is not served within 90 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time," unless the plaintiff is able to demonstrate good cause for the failure to serve, but also provides that "[t]his subdivision (m) does not apply to service in a foreign country." See Fed. R. Civ. P. 4(m).[5] Where the Rule 4(m) time limit applies and service is not effectuated in a timely manner, "if the plaintiff can show good cause for the failure to timely effect service, the court shall extend the time for service for an appropriate period . . . The plaintiff bears the burden of proof in showing that it had good cause in not timely serving the defendant." AIG Managed Market Neutral Fund v. Askin Capital Management, L.P., 197 F.R.D. 104, 108 (S.D.N.Y. 2000). Good cause is measured against the plaintiff's reasonable efforts to effect service and the prejudice to the defendant from the delay, and the court should look to whether the plaintiff was diligent in making reasonable efforts to

---

[5] A 2015 amendment to Rule 4(m) reduced the presumptive time for serving a defendant from 120 days to 90 days.

effect service.[6]  See id.

Sufficiency of Service Pursuant to 15 U.S.C. § 1051(e)

Section 1051(e) of the Lanham Act provides that:

If the applicant is not domiciled in the United States the applicant may designate, by a document filed in the United States Patent and Trademark Office, the name and address of a person resident in the United States on whom may be served notices or process in proceedings affecting the mark. Such notices or process may be served upon the person so designated by leaving with that person or mailing to that person a copy thereof at the address specified in the last designation so filed. If the person so designated cannot be found at the address given in the last designation, or <u>if the registrant does not designate by a document filed in the United States Patent and Trademark Office the name and address of a person resident in the United States on whom may be served notices or process in proceedings affecting the mark, such notices or process may be served on the Director</u>.

15 U.S.C.S. § 1051(e) (LexisNexis 2015) (emphasis added).  In its opening papers on its first motion, Vantone expressed skepticism as to the availability of the Section 1051(e) service provision for effectuation of service of process in judicial proceedings, while at the same time arguing that Plaintiff should not have directed its Section 1051(e) service attempt to the Clerk of the USPTO because Yangpu's counsel had been identified as counsel of record in the trademark cancellation proceedings before the PTO concerning Yangpu.  Plaintiff thereafter promptly served the SAC on Yangpu's attorneys.  In its reply brief on the first motion (Docket Entry No.

---

[6]    In determining whether a discretionary extension is appropriate in the absence of good cause, a court considers the following factors: (1) whether any applicable statutes of limitations would bar the action once refiled; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether defendant attempted to conceal the defect in service; and (4) whether defendant would be prejudiced by extending plaintiff's time for service.  See Hertzner v. U.S. Postal Serv., No. 05CV2371-DRH, 2007 WL 869585, at *7 (E.D.N.Y. Mar. 20, 2007).

225), and as its central argument in the second motion, Yangpu takes the position that service in a judicial proceeding cannot properly be effectuated under Section 1051(e).

Asserting correctly that there is no binding Second Circuit authority authorizing such service in judicial proceedings, Yangpu relies principally on the reasoned opinion of the United States District Court for the Eastern District of California in E. & J. Gallo Winery v. Cantine Rallo, S.P.A., 430 F. Supp. 2d 1064 (E.D. Cal. 2005), in arguing that Plaintiff's use of Section 1051(e) was ineffective.  The E. & J. Gallo court, recognizing that Section 1051(e)'s reference to "proceedings affecting the mark" is ambiguous, undertook a painstaking review of the limited and ambiguous available legislative history and concluded, in light of the numerous statutory provisions in which Congress has explicitly authorized methods of service for use in judicial proceedings, that the absence of such an explicit provision in Section 1051(e), which appears in a portion of the Lanham Act that relates to registration proceedings, indicates that the procedures set forth in Section 1051(e) are not authorized methods for service of process in judicial proceedings.  See 430 F. Supp. 2d 1064.  Other district courts have reached the same conclusion.  See, e.g., LA Gem & Jewelry Design, Inc. v. Gold Star Jewellery PVT Ltd., No. CV14-4807-DSF, 2014 WL 10401936, at *3 (C.D. Cal. Aug. 11, 2014) ("The statute is unclear as to whether [the term "proceedings affecting the mark"] refers only to administrative USPTO proceedings, or whether it more broadly encompasses federal civil proceedings such as this one. A handful of district courts have addressed this issue, and they are split . . . Although this issue is a close call, the Court is particularly persuaded by the court's reasoning in E. & J. Gallo Winery, which included a lengthy and thorough analysis of case law, legislative history, and related statutes."); see also Sunshine Distrib. v. Sports Auth. Mich, Inc., 157 F. Supp. 2d 779, 787 (E.D. Mich. 2001); Outboard Marine Corp. v. Chantiers Beneteau, 687 F. Supp. 366 (N.D. Ill. 1988).

