UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

THE VANTONE GROUP LIMITED
LIABILITY CO.,

        Plaintiff,

    -v-                              No.  13CV7639-LTS-FM

YANGPU NGT INDUSTRIAL CO., LTD., et al.,

        Defendants.

------------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

        Defendants Vantone Holdings Co., Ltd., China Center New York LLC, Vantone Property NY LLC, Vantone Residences LLC, Vamerica Fund LLC, Vantone US LLC n/k/a Vamerica LLC, Vantone U.S. Inc., Beijing Vantone Real Estate Co., Ltd. and Feng Lun (collectively, "Defendants") herein move for summary judgment, seeking: (1) dismissal of the Second Amended Complaint filed by Plaintiff The Vantone Group LLC ("Plaintiff" or "The Vantone Group"); (2) summary judgment on their counterclaim seeking cancellation of Plaintiff's US Patent and Trademark Office ("USPTO") and New York State registrations of the "Vantone" mark; and (3) summary judgment on their counterclaim for a declaration that Defendants are entitled to use "Vantone" as a mark and trade name due to their position as senior users of the mark.[1]  The Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and

---

[1]    Defendants' requests for cancellation of Plaintiff's registrations and for declaratory relief are asserted as counterclaims in the Answer, Counterclaims and Third Party Complaint filed by Vantone U.S., Inc., Vantone Property NY LLC, Vantone Residences LLC, Vamerica LLC f/k/a Vantone US LLC and China Center New York LLC.  (See Docket Entry No. 124.)

1367.

   The Court has considered all of the parties' submissions carefully and, for the reasons stated herein, Defendants' motion is denied in its entirety.

BACKGROUND[2]

   In light of the extensive prior motion practice in this case, the Court provides only a brief recitation of the pertinent factual background.

   "Vantone" is a name that has been adopted by a number of related China-based companies characterizing themselves as a conglomeration, which hold the equivalent of billions of U.S. dollars in assets in China and which have various subsidiaries operating within the United States.  (Pl. 56.1 St. ¶ 1.)  The Vantone entities based in the United States (the "Vantone US Defendants") include the China Center New York LLC, Vantone Property NY LLC, Vantone Residences LLC, Vamerica Fund LLC, Vantone US LLC n/k/a Vamerica LLC and Vantone U.S. Inc.[3]  (Id. ¶ 3.)  The China Center is the lessee of six upper floors of One World Trade Center in

---

[2]   The facts recited herein are undisputed unless otherwise indicated.  Facts recited as undisputed are identified as such in the parties' statements pursuant to S.D.N.Y. Local Civil Rule 56.1 or drawn from evidence as to which there is no non-conclusory contrary factual proffer.  Citations to the parties' respective Local Civil Rule 56.1 Statements ("Def. 56.1 St." or "Pl. 56.1 St.") incorporate by reference the parties' citations to underlying evidentiary submissions.  To the extent that Plaintiff's objections merely consist of characterizations of Defendants' Rule 56.1 Statement proffers as "irrelevant" or "vague," or offer legal argument without an evidentiary proffer as required by S.D.N.Y. Local Rule 56.1, the Court generally treats Defendants' properly-supported factual proffers as admitted.  (See generally Pl. 56.1 St.; S.D.N.Y. Local Rule 56.1(d) ("Each statement by the movant or opponent . . . including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible").)

[3]   China Center New York LLC is a Delaware entity authorized to operate in New York State with one member, Vamerica LLC, f/k/a Vantone US LLC.  (Pl. 56.1 St. ¶ 4.) Vamerica LLC likewise also has only one member, Vantone US, Inc.  (Id.) Vantone Holdings, Ltd. is the sole member of both Vantone Residences LLC and

New York City.  (Def. 56.1 St. ¶ 5.)  The China Center is meant to serve as a gateway for foreign companies interested in conducting business in the United States, as well as a venue for business, social and cultural exchange, event and office space, restaurants, and other such services.  (Id.) Defendants proffer, through the conclusory declaration of Vantone Holdings Co., Ltd. Vice Chairman Li Xu, that the "Vantone" name enjoys significant prestige and good will in both China and the United States, and that the China Center has been able to attract prospective clients due to its association with the Vantone name.  (See Def. 56.1 St. ¶¶ 6-9.)

Defendants assert that the Vantone US Defendants have been registered business entities in the United States since the 1990's, and further claim that the Vantone US Defendants' business activities and use of the "Vantone" mark in interstate commerce and as a trade name dates back to the 1990's.  (Def. 56.1 St. ¶¶ 10-11.)[4]  The domain name "Vantone.com" was registered by an employee of Yangpu NGT Industrial Co. Ltd. ("Yangpu")  – a part of the Vantone conglomeration – in 1996.  (Id. ¶ 12.)[5]  Defendants also assert that the Vantone US Defendants' business activities and use of the Vantone mark in interstate commerce and as a trade name continued into the 2000's.  (Id. ¶ 13.)  Defendants proffer media coverage within the United States – particularly New York – of Vantone's interest in developing the China Center at the World Trade Center as evidence of the use of Vantone as a trade name in 2005 and 2006.

<hr />

Vantone Properties LLC, each of which holds title to residential properties in New York City.  (Id.)  Vantone US, Inc. is owned by China-based Vantone entities.  (Id.)