While a judge of this Court stated in a 1997 decision that Section 1051(e) service sufficed to address jurisdictional requirements (see Havana Club Holding, S.A. v. Galleon S.A., 974 F. Supp. 302 (1997)), that opinion engaged in no analysis of the issue and is not a persuasive precedent.  Vantone's citation of the Northern District of Illinois' decision in V&S Vin and Spirit Aktiebolag v. Carcovia Brands, Inc., 212 F. Supp. 2d 852 (N.D. Ill. 2002), is also unpersuasive.  The V&S Vin court relied on legislative history that is, as explained in E. & J. Gallo, at best ambiguous.  Vantone thus has failed to carry its burden of demonstrating that service pursuant to 15 U.S.C. § 1051(e), whether by service of the SAC on the PTO or on Dacheng, was effective to establish jurisdiction over Yangpu for the purposes of these district court proceedings.

Rule 4(m) – Timeliness of Service

In light of the Court's conclusion that Vantone's domestic service attempts pursuant to Section 1051(e) were ineffective, it is unnecessary to address Yangpu's arguments that the SAC should be dismissed because that service was accomplished long after the then-120-day service window under Rule 4(m) had closed.

Yangpu also argues that Rule 4(m) governs service outside the country, such that Vantone's failure thus far to accomplish service under the Hague Convention requires dismissal of the SAC.  Yangpu's argument in this respect is contrary to the express language of the rule, which exempts foreign service from the stated time limit.

While Vantone asserts that it needs no extension of time in which to serve Yangpu because its Section 1051(e) service was sufficient and there is no express time limit for service abroad, the Court finds it appropriate and in the interest of justice to consider whether Vantone should be accorded additional time to seek to effectuate service even though this case is

now more than two years old.  The Court finds that a brief extension of time to renew the Hague Convention service attempt or to make a properly supported motion for authorization of substituted service is warranted.

Rule 4(m) provides, and the Second Circuit has recognized, that where "the plaintiff shows good cause for the failure [to timely serve a defendant], the court must extend the time for service for an appropriate period."  See Fed. R. Civ. P. 4(m); see also Counter Terrorist Group U.S. v. New York Magazine, 374 F. App'x 233, 234 (2d Cir. 2010).  "The following two factors are relevant in a Court's evaluation of good cause: (1) the reasonableness and diligence of plaintiff's efforts to serve; and (2) the prejudice to defendants from the delay."  Husowitz v. Am. Postal Workers Union, 190 F.R.D. 53, 57 (E.D.N.Y. 1999).  See also Novak v. National Broadcasting Co., Inc., 131 F.R.D. 44, 45 (S.D.N.Y. 1990) ("A determination of 'good cause' may rest on several factors, including whether the plaintiff made efforts to effect service or requested an extension of time to serve . . . whether the failure to serve was the result of inadvertence and . . . whether the defendant has been prejudiced.").

The Court finds that Vantone was sufficiently diligent in its attempts to serve Yangpu.  Vantone's efforts include its initial attempt to secure a waiver of service from Yangpu's prior counsel or, in the alternative, to have prior counsel accept service on Yangpu's behalf, as well as its attempt to serve Yangpu under the terms of the Hague Convention prior to attempting service pursuant to Section 1051(e).  The Court further finds that, given the sparse and unsettled case law regarding service pursuant to Section 1051(e), Vantone's attempts to serve Yangpu under that provision were neither frivolous nor in bad faith.  Finally, the Court finds that Yangpu will not be unduly prejudiced by the granting of an extension of time to serve to Vantone, as Yangpu is clearly aware of the litigation and its affiliates have actively been

defending the case. In light of these factors, the Court finds that Vantone has demonstrated good cause for its failure to serve Yangpu, warranting a brief extension of time for Vantone to renew its Hague Convention service attempt or to move for authorization of substituted service.

## CONCLUSION

For the reasons explained above, Yangpu's motions to dismiss the Second Amended Complaint for insufficient service are granted, without prejudice to Vantone's: (1) renewal of Hague Convention service efforts, within 45 days from the date of this order and after good faith efforts to ascertain Yangpu's address in China; and/or (2) initiation of motion practice within 45 days from the date hereof, seeking authorization of an alternative method of service, with any such motion practice to include a demonstration of diligent but unsuccessful efforts to ascertain Yangpu's address in China and a demonstration of good cause for authorization of the proposed alternative service method. The Second Amended Complaint will be dismissed as against Yangpu with prejudice should Vantone fail to take timely action consistent with this Memorandum Order and Opinion.

This Memorandum Opinion and Order resolves Docket Entry Numbers 210 and 227.

SO ORDERED.

Dated: New York, New York
       July 15, 2016

                                                          /s/ Laura Taylor Swain
                                                  LAURA TAYLOR SWAIN
                                                  United States District Judge