[4]   Vantone USA Inc. and Vantone Corp. are not defendants in this action.  (See Docket Entry No. 123 (Second Amended Complaint); see also Pl. 56.1 St. ¶ 10.)

[5]   Defendant Yangpu has not yet been properly served in this action and is not a party to this motion.  (See Docket Entry No. 238.)  However, it is undisputed that Yangpu is part of the "conglomeration" of affiliated Vantone entities to which the moving Defendants belong.  (Def. 56.1 St. ¶ 12.)

(Pl. 56.1 St. ¶¶ 14-15.)[6]

On April 13, 2006, an article entitled "Tycoon of Chinese Real Estate is Leasing at Trade Center Site" was published in the New York Times. (Def. 56.1 St. ¶ 16.) The article referred to Vantone chairman Feng Lun as "one of China's biggest real estate tycoons" and made reference to "Feng's real estate company, the Vantone Group," noting his desire to "open in New York City what he calls a business and cultural 'China Center.'" (Id.) The article used the term "Vantone Group" at least five times. (Id.) That same evening, Leonardo Gianella ("Gianella") – owner of the Plaintiff Vantone Group – registered the domain name "VantoneGroup.com," as well as the domain names "VantoneGroup.net," VantoneGroup.info" and VantoneGroup.biz," on GoDaddy.com. (Id. ¶ 17.) Plaintiff claims that he never saw the April 13, 2006, New York Times article, that he selected the Vantone mark for purely personal reasons, and that he held an honest, good faith belief that he was entitled to registration of the Vantone mark as a senior user. (Pl. 56.1 St. ¶¶ 77-79.)

On April 18, 2007, Gianella filed articles of organization for plaintiff The Vantone Group LLC, and on January 8, 2008, The Vantone Group LLC became a licensed real estate brokerage. (Def. 56.1 St. ¶ 18.) On March 3, 2010, Gianella submitted an application to register the service mark "The Vantone Group" for "real estate brokerage" services, which later matured into federal service mark registration 3,856,724. (Id. ¶ 25.)[7] As part of the application,

---

[6] For the purposes of this motion practice, the Court treats these proffers as evidence of reportage of events that are addressed in the declaration of Li Xu.

[7] On the original registration application, Gianella listed himself as the "owner of the mark," and listed the registering "legal entity" type as a "limited liability company." (Def. 56.1 St. ¶ 26.) Plaintiff concedes that this was an error within the original application, but has proffered evidence that the error was corrected in an amended applications, wherein the name of the owner was eventually corrected to read "The Vantone Group LLC." (Pl. 56.1 St. ¶¶ 26, 74-76.)

Gianella represented that the mark was first used anywhere "[a]t least as early as 4/13/2006 "

and first used in commerce "[a]t least as early as 4/18/2007."  (Def. 56.1 St. ¶ 27.)[8]  Gianella also

declared, under penalty of perjury, that he believed himself to be the owner of the Vantone mark,

and that no other firm or corporation had a superior right to use the mark in commerce.  (Def.

56.1 St. ¶ 27; Pl. 56.1 St. ¶ 77.)[9]

       On March 8, 2010, Gianella registered the service mark "The Vantone Group" in

New York State, representing that the mark was first used in New York on April 27, 2007, and

that it was first used anywhere on April 13, 2006.  (Def. 56.1 St. ¶¶ 44-45.)  Gianella claims to

have used the mark in connection with soliciting right to sell agreements, obtaining leases,

locating rental apartments for clients, listing a condominium for sale and registration with

various websites used to advertise real estate services.  (See Pl. 56.1 St. ¶ 46; Docket Entry No.

193-3, Declaration of Leonardo Gianella ("Gianella Decl.") ¶ 5.)

       On September 4, 2013, Gianella sent an email to Chinese counsel for the China-

based Vantone companies, claiming that he valued the Vantone brand at "20 Million dollars"

and stating "[s]o that I am crystal clear we will not settle this for 'little money.'" (Def 56.1 St.

¶ 58.)  Gianella later confirmed that he had offered to sell the Vantone name for $20 million, a

number that he claims to have "kind of pulled . . . out of a hat."  (Def. 56.1 St. ¶ 59.)  Based on

---

[8]     Plaintiff claims that its first use of the Vantone Group mark in commerce occurred no later than May 22, 2006 (Pl. 56.1 St. ¶ 64), and that Plaintiff has made continuous, bona fide use of the mark in commerce ever since.  (Id. ¶ 65.) Defendants dispute both the timing and bona fides of the use.

[9]     On May 7, 2012, Gianella submitted an application ro register a service mark comprised of Chinese characters – which Gianella represented as translating to "The Vantone Group" in English – for real estate brokerage services.  (Def. 56.1 St. ¶¶ 38-39.)  That application remains suspended pending the resolution of the instant action.  (Id. ¶ 42.)

this email, Defendants claim that Gianella sought trademark registration solely for the purpose of

the instant lawsuit, in an attempt to profit from litigation against the Defendants.  (Id.)

        At the core of this dispute is the question of which party is properly recognized as

the senior user of the Vantone mark.  Both Plaintiff and Defendants claim priority in the Vantone

mark, and each party contests the legitimacy of the other's right to use of the mark as well as the

good faith of the other in adopting it.  Neither Plaintiff nor Defendants, however, have proffered

conclusive evidence in connection with the issues raised by this motion practice, leaving genuine

issues of material fact that ultimately must be resolved at trial.


## DISCUSSION

### Rule 56 Summary Judgment Standard

        Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary

judgment is to be granted in favor of a moving party where that party can demonstrate "that there

is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  Fed R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

A party that is unable to "make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial" will

not survive a Rule 56 motion.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  It is the

moving party's burden to demonstrate the absence of material issues of fact, and the court must

be able to find that, "'after drawing all reasonable inferences in favor of a non-movant, no

reasonable trier of fact could find in favor of that party.'"  Marvel Entertainment, Inc. v.

Kellytoy (USA), Inc., 769 F. Supp. 2d 520, 523 (S.D.N.Y. 2011) (quoting Heublein v. United

States, 996 F.2d 1455, 1461 (2d Cir. 1993)).  Moreover, "[o]n summary judgment, the Court

construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor

of the non-moving party . . . [and if] there is any evidence from which a reasonable inference

could be drawn in favor of the non-moving party on the issue on which summary judgment is

sought, summary judgment is improper."  See Cuadrado v. Zito, No. 13CV3321-VB, 2014 WL

1508609, at *2 (S.D.N.Y. Mar. 21, 2014) (citing Dallas Aerospace, Inc. v. CIS Air Corp., 352

F.3d 775, 780 (2d Cir. 2003) and Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.,

391 F.3d 77, 83 (2d Cir. 2004)).

       A fact is considered material for the purposes of summary judgment motion

practice "if it might affect the outcome of the suit under the governing law."  Holtz v.

Rockefeller & Co. Inc., 258 F.3d 62, 69 (2d Cir. 2001) (internal quotation marks and citations

omitted).  An issue of fact is "genuine" where "the evidence is such that a reasonable jury could

return a verdict for the nonmoving party."  Id.  Evidence that is "merely colorable or not

significantly probative" will not defeat a motion for summary judgment.  Lane Capital Mgmt.,

Inc. v. Lane Capital Mgmt., Inc., 192 F.3d 337, 346 (2d Cir. 1999).  "[M]ere conclusory

allegations or denials . . . cannot by themselves create a genuine issue of material fact where

none would otherwise exist."  Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal

quotation marks and citation omitted).  "As to issues on which the non-moving party bears the

burden of proof, the moving party may simply point out the absence of evidence to support the

nonmoving party's case."  Nora Beverages, Inc. v. Perrier Group of Am., Inc., 164 F.3d 736, 742

(2d Cir. 1998).

Scope of the Record on Summary Judgment

        Defendants have submitted a Declaration from Charles W. Hanor, an attorney who claims extensive experience in intellectual property law, in support of their summary judgment motion.  (See Docket Entry No. 174 ("Hanor Declaration").)  Plaintiff objects to the declaration pursuant to Federal Rule of Civil Procedure 56(c)(2) and asks the Court not to consider the declaration in resolving the instant motion.  (See Docket Entry Nos. 193-4 ("Hanor Objections")) and 201.)  Plaintiff's objections are well taken.

        The Hanor Declaration purports to marshal the evidence and opines as to the legal significance of the evidence under domestic trademark law, urging the Court to reach certain legal conclusions, several of which touch upon the "ultimate issues" to be decided.  (See generally Hanor Declaration.)  This is an improper function for an expert report and is plainly outside the scope of permissible expert testimony under Federal Rule of Evidence 702.  See, e.g., In re Fresh Del Monte Pineapples Antitrust Litigation, No. 04MD1628-RMB-MHD, 2009 WL 3241401, at *13 (S.D.N.Y. Sept. 30, 2009) (quoting Motown Productions Inc. V. Cacomm, Inc., 668 F. Supp. 285, 288 (S.D.N.Y. 1987), reversed on other grounds) ("In this Circuit . . . the expert testimony of an attorney as to an ultimate issue of domestic law or as to the legal significance of facts is inadmissible"); see also Great American Ins. Co. V. USF Holland Inc., 937 F. Supp. 2d 376, 383 (S.D.N.Y. 2013) ("'[A]lthough an expert may opine on an issue of fact within the jury's province, he may not give testimony stating ultimate legal conclusions based on those facts.'") (quoting United States v. Bilzerian, 926 F.2d 1285, 1294 (2d Cir. 1991)); Hygh v. Jacobs, 961 F.2d 359, 363 (2d Cir. 1992) ("This circuit is in accord with other circuits in requiring exclusion of expert testimony that expresses a legal conclusion.").

        Because the Hanor Declaration is clearly a work of legal advocacy rather than an

expert opinion on "technical[] or other specialized knowledge [which] will help the trier of fact to understand the evidence or to determine a fact in issue" (see Fed. R. Evid. 702), the Court declines to consider it.

Defendants' Arguments for Summary Judgment

Defendants offer several arguments in support of their summary judgment motion: (1) that Plaintiff's trademark infringement claims are invalid because Defendants are the prior owners of the common law Vantone trademark and trade name (see Docket Entry No. 177, Memorandum of Law in Support of Defendants' Motion for Summary Judgment or in the Alternative for Partial Summary Judgment ("Def. Memo") at pp. 8-10); (2) that Plaintiff's federal and state trademark registrations should be cancelled due to a non-correctable error in the trademark application, prior use of the mark by Defendants, fraudulent procurement of the mark, insufficient use and abandonment of the mark and sham/token use and lack of bona fide use of the mark in commerce; and (3) that Plaintiff's Second Amended Complaint should be dismissed in its entirety in light of Defendants' status as prior users of the Vantone trade name and senior users and common law owners of the Vantone mark.  The Court examines each of these arguments in turn.

Defendants' Prior Use

Defendants argue that they are prior users of the Vantone trade name, and senior users and common law owners of the Vantone mark,[10] entitling them to a declaration of their

_____

[10]     Although Defendants repeatedly assert that they are common law owners of the Vantone mark, they have not proffered facts or a legal argument demonstrating that they are entitled as a matter of law to summary judgment on this point.

right to use "Vantone" as a mark, as well as cancellation of Plaintiff's registered marks and pending applications.  (See Def. Memo at pp. 8-10.)

It is well established that federal courts have the power to cancel federal trademark registrations.  See 15 U.S.C. § 1119.  When a defense to trademark registration is established, "registration constitutes only a prima facie and not conclusive evidence of the owner's right to exclusive use of the mark."  Haggar Int'l Corp. v. United Co. Food Industry Corp., 906 F. Supp. 2d 96, 106 (E.D.N.Y. 2012) (citing Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 199 n.6 (1985)).  Prior use is one such defense.  See, e.g., Sterling Drug v. Bayer AG, 14 F.3d 733, 743 (2d Cir. 1994) (holding that a prior or senior user of an unregistered mark can obtain cancellation of a junior user's registration).  Indeed, a senior user of even an unregistered mark is entitled to cancellation of a junior user's registration, as "trademark ownership rights go to the 'first-to-use, not [the] first-to-register.'"  Haggar, 906 F. Supp. 2d at 105 (citations omitted); see also Sengoku Works v. RMC Int'l, 96 F.3d 1217, 1219-20 (9th Cir. 1996) ("It is axiomatic in trademark law that the standard test of ownership is priority of use.  To acquire ownership of a trademark it is not enough to have . . . registered it first . . . if the non-registrant can show that he used the mark in commerce first, then the registration may be invalidated.").  "[S]ections 14 and 37 of the [Lanham] Act, 15 U.S.C. §§ 1064 and 1119, authorize a plaintiff to seek to cancel a mark registration even when the plaintiff lacks a registered mark but the defendant possesses one."  Mears v. Montgomery, No. 02CV407-BSJ-MHD, 2004 WL 964093 (S.D.N.Y. May 5, 2004).

Prior use, furthermore, need not consist of use as a mark; rather, analogous "trade name" use is sufficient to substantiate a prior use defense.  A "trade name" or "commercial name" as defined by the Lanham Act is "any name used by a person to identify his or her

business or vocation."  See 15 U.S.C.S. § 1127 (LexisNexis 2006).  The Supreme Court has

recognized that "the precise difference [between a trademark and a trade name] is not often

material, since the law affords protection against its appropriation in either view upon the same

fundamental principles."  American Steel Foundries v. Robertson, 269 U.S. 372, 380 (1926).

Courts within this district have held that trade name use is "analogous" to the use of a trademark

or service mark, which is established by "open and public use of such nature and extent as to

create, in the mind of the relevant purchasing public, an association of the designation with the

goods and services of the party claiming priority rights in the designation."  Diarama Trading

Co., Inc. v. J. Walter Thompson U.S.A., Inc., No. 01CV2950-DAB-DCF, 2005 WL 2148925, at

*7 (S.D.N.Y. Sept. 6, 2005).  "[W]hile technical trademark or service mark use is a requisite for

federal registration, prior use of a designation in interstate or intrastate commerce in a manner

analogous to trademark and service mark use can defeat a trademark registered by a subsequent

user."  Id.  "The talismanic test is whether the mark was used in a way sufficiently public to

identify or distinguish the marked goods in an appropriate segment of the public mind as those

of the adopter of the mark."  International Healthcare Exchange, Inc. v. Global Healthcare

Exchange, LLC, 470 F. Supp. 2d 365, 371 (S.D.N.Y. 2007) (internal quotation marks and

citations omitted).  Ultimately, "analogous use must be of such a nature and extent that the mark

has become popularized in the public mind so that the relevant segment of the public identifies

the marked goods with the mark's adopter."  American Express Co. v. Goetz, 515 F.3d 156, 161-

62 (2d Cir. 2008) (internal quotation marks and citations omitted).

   Defendants have failed to demonstrate that they are entitled to judgment as a

matter of law based on prior use of the Vantone trade name.  Defendants' evidentiary proffers,

which include: bank and business records utilizing the Vantone name and mark from the 1990's

(see Docket Entry No. 175, Declaration of Kerry J. Kaltenbach in Support of Motion for

Summary Judgment ("Kaltenbach Decl."), Ex. C);[11] proof of Defendants' August 5, 1996,

registration of the Vantone.com domain name (Kaltenbach Decl., Ex. D); business records from

the 2000's pertinent to the China Center Project that use the Vantone name and mark

(Kaltenbach Decl., Ex. E); and articles from various print and internet sources publicizing

Vantone entities and the China Center which utilize the Vantone name, including the April 13,

2006, New York Times article in which the term "the Vantone group" was used at least five

times (see Kaltenbach Decl., Exs. F, G; Def. 56.1 St. ¶ 16)[12], are insufficient to foreclose any

genuine issue of fact as to whether their use of the Vantone trade name was "open and public [to

such an] extent as to create, in the mind of the relevant purchasing public, an association of the

designation with the goods and services of the party claiming priority rights in the designation."

Diarama Trading Co., 2005 WL 2148925, at *7.  When viewing the evidence in the light most

favorable to the non-moving party, as the Court is required to do at this point, material issues of

fact clearly exist as to whether Defendants' use of the Vantone trade name was sufficiently

public-facing and, thus, whether it worked to establish an association with Defendants in the

minds of the relevant purchasing public.  The documents offered in Exhibit C to the Kaltenbach

Declaration are largely internal business documents, none of which clearly indicates use of the

Vantone mark in commerce in an open and notorious manner.  Indeed, none of the evidence

submitted by Defendants conclusively evinces use of Vantone as a trade name targeted to

---

[11]     Many of these documents are in Chinese, and Defendants have failed to provide any
translation or explanation of their meaning, leaving the Court unable to evaluate
their relevance or significance.  (See generally Kaltenbach Decl., Ex. C.)

[12]     Defendants also proffer the Hanor Declaration, which the Court does not consider,
in support of this argument.  See discussion supra.

potential customers.  As Plaintiff notes,  "[t]he articles contained in Defendants' Exhibit F do not prove definitively whether the public, at the time of their publication, came to associate Vantone with Defendants."  (Docket Entry No. 193, Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Pl. Memo") at p. 14.)

Defendants have, accordingly, failed to demonstrate that no genuine issue of material fact remains as to this point for evaluation by a jury.  The Court therefore denies Defendants' motion for summary judgment insofar as it seeks a declaration of their right to use the Vantone mark based on priority of use.

Defendants' Arguments For Cancellation of Plaintiff's Registrations

*1. Correctability of Plaintiff's Federal Real Estate Mark Application*

The parties dispute whether Plaintiff's March 2010 application for trademark protection of the Vantone mark for use in connection with real estate services contained correctable errors, or whether Plaintiff's errors rendered the application void ab initio.  In evaluating this issue, the Court looks to the Trademark Manual of Examining Procedure ("TMEP").  Section 1201.02(c) of the TMEP provides, under the heading "Non-Correctable Errors," that when "the president of a corporation is identified as the owner of the mark when in fact the corporation owns the mark, and there is no inconsistency in the original application between the owner name and the entity type (such as a reference to a corporation in the entity section of the application), the application is void as filed because the applicant is not the owner of the mark."  (See Docket Entry No. 193-66, Ex. 59.)[13]  The same section of the TMEP

---

[13]     The referenced edition of the TMEP is from October 2007, and was effective on the date of Gianella's original application in March 2010.  (See

provides, under the heading "Correctable Errors," that "[i]f the original application reflects an inconsistency between the owner name and the entity type, e.g., an individual and a corporation are each identified as the owner in different places in the application, the application may be amended to clarify the inconsistency."  (See Docket Entry No. 193-66, Ex. 59.)  The TMEP provides an example of such an inconsistency, explaining that where the "'owner section' of [the] application form is inconsistent with the information in the 'entity section' of the form, the inconsistency can be corrected, e.g., if an individual is identified as the owner and a corporation is listed as the entity, the application may be amended to indicate the proper applicant name/entity."  (Id.)

In opposition to Defendants' motion, Plaintiff has proffered his original application, which clearly identifies Gianella – an individual – as the owner of the mark, and lists "limited liability company" as the entity type.  (See Docket Entry No. 193-61, Ex. 54.)  This is an inconsistency within the application that renders it correctable under the provisions of the TMEP.[14]  Plaintiff has also proffered a series of amendments and proposed amendments to the

_____

http://www.uspto.gov/trademark/guides-and-manuals/tmep-archives; see also Docket Entry Nos. 193-61 and 193-66 Exs. 54, 59.)

[14]    Defendants concede that Section 1201.02(c) of the TMEP allows for correction of an error when an individual and a corporation are identified as the owner of a mark in different parts of an application.  (See Reply Memo at pp. 9-10.)  However, Defendants argue that no such inconsistency is apparent in Plaintiff's original application, and that Plaintiff is nowhere identified as the owner of the mark – only Leonardo Gianella is.  (Id.)  This is patently incorrect.  Plaintiff's original application lists Gianella as the "owner of [the] mark," and lists "limited liability company" as the applicant's "legal entity type"; this is precisely the type of inconsistency that the TMEP provides as an example of a correctable error. (See Docket Entry No. 193-61 and 193-66, Exs. 54, 59.)  Although Plaintiff is not explicitly identified as the owner of the mark in the original application, the language of the TMEP, the example the TMEP provides, and the fact that the Plaintiff's proposed amendment was eventually accepted all support Plaintiff's argument that the error was correctable.

application, which ultimately resulted in the application being amended to reflect "the Vantone

Group LLC" as the owner of the mark.  (See Docket Entry Nos. 193-62, 63, 64, Exs. 55-58.)

Defendants' motion is therefore denied to the extent it seeks summary judgment declaring

Plaintiff's service mark registration 3,856,724 (for real estate services) void ab initio on the basis

of non-correctable error.[15]

> B.  Propriety of Cancellation of Plaintiff's Registration and Applications Based
> on Defendants' Prior Use

In light of the Court's determination that there are genuine issue of material fact

with respect to Defendants' analogous prior use of the Vantone trade name, the Court denies

Defendants' summary judgment motion insofar as it seeks cancellation of Plaintiff's existing

registrations and pending application on this basis.

> C.  Propriety of Cancellation of Plaintiff's Trademark Registrations and
> Application on the Basis of Fraudulent Procurement

The Lanham Act authorizes the cancellation of marks obtained fraudulently.  See

15 U.S.C. § 1064(3).  "Fraud in procuring a trademark registration occurs when an application

for registration knowingly makes false, material representations of fact in connection with an

application to register."  Burkina Wear, Inc. v. Campagnolo, S.R.L., No. 07CV70563-RWS,

2011 WL 70563, at *3 (S.D.N.Y. Jan. 7 2011) (citing Torres v. Cantine Torresella S.r.l., 808

F.2d 46, 48 (Fed. Cir. 1986)).  "A party seeking cancellation of a registered trademark on

grounds of fraud must demonstrate the alleged fraud by clear and convincing evidence."  MPC

Franchise, LLC v. Tarntino, No. 15-717-CV, 2016 WL 3512500, at *3 (2d Cir. June 27, 2016)

(quoting Orient Exp. Trading Co., Ltd. v. Federated Dept. Stores, Inc., 842 F.2d 650, 653 (2d

---

[15]   The Court likewise denies cancellation of Plaintiff's New York State service mark
registration on this basis.  (See Kaltenbach Decl., Ex. P.)

Cir. 1988)).  "[T]he party charging fraud must establish that the acts said to be fraudulent were made in bad faith with a fraudulent purpose and an intent to secure a registration by deception." Heaton Enterprises of Nevada Inc. v. Lang, 7 U.S.P.Q. 2d 1842, at *7 (TTAB 1988).[16]

> The Trademark Trial and Appeal Board has held that:
>
> In determining whether an applicant, when he signed his application oath, held an honest, good faith belief that he was entitled to registration of his mark, the Board has stated that if the other person's rights in the mark, vis-à-vis the applicant's rights[,] are not known by applicant to be superior or clearly established, e.g., by court decree or prior agreement of the parties, then the applicant has a reasonable basis for believing that no one else has the right to use the mark in commerce, and that [the] applicant's averment of that reasonable belief in its application declaration or oath is not fraudulent.

Maids to Order of Ohio, Inc. v. Maid-to-Order, Inc., 78 U.S.P.Q. 2d 1899, at *10 (TTAB 2006). Thus, cancellation for fraudulent failure to disclose is warranted only if the party seeking registration knowingly and falsely represented a belief that it possessed a superior right to the mark.  See Burkina Wear, 2011 WL 70563, at *3; see also Space Base Inc. v. Stadis Corp., 17 U.S.P.Q. 2d 1216, 1218-19, at *3 (TTAB 1990) ("it is settled that there can be no fraud by reason of a party's failure to disclose the asserted rights of another person, including a prior applicant, unless that person is known to possess a superior or a clearly established right to use") (emphasis added).

Defendants have failed to satisfy their burden of demonstrating that no genuine issues of material fact remain with respect to whether Plaintiff obtained registration of the Vantone mark through fraud.  Accordingly, the Court denies Defendants' summary judgment

---

[16]   The New York General Business Law similarly provides that a New York State mark registration should be cancelled if "the registration was obtained fraudulently."  N.Y. Gen. Bus. Law § 360-h(c)(4).

motion insofar as it seeks cancellation of Plaintiff's mark registrations, and denial of its pending

application, on this basis.

> D.  *Propriety of Cancellation of Plaintiff's Registrations and Denial of Its Application Based on Abandonment and Insufficient Use*

The Second Circuit has found insufficient use of a mark in commerce to be an

appropriate basis for denying protection to a mark.  See, e.g., La Societe Anonyme des Parfums

le Galion v. Jean Patou, Inc., 495 F.2d 1265, 1272 (2d Cir. 1974) (holding that "a meager trickle

of business [does not] constitute[] the kind of bona fide use intended to afford a basis for

trademark protection," and that proof of "sporadic" and "casual" use of a mark is insufficient to

defeat a motion for summary judgment as a matter of law); see also Sadhu Singh Hamdard Trust

v. Ajit Newspaper Advertising, Marketing and Communications, Inc., 394 F. App'x 735, 736 (2d

Cir. 2010) (Summary Order).  Moreover, mere advertisement is not sufficient to constitute use of

a mark in commerce.  See, e.g., Morningside Group, Ltd. v. Morningside Capital Group, L.L.C.,

182 F.3d 133, 138 (2d Cir. 1999); see also Buti v. Perosa, S.R.L., 139 F.3d 98, 105 (2d Cir.

1998) ("the mere advertising or promotion of a mark in the United States is insufficient to

constitute 'use' of the mark 'in commerce,' within the meaning of the Lanham Act.").  The

Second Circuit has articulated the "principle that trademark rights are acquired and maintained

through use of a particular mark."  ITC Ltd. v. Punchgini, Inc., 482 F.3d 135, 146 (2d Cir. 2007)

(emphasis added).  A party claiming that a mark has been abandoned (or otherwise insufficiently

exploited) "bears the burden of demonstrating that the former user of the mark discontinued its

use with the intent to not resume use in the reasonably foreseeable future."  Rockland

Exposition, Inc. v. Alliance of Automotive Service Providers of New Jersey, 894 F. Supp. 2d

288, 317 (S.D.N.Y. 2012); see also Emmpresa Cubana Del Tabaco v. Culbro Corp., 213 F. Supp.

2d 247, 268 (S.D.N.Y. 2002) ("The Second Circuit has found two elements necessary to find abandonment: (1) non-use and (2) intent not to resume use") (citing Stetson v. Howard D. Wolf & Assoc., 955 F.2d 847, 850 (2d Cir. 1992)).

Furthermore, courts within this district have recognized the "unlawful use" defense to registration, holding that "[t]he unlawful use defense . . . [is] a way of preventing the government from having to extend the benefits of trademark protection to a seller who violates that government's laws." Dessert Beauty, Inc. v. Fox, 617 F. Supp. 2d 185, 190 (S.D.N.Y. 2007). The Second Circuit has extended this theory to the use of a mark in violation of securities regulations. See generally Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc., 192 F.3d 337 (2d Cir. 1999). The party asserting this defense to registration bears the burden of proof. See generally Dessert Beauty, Inc., 617 F. Supp. 2d 185.

In response to Defendants' claim that "in the over-seven years that it has been in operation, the [Vantone Group] has performed only one real estate brokerage service which constitutes 'use' of the Vantone name, and that service was performed over five year [sic] ago." (See Def. Memo at p. 18.),[17] Plaintiff has proffered evidence of its purported use of the mark in commerce in connection with real estate services. This includes: an exclusive right to sell agreement for an apartment in Brooklyn, NY, dated May 2006 (Docket Entry No. 193-38); a receipt indicating a commission earned on the lease of an apartment, dated July 2008 (Docket

---

[17]    Defendants characterize a $1,500 commission for a brokerage of an apartment rental in July 2008 – in the building in which Gianella lived – as an early sale to a friend or relative that did not put Defendants' services on the market, and thus did not cause trademark rights to attach. (See Def. Memo at p. 18 (citing Jaffe v. Simon & Schuster, Inc., 1987 U.S. Dist. LEXIS 14902 (S.D.N.Y. Feb. 3, 1987)); see also Kaltenbach Decl., Ex. T.) Defendants, however, have not offered a shred of evidence demonstrating that the client in this instance was a friend or relative of Gianella's and, therefore, this argument carries no water.

Entry No. 193-39); the purchase of a subscription for CoStar, an advertising database for

commercial real estate listings, in July 2008 (Docket Entry No. 193-41); emails documenting

Gianella's efforts to provide real estate services to clients, ranging from November 2008 to July

2010 (Docket Entry Nos. 193-42 through 193-48, 193-52); emails documenting Gianella's

efforts to have the Vantone Group listed in the Real Estate Board of New York directory, dated

March 2010 (Docket Entry No. 193-49); an advertisement submitted to Yellowpages.com, dated

March 2010 (Docket Entry No. 193-50); an advertisement submitted to Bing Local, dated July

2010 (Docket Entry No. 193-51); registration to advertise with Google, dated November 2011

(Docket Entry No. 193-53); the purchase of a half-page online banner advertisement from the

Real Deal Magazine, dated June 2012 (Docket Entry No. 193-54); exclusive listing agreements,

dated March 2014 and July 2014 (Docket Entry Nos. Docket Entry No. 193-55 and 193-56); a

representation listing on StreetEasy dated December 2014 (Docket Entry No. 193-57); and

documentation of the Vantone Group being engaged to lease apartments in Manhattan.  (Docket

Entry No. 193-60.)  Although some of this evidence constitutes "mere advertising" and therefore

would be insufficient, in isolation, to show use in commerce, the evidentiary picture as a whole

demonstrates that Plaintiff has engaged in activity extending beyond advertising, and Defendants

have failed to establish that they are entitled to judgment as a matter of law on the basis of

insufficient use.  Moreover, Defendants have proffered no evidence demonstrating "intent not to

resume use" after a lapse in use on the part of Plaintiff, and thus have failed to satisfy their

burden with respect to that defense to registration.

        Defendants have also failed to proffer evidence demonstrating that Plaintiff used

the Vantone mark in an unlawful manner.  Unlawful use of a mark is found where: "(1) the issue

of compliance has previously been determined (with a finding of noncompliance) by a court or

government agency having competent jurisdiction under the statute involved, or (2) where there has been a per se violation of a statute regulating the sale of a party's goods." Dessert Beauty, 617 F. Supp. 2d at 190.  Defendants, who bear the burden of proof on this issue, have not proffered evidence indicating that either of these two alternative requirements has been satisfied.

In light of the foregoing, the Court denies Defendants' motion for summary judgment insofar as it seeks cancellation of Plaintiff's registrations and pending application on the basis of insufficient use or abandonment.

### E.  Propriety of Canceling Plaintiff's Registrations and Denying Its Application Based on Sham and Token Use, and Lack of Bona Fide Use

Use in commerce under the Lanham Act requires "the bona fide use of a mark in the ordinary course of trade, and not [use] made merely to reserve a right in a mark." 15 U.S.C.S. § 1127 (LexisNexis 2006).  Courts within this district have noted that "[a] bona fide 'use in commerce' does not include a token use whose only purpose is to support an application for trademark registration." Cherie Amie, Inc. v. Windstar Apparel Corp., No. 01CV0040-WHP, 2002 WL460065, at *4 (S.D.N.Y. Mar. 26, 2002).  Indeed, the Second Circuit has recognized that sham use of a mark is insufficient to establish or preserve rights to that mark, and that bona fide use requires that the mark be used in good faith.  See Del-Rain Corp. v. Pelonis USA, Ltd., 29 F. App'x 35, 38 (2d Cir. 2002) (citing Intrawest Fin. Corp. v. W. Nat'l Bank, 610 F. Supp. 950, 958 (D. Col. 1985)).  The New York General Business law also requires "bona fide use of a mark in the ordinary course of trade."  N.Y. Gen. Bus. Law § 360(h).

Defendants attempt to demonstrate sham use by arguing that Plaintiff's use of the Vantone mark was in bad faith, and therefore not "bona fide," citing to ABC Rug & Carpet Cleaning Serv., Inc. v. ABC Rug Cleaners, Inc., No. 08CV5737-RMB, 2010 WL 10091076, at *18 (S.D.N.Y. Feb. 10, 2010).  Defendant's citation to ABC Rug & Carpet is, however,

inapposite, as that case discusses "bad faith" in the context of an examination of the <u>Polaroid</u>

factors relevant to a consumer confusion analysis.  <u>See</u> <u>id.</u>  Defendants do nothing to tie this

standard to the present inquiry into whether Plaintiff's use of the Vantone mark was "bona fide"

under the terms of the Lanham Act.  (<u>See</u> Def. Memo at pp. 20-21.)

   Moreover, Defendants – who bear the burden of proof – proffer only that Plaintiff

attempted to sell the rights to the Vantone mark for a hefty sum as evidence of Plaintiff's bad

faith use of the mark.  (<u>See</u> Def 56.1 St. ¶¶ 58-60)  Although Plaintiff's explanation as to how

Gianella formulated the Vantone mark is specious at best (<u>see</u> Pl. Memo at pp. 24-25; Docket

Entry No. 193-3 ¶ 2), Plaintiff has, at the very least, framed a material issue of fact with respect

to this issue.  Morever, the Court has already determined that, with respect to use of the Vantone

mark in connection with real estate services, Plaintiff has proffered sufficient evidence to avoid

summary judgment as to whether its use of the mark in commerce was sufficient to secure

trademark protection.  <u>See</u> <u>supra.</u>  Thus, Defendant has failed to demonstrate the absence of

genuine issues of material fact with respect to whether Plaintiff's offering of real estate services

constituted sham or token use, and the Court denies Defendants' motion for summary judgment

seeking cancellation of Plaintiff's marks and pending application on this basis.


<u>Dismissal of the Amended Complaint</u>

   Defendants seek dismissal of all of the claims asserted in Plaintiff's Amended

Complaint (Docket Entry No. 123) on the basis that Defendants are the true owners of the

Vantone trade name and that, therefore, Plaintiff cannot sustain claims of infringement.  (<u>See</u>

Def. Memo at pp. 21-22.)  Issues of fact preclude summary judgment dismissing the Amended

Complaint on this basis for the reasons explained above.  Defendants further assert, in

conclusory fashion, that they are entitled to dismissal of Plaintiff's infringement claims because, even if Plaintiff has valid trademark rights, Plaintiff cannot present any evidence of likelihood of confusion stemming from Defendants' use of the mark, and thus cannot prove infringement.

Courts in this district have consistently recognized that "likelihood of confusion is a fact intensive analysis."  See, e.g., Ahmed v. GEO USA LLC, No. 14CV7486-JMF, 2015 WL 1408895, at *3 (S.D.N.Y. Marc. 27, 2015); see also Hearts on Fire Company, LLC v. L C Intern. Corp., No. , 2004 WL 1724932, at *4 (S.D.N.Y. July 30, 2004) ("proof of a likelihood of confusion requires an analysis of the Polaroid factors.").  Here, Defendants have failed to properly brief this issue, dedicating only a single paragraph of their moving papers to the question.  (See Def. Memo at p. 22.)  Nor have Defendants made an appropriate evidentiary proffer.  Defendants thus have failed to demonstrate that they are entitled to judgment as a matter of law on this basis, and their motion is denied.

C̲ONCLUSION̲

For the reasons stated above, Defendants' motion for summary judgment is

denied in its entirety.

The final pretrial conference in this matter is hereby rescheduled to **Friday,**

**November 4, 2016, at 2:30 p.m.**  The parties are directed to meet promptly and confer regarding

settlement.  Pre-conference submissions must be made in accordance with the pretrial scheduling

order issued in this case.  (S̲ee Docket Entry No. 45.)

This Memorandum Opinion and Order resolves Docket Entry Number 172.

SO ORDERED.

Dated: New York, New York
    July 28, 2016

                        /s/ Laura Taylor Swain
                       LAURA TAYLOR SWAIN
                       United States District Judge